# EXHIBIT T

 

FEB 0 8 2012

The Honorable John Boehner
Speaker
United States House of Representatives
Washington, D.C. 20515

The Honorable Harry Reid
Majority Leader
United States Senate
Washington, D.C. 20510

The Honorable Nancy Pelosi
Democratic Leader
United States House of Representatives
Washington, D.C. 20515

The Honorable Mitch McConnell
Republican Leader
United States Senate
Washington, D.C. 20510

Dear Speaker Boehner and Leaders Reid, Pelosi, and McConnell:

We are writing to urge that the Congress reauthorize Title VII of the Foreign Intelligence Surveillance Act (FISA) enacted by the FISA Amendments Act of 2008 (FAA), which is set to expire at the end of this year. Title VII of FISA allows the Intelligence Community to collect vital information about international terrorists and other important targets overseas. Reauthorizing this authority is the top legislative priority of the Intelligence Community.

One provision, section 702, authorizes surveillance directed at non-U.S. persons located overseas who are of foreign intelligence importance. At the same time, it provides a comprehensive regime of oversight by all three branches of Government to protect the privacy and civil liberties of U.S. persons. Under section 702, the Attorney General and the Director of National Intelligence may authorize annually, with the approval of the Foreign Intelligence Surveillance Court (FISC), intelligence collection targeting categories of non-U.S. persons abroad, without the need for a court order for each individual target. Within this framework, *no* acquisition may intentionally target a U.S. person, here or abroad, or any other person known to be in the United States. The law requires special procedures designed to ensure that all such acquisitions target only non-U.S. persons outside the United States, and to protect the privacy of U.S. persons

whose nonpublic information may be incidentally acquired. The Department of Justice and the Office of the Director of National Intelligence conduct extensive oversight reviews of section 702 activities at least once every sixty days, and Title VII requires us to report to the Congress on implementation and compliance twice a year.

A separate provision of Title VII requires that surveillance directed at U.S. persons overseas be approved by the FISC in each individual case, based on a finding that there is probable cause to believe that the target is a foreign power or an agent, officer, or employee of a foreign power. Before the enactment of the FAA, the Attorney General could authorize such collection without court approval. This provision thus increases the protection given to U.S. persons.

The attached background paper provides additional unclassified information on the structure, operation and oversight of Title VII of FISA.

Intelligence collection under Title VII has produced and continues to produce significant intelligence that is vital to protect the nation against international terrorism and other threats. We welcome the opportunity to provide additional information to members concerning these authorities in a classified setting. We are always considering whether there are changes that could be made to improve the law in a manner consistent with the privacy and civil liberties interests of Americans. Our first priority, however, is reauthorization of these authorities in their current form. We look forward to working with you to ensure the speedy enactment of legislation reauthorizing Title VII, without amendment, to avoid any interruption in our use of these authorities to protect the American people.

Sincerely,

James R. Clapper
Director of National Intelligence

Eric H. Holder, Jr.
Attorney General

Enclosure

## Background Paper on Title VII of FISA Prepared by the Department of Justice and the Office of Director of National Intelligence (ODNI)

This paper describes the provisions of Title VII of the Foreign Intelligence Surveillance Act (FISA) that were added by the FISA Amendments Act of 2008 (FAA).[1] Title VII has proven to be an extremely valuable authority in protecting our nation from terrorism and other national security threats. Title VII is set to expire at the end of this year, and its reauthorization is the top legislative priority of the Intelligence Community.

The FAA added a new section 702 to FISA, permitting the Foreign Intelligence Surveillance Court (FISC) to approve surveillance of terrorist suspects and other foreign intelligence targets who are *non-U.S. persons outside the United States*, without the need for individualized court orders. Section 702 includes a series of protections and oversight measures to safeguard the privacy and civil liberties interests of U.S. persons. FISA continues to include its original electronic surveillance provisions, meaning that, in most cases,[2] an individualized court order, based on probable cause that the target is a foreign power or an agent of a foreign power, is still required to conduct electronic surveillance of targets inside the United States. Indeed, other provisions of Title VII extend these protections to U.S. persons overseas. The extensive oversight measures used to implement these authorities demonstrate that the Government has used this capability in the manner contemplated by Congress, taking great care to protect privacy and civil liberties interests.

This paper begins by describing how section 702 works, its importance to the Intelligence Community, and its extensive oversight provisions. Next, it turns briefly to the other changes made to FISA by the FAA, including section 704, which requires an order from the FISC before the Government may engage in surveillance targeted at U.S. persons overseas. Third, this paper describes the reporting to Congress that the Executive Branch has done under Title VII of FISA. Finally, this paper explains why the Administration believes it is essential that Congress reauthorize Title VII.

**1. Section 702 Provides Valuable Foreign Intelligence Information About Terrorists and Other Targets Overseas, While Protecting the Privacy and Civil Liberties of Americans**

Section 702 permits the FISC to approve surveillance of terrorist suspects and other targets who are non-U.S. persons outside the United States, without the need for individualized court orders. The FISC may approve surveillance of these kinds of targets

---

[1] Title VII of FISA is codified at 50 U.S.C. §§ 1881-1881g.

[2] In very limited circumstances, FISA expressly permits surveillance without a court order. *See, e.g.*, 50 U.S.C. § 1805(e) (Attorney General may approve emergency surveillance if the standards of the statute are met and he submits an application to the FISC within seven days).

when the Government needs the assistance of an electronic communications service provider.

Before the enactment of the FAA and its predecessor legislation, in order to conduct the kind of surveillance authorized by section 702, FISA was interpreted to require that the Government show on an individualized basis, with respect to all non-U.S. person targets located overseas, that there was probable cause to believe that the target was a foreign power or an agent of a foreign power, and to obtain an order from the FISC approving the surveillance on this basis. In effect, the Intelligence Community treated non-U.S. persons located overseas like persons in the United States, even though foreigners outside the United States generally are not entitled to the protections of the Fourth Amendment. Although FISA's original procedures are proper for electronic surveillance of persons inside this country, such a process for surveillance of terrorist suspects overseas can slow, or even prevent, the Government's acquisition of vital information, without enhancing the privacy interests of Americans. Since its enactment in 2008, section 702 has significantly increased the Government's ability to act quickly.

Under section 702, instead of issuing individual court orders, the FISC approves annual certifications submitted by the Attorney General and the DNI that identify categories of foreign intelligence targets. The provision contains a number of important protections for U.S. persons and others in the United States. First, the Attorney General and the DNI must certify that a significant purpose of the acquisition is to obtain foreign intelligence information. Second, an acquisition may not intentionally target a U.S. person. Third, it may not intentionally target any person known at the time of acquisition to be in the United States. Fourth, it may not target someone outside the United States for the purpose of targeting a particular, known person in this country. Fifth, section 702 prohibits the intentional acquisition of "any communication as to which the sender and all intended recipients are known at the time of the acquisition" to be in the United States. Finally, it requires that any acquisition be consistent with the Fourth Amendment.

To implement these provisions, section 702 requires targeting procedures, minimization procedures, and acquisition guidelines. The targeting procedures are designed to ensure that an acquisition only targets persons outside the United States, and that it complies with the restriction on acquiring wholly domestic communications. The minimization procedures protect the identities of U.S. persons, and any nonpublic information concerning them that may be incidentally acquired. The acquisition guidelines seek to ensure compliance with all of the limitations of section 702 described above, and to ensure that the Government files an application with the FISC when required by FISA.

The FISC reviews the targeting and minimization procedures for compliance with the requirements of both the statute and the Fourth Amendment. Although the FISC does not approve the acquisition guidelines, it receives them, as do the appropriate congressional committees. By approving the certifications submitted by the Attorney General and the DNI as well as by approving the targeting and minimization procedures,

2

the FISC plays a major role in ensuring that acquisitions under section 702 are conducted in a lawful and appropriate manner.

Section 702 is vital in keeping the nation safe. It provides information about the plans and identities of terrorists, allowing us to glimpse inside terrorist organizations and obtain information about how those groups function and receive support. In addition, it lets us collect information about the intentions and capabilities of weapons proliferators and other foreign adversaries who threaten the United States. Failure to reauthorize section 702 would result in a loss of significant intelligence and impede the ability of the Intelligence Community to respond quickly to new threats and intelligence opportunities. Although this unclassified paper cannot discuss more specifically the nature of the information acquired under section 702 or its significance, the Intelligence Community is prepared to provide Members of Congress with detailed classified briefings as appropriate.

The Executive Branch is committed to ensuring that its use of section 702 is consistent with the law, the FISC's orders, and the privacy and civil liberties interests of U.S. persons. The Intelligence Community, the Department of Justice, and the FISC all oversee the use of section 702. In addition, congressional committees conduct essential oversight, which is discussed in section 3 below.

Oversight of activities conducted under section 702 begins with components in the intelligence agencies themselves, including their Inspectors General. The targeting procedures, described above, seek to ensure that an acquisition targets only persons outside the United States and that it complies with section 702's restriction on acquiring wholly domestic communications. For example, the targeting procedures for the National Security Agency (NSA) require training of agency analysts, and audits of the databases they use. NSA's Signals Intelligence Directorate also conducts other oversight activities, including spot checks of targeting decisions. With the strong support of Congress, NSA has established a compliance office, which is responsible for developing, implementing, and monitoring a comprehensive mission compliance program.

Agencies using section 702 authority must report promptly to the Department of Justice and ODNI incidents of noncompliance with the targeting or minimization procedures or the acquisition guidelines. Attorneys in the National Security Division (NSD) of the Department routinely review the agencies' targeting decisions. At least once every 60 days, NSD and ODNI conduct oversight of the agencies' activities under section 702. These reviews are normally conducted on-site by a joint team from NSD and ODNI. The team evaluates and, where appropriate, investigates each potential incident of noncompliance, and conducts a detailed review of agencies' targeting and minimization decisions.

Using the reviews by Department of Justice and ODNI personnel, the Attorney General and the DNI conduct a semi-annual assessment, as required by section 702, of compliance with the targeting and minimization procedures and the acquisition guidelines. The assessments have found that agencies have "continued to implement the

procedures and follow the guidelines in a manner that reflects a focused and concerted effort by agency personnel to comply with the requirements of Section 702." The reviews have not found "any intentional attempt to circumvent or violate" legal requirements. Rather, agency personnel "are appropriately focused on directing their efforts at non-United States persons reasonably believed to be located outside the United States."[3]

Section 702 thus enables the Government to collect information effectively and efficiently about foreign targets overseas and in a manner that protects the privacy and civil liberties of Americans. Through rigorous oversight, the Government is able to evaluate whether changes are needed to the procedures or guidelines, and what other steps may be appropriate to safeguard the privacy of personal information. In addition, the Department of Justice provides the joint assessments and other reports to the FISC. The FISC has been actively involved in the review of section 702 collection. Together, all of these mechanisms ensure thorough and continuous oversight of section 702 activities.

**2. Other Important Provisions of Title VII of FISA Also Should Be Reauthorized**

In contrast to section 702, which focuses on foreign targets, section 704 provides heightened protection for collection activities conducted overseas and directed against U.S. persons located outside the United States. Section 704 requires an order from the FISC in circumstances in which the target has "a reasonable expectation of privacy and a warrant would be required if the acquisition were conducted inside the United States for law enforcement purposes." It also requires a showing of probable cause that the targeted U.S. person is "a foreign power, an agent of a foreign power, or an officer or employee of a foreign power." Previously, these activities were outside the scope of FISA and governed exclusively by section 2.5 of Executive Order 12333.[4] By requiring the approval of the FISC, section 704 enhanced the civil liberties of U.S. persons.

The FAA also added several other provisions to FISA. Section 703 complements section 704 and permits the FISC to authorize an application targeting a U.S. person outside the United States to acquire foreign intelligence information, if the acquisition constitutes electronic surveillance or the acquisition of stored electronic communications or data, and is conducted in the United States. Because the target is a U.S. person, section 703 requires an individualized court order and a showing of probable cause that the target is a foreign power, an agent of a foreign power, or an officer or employee of a foreign power. Other sections of Title VII allow the Government to obtain various

---

[3] *Semiannual Assessment of Compliance with Procedures and Guidelines Issued Pursuant to Section 702 of the Foreign Intelligence Surveillance Act, Submitted by the Attorney General and the Director of National Intelligence, Reporting Period: December 1, 2010 – May 31, 2011* at 2-3, 5 (December 2011).

[4] Since before the enactment of the FAA, section 2.5 of Executive Order 12333 has required the Attorney General to approve the use by the Intelligence Community against U.S. persons abroad of "any technique for which a warrant would be required if undertaken for law enforcement purposes." The Attorney General must find that there is probable cause to believe that the U.S. person is a foreign power or an agent of a foreign power. The provisions of section 2.5 continue to apply to these activities, in addition to the requirements of section 704.

4

authorities simultaneously, govern the use of information in litigation, and provide for congressional oversight. Section 708 clarifies that nothing in Title VII is intended to limit the Government's ability to obtain authorizations under other parts of FISA.

### 3. Congress Has Been Kept Fully Informed, and Conducts Vigorous Oversight, of Title VII's Implementation

FISA imposes substantial reporting requirements on the Government to ensure effective congressional oversight of these authorities. Twice a year, the Attorney General must "fully inform, in a manner consistent with national security," the Intelligence and Judiciary Committees about the implementation of Title VII. With respect to section 702, this semi-annual report must include copies of certifications and significant FISC pleadings and orders. It also must describe any compliance incidents, any use of emergency authorities, and the FISC's review of the Government's pleadings. With respect to sections 703 and 704, the report must include the number of applications made, and the number granted, modified, or denied by the FISC.

Section 702 requires the Government to provide to the Intelligence and Judiciary Committees its assessment of compliance with the targeting and minimization procedures and the acquisition guidelines. In addition, Title VI of FISA requires a summary of significant legal interpretations of FISA in matters before the FISC or the Foreign Intelligence Surveillance Court of Review. The requirement extends to interpretations presented in applications or pleadings filed with either court by the Department of Justice. In addition to the summary, the Department must provide copies of judicial decisions that include significant interpretations of FISA within 45 days.

The Government has complied with the substantial reporting requirements imposed by FISA to ensure effective congressional oversight of these authorities. The Government has informed the Intelligence and Judiciary Committees of acquisitions authorized under section 702; reported, in detail, on the results of the reviews and on compliance incidents and remedial efforts; made all written reports on these reviews available to the Committees; and provided summaries of significant interpretations of FISA, as well as copies of relevant judicial opinions and pleadings.

### 4. It Is Essential That Title VII of FISA Be Reauthorized Well in Advance of Its Expiration

The Administration strongly supports the reauthorization of Title VII of FISA. It was enacted after many months of bipartisan effort and extensive debate. Since its enactment, Executive Branch officials have provided extensive information to Congress on the Government's use of Title VII, including reports, testimony, and numerous briefings for Members and their staffs. This extensive record demonstrates the proven value of these authorities, and the commitment of the Government to their lawful and responsible use.

Reauthorization will ensure continued certainty with the rules used by Government employees and our private partners. The Intelligence Community has invested significant human and financial resources to enable its personnel and technological systems to acquire and review vital data quickly and lawfully. Our adversaries, of course, seek to hide the most important information from us. It is at best inefficient and at worst unworkable for agencies to develop new technologies and procedures and train employees, only to have a statutory framework subject to wholesale revision. This is particularly true at a time of limited resources. It is essential that these authorities remain in place without interruption—and without the threat of interruption—so that those who have been entrusted with their use can continue to protect our nation from its enemies.