**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LARRY E. KLAYMAN, CHARLES STRANGE, and MARY ANNE STRANGE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BARACK HUSSEIN OBAMA, ERIC HIMPTON HOLDER, JR., KEITH B. ALEXANDER, LOWELL C. MCADAM, ROGER VINSON, VERIZON COMMUNICATIONS, NATIONAL SECURITY AGENCY, and U.S. DEPARTMENT OF JUSTICE,<br><br>Defendants. | No. 1:13-cv-00851-RJL |

<u>**THE VERIZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT**</u>

Defendants Verizon Communications Inc. and its Chief Executive Officer Lowell C.

McAdam (the "Verizon Defendants") respectfully move to dismiss Plaintiffs' Class Action

Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(1), (2), & (6).

Plaintiffs' only specific allegation against Verizon is that it purportedly complied with an order

of the Foreign Intelligence Surveillance Court ("FISC") directing it to provide certain telephone

call records to the government.  Plaintiffs' claims against the Verizon Defendants fail for

multiple reasons.

Plaintiffs' claims must be dismissed because the Deputy Attorney General has filed a

certification under 50 U.S.C. § 1885a.  Numerous other statutory provisions also make clear that

1

a telecommunications provider cannot be held liable for providing assistance to the government pursuant to a court order, as Plaintiffs allege occurred here.  *See* 50 U.S.C. § 1861(e); 18 U.S.C. § 2707(e)(1); 18 U.S.C. § 2703(e); 18 U.S.C. 2511(2)(a)(ii).  Plaintiffs' state-law claims are also preempted by federal law and insufficiently pled.  The Court lacks jurisdiction over Plaintiffs' claim under the Administrative Procedure Act and, in any event, the Verizon Defendants are not subject to suit under that statute.  Plaintiffs' stray conclusory allegations regarding communications contents do not satisfy the standing requirements articulated by the Supreme Court in *Clapper v. Amnesty International USA*, 133 S. Ct. 1138 (2013), or the pleading standards of Federal Rule of Civil Procedure 8.  Plaintiffs' claims against Verizon's CEO must be dismissed because Plaintiffs do not allege that Mr. McAdam personally did anything at all, much less anything wrong.  Finally, there is no personal jurisdiction over Verizon Communications Inc. or Mr. McAdam in this district.

For the foregoing reasons, which are set out more fully in the accompanying memorandum, Plaintiffs' claims against the Verizon Defendants should be dismissed with prejudice.

Dated: December 16, 2013                    Respectfully submitted,

/s/ Randolph D. Moss
Randolph D. Moss (D.C. Bar No. 417749)
Brian M. Boynton (D.C. Bar No. 483187)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
randolph.moss@wilmerhale.com

*Counsel for the Verizon Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LARRY E. KLAYMAN, CHARLES
STRANGE, and MARY ANNE STRANGE,
on behalf of themselves and all others
similarly situated,

　　　　　　　Plaintiffs,

　　　　v.

BARACK HUSSEIN OBAMA,
ERIC HIMPTON HOLDER, JR.,
KEITH B. ALEXANDER, LOWELL C.
MCADAM, ROGER VINSON,
VERIZON COMMUNICATIONS,
NATIONAL SECURITY AGENCY, and
U.S. DEPARTMENT OF JUSTICE,

　　　　　　　Defendants.

No. 1:13-cv-00851-RJL

---

**MEMORANDUM OF LAW IN SUPPORT OF THE VERIZON DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Randolph D. Moss (D.C. Bar No. 417749)
Brian M. Boynton (D.C. Bar. No. 483187)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
randolph.moss@wilmerhale.com

*Counsel* for *the Verizon Defendants*

December 16, 2013

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................3

ARGUMENT ....................................................................................................................6

I.   THE VERIZON DEFENDANTS ARE IMMUNE FROM SUIT ...........................6

    A.   Plaintiffs' Claims Against The Verizon Defendants Must Be Dismissed
         Under The FISA Amendments Act Of 2008 ...........................................6

    B.   Plaintiffs' Claims Against The Verizon Defendants Also Fail Under Other
         Statutory Provisions ................................................................................10

II.   PLAINTIFFS' STATE-LAW CLAIMS MUST BE DISMISSED.................................12

    A.   Plaintiffs' State-Law Claims Are Preempted........................................12

         1.   The Constitution Preempts The Field Of Matters Pertaining To
             National Security And Military Intelligence Gathering...........................13

         2.   Plaintiffs' State-law Claims Are Also Barred By The
             Intergovernmental Immunity Doctrine ....................................................15

         3.   Plaintiffs' State-Law Claims Also Conflict With Federal Law ...............15

    B.   Plaintiffs' State-Law Claims Otherwise Fail As A Matter Of Law......................16

III.   PLAINTIFFS' APA CLAIM AGAINST THE VERIZON DEFENDANTS MUST
     BE DISMISSED ...........................................................................................20

IV.   PLAINTIFFS' VAGUE AND CURSORY ALLEGATIONS REGARDING
     ALLEGED DISCLOSURES OF CALL CONTENTS ARE INSUFFICIENT...............21

    A.   Plaintiffs Have Not Pled Facts Sufficient To Demonstrate Their Standing ..........22

    B.   Plaintiffs Fail To State A Plausible Claim For Relief ...........................................23

V.   PLAINTIFFS' CLAIMS AGAINST MR. MCADAM MUST BE DISMISSED .............24

VI.   THE VERIZON DEFENDANTS ARE NOT SUBJECT TO PERSONAL
     JURISDICTION IN THIS DISTRICT ..............................................................25

    A.   Plaintiffs Must Show Continuous And Systematic Contacts With D.C. Or
         Allege Injuries Arising From Specific Conduct With A Sufficient
         Connection To D.C ...............................................................................25

B.      Verizon Communications Inc. Has No Connection To D.C. And Therefore Is Not Subject To General Or Specific Jurisdiction In D.C.....................................27

C.      Plaintiffs Have Not Alleged That Mr. McAdam Has Any Connection To D.C .................................................................................................................29

CONCLUSION.........................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arizona v. Bowsher,*
935 F.2d 332 (D.C. Cir. 1991) ............................................................................15

*Arizona v. United States,*
132 S. Ct. 2492 (2012) ......................................................................................14

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..........................................................................3, 16, 17, 18, 23

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ..........................................................................3, 16, 17, 23, 24

*Blackburn v. United States,*
100 F.3d 1426 (9th Cir. 1996) ............................................................................15

*Clapper v. Amnesty International USA,*
133 S. Ct. 1138 (2013) ......................................................................................3, 22, 23

*Crosby v. National Foreign Trade Council,*
530 U.S. 363 (2000) ..........................................................................................16

*Davis v. Michigan Department of Treasury,*
489 U.S. 803 (1989) ..........................................................................................15

*Dong v. Smithsonian Institution,*
125 F.3d 877 (D.C. Cir. 1997) ............................................................................21

*Geronimo v. Obama,*
725 F. Supp. 2d 182 (D.D.C. 2010) ....................................................................21

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
131 S. Ct. 2846 (2011) ......................................................................................26, 27

*Gorman v. Ameritrade Holding Corp.,*
293 F.3d 506 (D.C. Cir. 2002) ............................................................................26, 28

*Halkin v. Helms,*
690 F.2d 977 (D.C. Cir. 1982) ............................................................................22

*Hubbard v. MySpace Inc.,*
788 F. Supp. 2d 319 (S.D.N.Y. 2011) ..................................................................11

*In re National Security Agency Telecommunications Records Litigation,*
    671 F.3d 881 (9th Cir. 2011) ................................................................................6, 7

*In re Papst Licensing GMBH & Co. KG Litigation,*
    585 F. Supp. 2d 32 (D.D.C. 2008) ................................................................................24

*Janod, Inc. v. Echo Entertainment, Inc.,*
    890 F. Supp. 2d 13 (D.D.C. 2012) ................................................................................28

*Johns v. Newsmax Media Inc.,*
    887 F. Supp. 2d 90 (D.D.C. 2012) ................................................................................28

*Johnson v. Maryland,*
    245 U.S. 51 (1920) ................................................................................15

*Joyner v. Sibley Memorial Hospital,*
    826 A.2d 362 (D.C. Ct. App. 2003) ................................................................................17

*Khatib v. Alliance Bankshares Corp.,*
    846 F. Supp. 2d 18 (D.D.C. 2012) ................................................................................29

*Lujan v. National Wildlife Federation,*
    497 U.S. 871 (1990) ................................................................................21

*Marshall v. Willner,*
    No. 3:06CV-665-M, 2007 WL 2725971 (W.D. Ky. Sept. 14, 2007) ................................12

*Mayo v. United States,*
    319 U.S. 441 (1943) ................................................................................15

*Mazza v. Verizon Washington, DC, Inc.,*
    852 F. Supp. 2d 28 (2012) ................................................................................25, 29

*McDaniel v. FEDITC LLC,*
    825 F. Supp. 2d 157 (D.D.C. 2011) ................................................................................28

*McKinney v. Caldera,*
    141 F. Supp. 2d 25 (D.D.C. 2001) ................................................................................21

*Movsesian v. Victoria Versicherung AG,*
    670 F.3d 1067 (9th Cir. 2012) (en banc) ................................................................................14

*Pelkey v. City of Presque Isle,*
    685 A.2d 429 (Me. 1996) ................................................................................18

*Perpich v. Department of Defense,*
    496 U.S. 334 (1990) ................................................................................14

*Perry ex rel. Perry v. Frederick Investment Corp.*,
    509 F. Supp. 2d 11 (D.D.C. 2007) ........................................................................24

*PLIVA, Inc. v. Mensing*,
    131 S. Ct. 2567 (2011) ...........................................................................................16

*Russo v. White*,
    241 Va. 23 (1991) ...................................................................................................19

*Saleh v. Titan Corp.*,
    580 F.3d 1 (D.C. Cir. 2009) ..................................................................................14

*Schmidt v. Ameritech Illinois*,
    329 Ill. App. 3d 1020 (2002) .................................................................................18

*SEC v. Pacfic Bell*,
    704 F. Supp. 11 (D.D.C. 1989) .............................................................................16

*Sere v. Group Hospitalization, Inc.*,
    443 A.2d 33 (D.C. Ct. App. 1982) ........................................................................17

*Shulman v. Group W Products, Inc.*,
    18 Cal. 4th 200 (1998) ...........................................................................................20

*Smith v. Maryland*,
    442 U.S. 735 (1979) ...............................................................................................20

*Stehney v. Perry*,
    101 F.3d 925 (3d Cir. 1996) ..................................................................................14

*Tarble's Case*,
    80 U.S. 397 (1871) .................................................................................................14

*Thacker v. City of Hyattsville*,
    762 A.2d 172 (Md. Spec. App. 2000) ...................................................................19

*Union Oil Co. v. Minier*,
    437 F.2d 408 (9th Cir. 1970) .................................................................................15

*United States v. Ferrara*,
    54 F.3d 825 (D.C. Cir. 1995) ...........................................................................25, 27

*United States v. Marchetti*,
    466 F.2d 1309 (4th Cir. 1972) ...............................................................................14

*Walsh v. Taylor*,
    689 N.W. 2d 506 (Mich. App. 2004) ....................................................................18

*Wolf v. Regardie*,
    553 A.2d 1213 (D.C. App. 1989) ........................................................................19

*Zelaya v. UNICCO Serv. Co.*,
    587 F. Supp. 2d 277 (D.D.C. 2008) ...................................................................24

*Zschernig v. Miller*,
    389 U.S. 429 (1968) ...........................................................................................14

STATUTES

5 U.S.C. § 702 ...................................................................................................20, 22, 23

18 U.S.C. § 2511(2)(a)(ii) ........................................................................................7, 11, 12

18 U.S.C. § 2707(e) ...................................................................................................11

50 U.S.C. § 1805(h) ...................................................................................................10

50 U.S.C. § 1861 ...................................................................................................4, 10

50 U.S.C. § 1861(e) ...................................................................................................2, 10

50 U.S.C. § 1885a ...................................................................................1, 6, 7, 8, 9, 10

50 U.S.C. § 1885a(a) ...................................................................................................6, 7, 8

50 U.S.C. § 1885a(c) ...................................................................................................1, 9

50 U.S.C. § 1885a(d) ...................................................................................................9

50 U.S.C. § 1885a(e) ...................................................................................................6, 8

D.C. Code § 13-334(a) ...................................................................................................26, 28

D.C. Code § 13-422 ...................................................................................................26, 27, 29

D.C. Code § 13-423(a) ...................................................................................................27

D.C. Code § 13-423(b) ...................................................................................................27

OTHER AUTHORITIES

Fed. R. Civ. P. 4(k)(1)(A) ...................................................................................................25

Fed. R. Civ. P. 8 ...................................................................................................3

Fed. R. Civ. P. 12(b)(2) ...................................................................................................25

*RESTATEMENT (SECOND) OF TORTS* § 46 (1965) ...............................................................17

*RESTATEMENT (SECOND) OF TORTS* § 46, cmt. d (1965) ................................................17

*RESTATEMENT (SECOND) OF TORTS* § 652B, cmt. c (1965)............................................20

*RESTATEMENT (THIRD) OF AGENCY* § 7.01, cmt. d (2013) ............................................24

S. Rep. No. 110-209...............................................................................................................7

## INTRODUCTION

Defendants Verizon Communications Inc. and its CEO Lowell C. McAdam (the "Verizon Defendants") respectfully seek dismissal of the claims asserted against them in this action.  Plaintiffs' case is about the legality of an alleged government program.  The only specific allegation against Verizon is that it purportedly complied with an order of the Foreign Intelligence Surveillance Court ("FISC") directing it to provide certain assistance to the government.  Not surprisingly, there is no basis for asserting claims against Verizon in those circumstances:  Companies are required to comply with court orders and cannot be sued for allegedly doing so.

In 2008, Congress enacted 50 U.S.C. § 1885a.  That provision directs that claims against a telecommunications carrier (or one of its officers) for allegedly providing assistance to the government must be dismissed if the Attorney General or Deputy Attorney General certifies that the carrier provided the assistance pursuant to a FISC order or other specified legal process or did not, in fact, provide the assistance alleged.  Where doing so is necessary to protect the national security of the United States, such a certification may be submitted to the district court for review "in camera and ex parte."  *Id.* § 1885a(c)(1).  Here, the Deputy Attorney General has made the required certification.  That alone provides ample basis to dismiss Plaintiffs' claims against the Verizon Defendants.

In addition to § 1885a, numerous statutory provisions make clear that a telecommunications provider cannot be held liable for providing assistance to the government pursuant to a court order.  Plaintiffs' core allegation against Verizon is that it complied with a court order.  Yet, Plaintiffs themselves have acknowledged, as they must, that recipients of FISC orders compelling production of business records under the Foreign Intelligence Surveillance

Act ("FISA") "are shielded from liability for complying with such orders, see 50 U.S.C.

§ 1861(e)." Dkt. No. 31 at 30. That is plainly correct under both § 1861(e) and other similar

statutes. Plaintiffs' effort to proceed against the Verizon Defendants in the face of this settled

law is baseless.

Plaintiffs' attempt to use *state* law to interfere with alleged national security programs of

the federal government are foreclosed for additional reasons as well. As an initial matter,

Plaintiffs' state-law claims are preempted by federal law. The Constitution itself vests exclusive

control over matters of intelligence gathering and national security to the federal government.

Well-established principles of intergovernmental immunity also preclude state regulation of

activities of the federal government. Finally, state-law claims seeking to hold Verizon liable for

allegedly complying with the order of a federal court plainly conflict with federal law and thus

cannot stand. Even apart from preemption, Plaintiffs' state-law claims—for intentional infliction

of emotional distress and "intrusion upon seclusion"—fail at the threshold because Plaintiffs

have failed to allege facts sufficient to support the elements of their causes of action. Among

other things, the Verizon Defendants' alleged compliance with a court order does not constitute

the type of outrageous conduct required to plead these claims.

Plaintiffs' claims suffer from numerous other flaws as well. Plaintiffs assert claims

against Verizon and its CEO under the Administrative Procedure Act ("APA"), but this Court

has already concluded that other statutes preclude application of the APA to this case and, in any

event, the APA creates a cause of action only against the government, not private parties.

Although Plaintiffs' claims in this case relate to the alleged disclosure of telephone call records,

a few stray references in the second amended complaint mention alleged disclosures of

communications *contents*. Even if those limited, vague, and conclusory allegations were meant

2

to state a claim, they would be insufficient for two additional reasons:  They do not satisfy the standing requirements articulated by the Supreme Court in *Clapper v. Amnesty International USA*, 133 S. Ct. 1138 (2013), or the pleading standards of Federal Rule of Civil Procedure 8 under the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Plaintiffs' claims against Verizon's CEO must be dismissed because an officer of a company cannot be held liable solely by virtue of his position, which is all Plaintiffs allege here.  Finally, there is no personal jurisdiction over Verizon Communications Inc. or Mr. McAdam in this district.

## BACKGROUND

In June of this year, Plaintiffs filed two lawsuits against the National Security Agency ("NSA"), the Department of Justice, President Obama, Attorney General Eric H. Holder, Jr., NSA Director Keith B. Alexander, Judge Roger Vinson of the FISC, and twelve different private companies (and their CEOs) following press reports about certain alleged activities by the NSA. The first lawsuit ("*Klayman I*") arose out of press reports that the government had obtained an order from the FISC directing Verizon to produce to the NSA certain telephone call records. That lawsuit named Verizon Communications Inc. and its CEO as defendants.  The second lawsuit ("*Klayman II*") arose out of press reports about an alleged government program called "PRISM" and focused largely on allegations that the NSA had obtained access to certain internet communications data.  Verizon is not a defendant in *Klayman II*.

Plaintiffs filed the *Klayman I* lawsuit on June 6, 2013.  Three days later, Plaintiffs filed an amended complaint.  On November 23, 2013, Plaintiffs filed a second amended complaint ("SAC").  It is Plaintiffs' second amended complaint in *Klayman I* that is at issue in this motion. That complaint alleges that "[t]he U.S. government … has obtained a top secret court order that

directs Verizon to turn over the telephone records of over one hundred million Americans to the

NSA on an ongoing daily basis."  SAC ¶ 25.  Specifically, Plaintiffs allege that on April 25,

2013 Judge Vinson of the FISC issued an order pursuant to 50 U.S.C. § 1861 "directing Verizon

to turn over, on an ongoing daily basis, ... [a]ll call detail records or telephony metadata created

by Verizon for communications (i) between the United States and abroad; or (ii) wholly within

the United States, including local telephone calls."  *Id.* ¶ 2 (internal quotation marks omitted);

*see also id.* ¶¶ 26-27.  According to the second amended complaint, "Defendant Vinson's Order

requires Verizon to turn over originating and terminating telephone numbers as well as the

location, time, and duration of the calls."  *Id.* ¶ 28.[1]

     Plaintiff Larry Klayman alleges that he is "an individual and attorney who is a subscriber

and user of Verizon Wireless at all material times."  SAC  ¶ 9.  The second amended complaint

alleges, "[o]n information and belief," that "Defendants have accessed the records pertaining to

Plaintiff Klayman pursuant to the Order issued by Defendant Vinson in addition to accessing his

telephone conversations."  *Id.*  Plaintiffs Charles and Mary Ann Strange are the parents of

Michael Strange, a Navy SEAL who was killed in Afghanistan.  *Id.* ¶ 10.  The second amended

complaint asserts, "[o]n information and belief," that "Defendants have accessed Plaintiffs

Charles and Mary Ann Strange's phone records."  *Id.*

     Based on these allegations, Plaintiffs assert eight claims for relief naming different

defendants.  Plaintiffs allege violations of the First, Fourth, and Fifth Amendments to the U.S.

Constitution against the government defendants.  *See* SAC ¶¶ 49-69 (Claims 1-3).  The Verizon

---

[1]     As this Court noted in its recent preliminary injunction decision, "*Klayman I* concerns
only the collection and analysis of phone record data."  Dkt. No. 48 at 4 n.6.  The second
amended complaint contains a few stray references to alleged disclosures of telephone call
*contents*.  *See, e.g.*, SAC ¶¶ 7, 9, 39, 79.  But the complaint makes no specific allegations
regarding the disclosure of call contents and does not provide any basis for the vague and
conclusory allegations it does contain.

Defendants are not named in these counts.  Plaintiffs also assert state-law claims for intentional infliction of emotional distress and "[i]ntrusion [u]pon [s]eclusion" against all defendants, including the Verizon Defendants.  *See id.* ¶¶ 70-80 (Claims 4 & 5).  Plaintiffs assert two claims under the Electronic Communications Privacy Act ("ECPA") against the Verizon Defendants.  *Id.* ¶¶ 81-95 (Claims 6 & 7). These claims are asserted against just the Verizon Defendants.  Finally, Plaintiffs assert a claim under the APA against all defendants, including the Verizon Defendants.  *Id.* ¶¶ 96-99 (Claim 8).

The second amended complaint seeks to recover damages "in excess of $3 billion U.S. dollars."  *See id.* ¶ 100.  It also seeks declaratory, equitable, and injunctive relief in a variety of forms:  (1) the entry of a cease and desist order, (2) the return to Verizon of the telephone records allegedly at issue, (3) "a full disclosure and a complete accounting of what each Defendant and government agencies as a whole have done," and (4) that the allegedly "egregious misconduct of Judge Roger Vinson be forwarded to judicial and other law enforcement authorities for appropriate disciplinary and other appropriate legal proceedings for violating the law and his oath of office to protect and to uphold the U.S. Constitution."  *Id.* ¶ 101.  Plaintiffs seek relief on behalf of themselves and a class of "[a]ll American citizens in the United States and overseas who are current subscribers of Defendant Verizon's telephone services at any material time, including but not limited to, April 25, 2013 to July 19, 2013."  *Id.* ¶ 38.

The second amended complaint asserts venue in this district but does not allege a factual basis for finding personal jurisdiction here.  It alleges that Verizon "is a Delaware corporation with its principal place of business in New York," *id.* ¶ 18, and it contains no jurisdictional allegations with respect to Mr. McAdam.  Finally, the second amended complaint alleges no basis for naming Verizon's CEO Lowell C. McAdam as a defendant.  It asserts that Mr.

McAdam "is the Chief Executive Officer of Verizon Communications," *id.* ¶ 16, but otherwise contains no specific allegations with respect to Mr. McAdam.

## ARGUMENT

## I.     THE VERIZON DEFENDANTS ARE IMMUNE FROM SUIT

Whether or not Plaintiffs' claims against the government are ultimately successful, their claims against the Verizon Defendants for allegedly complying with a FISC order must be dismissed because the Verizon Defendants are immune from suit under multiple provisions of federal law.

### A.     Plaintiffs' Claims Against The Verizon Defendants Must Be Dismissed Under The FISA Amendments Act Of 2008

Plaintiffs' claims against the Verizon Defendants must be dismissed under 50 U.S.C. § 1885a, which provides that a civil action against a company or individual "for providing assistance to an element of the intelligence community" must be dismissed if the Attorney General or Deputy Attorney General certifies to the district court that any assistance provided was pursuant to specified types of legal process (such as an order of the FISC) or that the defendant "did not provide the alleged assistance." 50 U.S.C. § 1885a(a) & (e).[2]

Congress enacted § 1885a in the FISA Amendments Act of 2008, Pub. L. No. 110-261, 122 Stat. 2436, as a response to litigation against telecommunications carriers for allegedly providing assistance to the government in the wake of the attacks of September 11. *See In re National Sec. Agency Telecomms. Records Litig.*, 671 F.3d 881, 890-892 (9th Cir. 2011) (affirming dismissal of claims and rejecting constitutional challenges to § 1885a). As the Ninth

---

[2]     To the extent the Court concludes that consideration of the Deputy Attorney General's certification is more appropriate on summary judgment, the Verizon Defendants request that the present motion be treated as a motion for summary judgment in this respect.

Circuit noted, the statute was meant to ensure that private parties would remain willing to cooperate with important government national security programs:

> [The provision] "reflect[ed] the Committee's belief that there is a strong national interest in addressing the extent to which the burden of litigation over the legality of surveillance should fall on private parties."  [S. Rep. No. 110-209] at 8.  The Committee noted the "importance of the private sector in security activities."  *Id.* at 5.  It emphasized that electronic intelligence gathering depends in great part on cooperation from private companies, *id.* at 9, and that if litigation were allowed to proceed against persons allegedly assisting in such activities, "the private sector might be unwilling to cooperate with lawful Government requests in the future."  *Id.* at 10.  The "possible reduction in intelligence that might result ... is simply unacceptable for the safety of our Nation."  *Id.*

*Id.* at 892-893.

Section 1885a "dovetails with an existing comprehensive statutory framework that grants the Executive Branch authority to enlist telecommunications companies for intelligence gathering, to protect those companies from suit, and to keep their efforts secret."  *In re National Sec. Agency Telecomms. Records Litig.*, 671 F.3d at 891.  The provision establishes "a procedural mechanism [to] give courts an appropriate role in assessing statutory immunity provisions that would otherwise be subject to the state secrets privilege."  S. Rep. No. 110-209, at 8.  Specifically, § 1885a(a) states:

> Notwithstanding any other provision of law, a civil action may not lie or be maintained in a Federal or State court against any person for providing assistance to an element of the intelligence community, and shall be promptly dismissed, if the Attorney General certifies to the district court of the United States in which such action is pending that—
>
> (1)  any assistance by that person was provided pursuant to an order of the court established under section 1803(a) of this title directing such assistance;
>
> (2)  any assistance by that person was provided pursuant to a certification in writing under section 2511(2)(a)(ii)(B) or 2709(b) of title 18;

7

(3)  any assistance by that person was provided pursuant to a directive under section 1802(a)(4), 1805b(e), as added by section 2 of the Protect America Act of 2007 (Public Law 110–55), or 1881a(h) of this title directing such assistance;

(4)  in the case of a covered civil action, the assistance alleged to have been provided by the electronic communication service provider was—

    (A)  in connection with an intelligence activity involving communications that was—

        (i)  authorized by the President during the period beginning on September 11, 2001, and ending on January 17, 2007; and

        (ii)  designed to detect or prevent a terrorist attack, or activities in preparation for a terrorist attack, against the United States; and

    (B)  the subject of a written request or directive, or a series of written requests or directives, from the Attorney General or the head of an element of the intelligence community (or the deputy of such person) to the electronic communication service provider indicating that the activity was—

        (i)  authorized by the President; and

        (ii)  determined to be lawful; or

(5)  the person did not provide the alleged assistance.

50 U.S.C. § 1885a(a).  The statute specifies that the "authority and duties of the Attorney General under this section shall be performed by the Attorney General (or Acting Attorney General) or the Deputy Attorney General."  *Id.* § 1885a(e).

A certification under § 1885a(a) is subject to review by the district court.  The statute provides:  "A certification under subsection (a) shall be given effect unless the court finds that such certification is not supported by substantial evidence provided to the court pursuant to this section."  *Id.* § 1885a(b)(1).  In order to safeguard classified information, § 1885a permits the Attorney General or Deputy Attorney General to file a certification under seal.  If the Attorney

8

General or Deputy Attorney General files a declaration indicating that disclosure of the certification and any supplemental materials supporting it "would harm the national security of the United States," the district court must:

> (1) review such certification and supplemental materials in camera and ex parte; and
>
> (2) limit any public disclosure concerning such certification and the supplemental materials, including any public order following such in camera and ex parte review, to a statement as to whether the case is dismissed and a description of the legal standards that govern the order, without disclosing the paragraph of subsection (a) that is the basis for the certification.

*Id.* § 1885a(c).

Section 1885a grants private parties a role in proceedings regarding a certification, but that role is limited where a certification has been filed under seal and is subject to in camera review by the district court. A private party may "submit any relevant court order, certification, written request, or directive" to the court. *Id.* § 1885a(d). Private parties may "participate in the briefing or argument of any legal issue," but "only to the extent that such participation does not require the disclosure of classified information to such party." *Id.*

In this case, the Deputy Attorney General has filed a certification under § 1885a with respect to the Verizon Defendants. *See* Public Certification of the Deputy Attorney General of the United States (filed Dec. 16, 2013). Pursuant to § 1885a(c), a classified version of the certification has been submitted under seal for the Court's review in camera and ex parte. *See* Not. by Def. United States Dep't of Justice of the Lodging of the Classified Certification and Declaration of the Deputy Attorney General of the United States for Review *In Camera* and *Ex Parte* (filed Dec. 16, 2013). Accordingly, upon the Court's in camera examination of the Deputy Attorney General's certification and supporting evidence, Plaintiffs' claims against the Verizon Defendants must be dismissed.

9

**B.    Plaintiffs' Claims Against The Verizon Defendants Also Fail Under Other Statutory Provisions**

Plaintiffs' claims against the Verizon Defendants are foreclosed by a host of other statutory provisions as well.  Plaintiffs seek to hold the Verizon Defendants liable for allegedly complying with an *order* of the FISC *directing* Verizon to disclose certain telephone call records to the NSA.  *See* SAC ¶¶ 2, 25-26, 28.  But numerous federal statutes in addition to 50 U.S.C. § 1885a protect private parties from suit for providing assistance to the government at the direction of a court order, a point Plaintiffs concede.

FISA.  Plaintiffs challenge Verizon's alleged compliance with an order of the FISC compelling disclosure of telephone call records pursuant to 50 U.S.C. § 1861.  That section, however, expressly provides that a party cannot be held liable for complying with such an order.  Section 1861(e) states that "a person who, in good faith, produces tangible things under an order pursuant to this section shall not be liable to any other person for such production."  Because Plaintiffs allege that Verizon produced call records "under an order pursuant to [§ 1861]," the Verizon Defendants "shall not be liable to any other person for such production."  Plaintiffs themselves concede that § 1861(e) shields recipients of FISC orders from liability.  In their reply brief in support of their motion for a preliminary injunction, Plaintiffs argued:

> Indeed, "no recipient of any Section 215 Order has challenged the legality of such an Order." See 2013 FISC Opinion at 15– 16.  *That is perhaps because recipients are shielded from liability for complying with such orders*, see 50 U.S.C. § 1861(e), and thus their interests diverge from those of the orders' subjects.

Dkt. No. 31 at 30 (emphasis added).[3]

---

[3]    *Cf.* 50 U.S.C. § 1805(h) ("No cause of action shall lie in any court against any provider of a wire or electronic communication service, landlord, custodian, or other person (including any officer, employee, agent, or other specified person thereof) that furnishes any information, facilities, or technical assistance in accordance with a court order or request for emergency assistance under this chapter [the FISA] for electronic surveillance or physical search.").

ECPA.  ECPA also makes clear that a telecommunications provider cannot be held liable for supplying information to government entities who have obtained a warrant or court order. Section 2707(e) states that "[a] good faith reliance on a court warrant or order … is a complete defense to any civil or criminal action brought under this chapter or any other law."  *Id.* § 2707(e)(1); *see also id.* § 2703(e) ("No cause of action shall lie in any court against any provider of wire or electronic communication service, its officers, employees, agents, or other specified persons for providing information, facilities, or assistance in accordance with the terms of a court order, warrant, subpoena, statutory authorization, or certification under this chapter."); *Hubbard v. MySpace Inc.*, 788 F. Supp. 2d 319, 321-326 (S.D.N.Y. 2011) (granting the defendant's motion to dismiss on § 2703(e) grounds where the defendant produced information and records related to plaintiff's account in response to a warrant).

The Wiretap Act.  Title III of the Omnibus Crime Control and Safe Streets Act of 1968, more commonly known as the Wiretap Act, contains another immunity provision that bars Plaintiffs' claims.  Section 2511(2)(a)(ii) of title 18 states:

> Notwithstanding any other law, providers of wire or electronic communication service, their officers, employees, and agents, landlords, custodians, or other persons, are authorized to provide information, facilities, or technical assistance to persons authorized by law to intercept wire, oral, or electronic communications or to conduct electronic surveillance, as defined in section 101 of the Foreign Intelligence Surveillance Act of 1978, if such provider, its officers, employees, or agents, landlord, custodian, or other specified person, has been provided with—
>
>> (A) a court order directing such assistance or a court order pursuant to section 704 of the Foreign Intelligence Surveillance Act of 1978 signed by the authorizing judge[.]

Section 2511(2)(a)(ii) then provides that:

> No cause of action shall lie in any court against any provider of wire or electronic communication service, its officers, employees, or agents,

11

landlord, custodian, or other specified person for providing information, facilities, or assistance in accordance with the terms of a court order, statutory authorization, or certification under this chapter.

Here, Plaintiffs allege that Verizon is a "provider of wire or electronic communication service[s]," *see* SAC ¶¶ 18, 91, and that it "provid[ed] information" to the NSA after having been "provided with … a [FISC] court order directing such assistance," *see id.* ¶¶ 2, 25, 26, 28.  No cause of action can lie against Verizon in these circumstances.  *See, e.g., Marshall v. Willner*, No. 3:06CV-665-M, 2007 WL 2725971, at *4 (W.D. Ky. Sept. 14, 2007) ("Subsection 2511(2)(a)(ii) exempts Defendants from liability if, as Plaintiff alleges, they were presented with [an] order from the FBI permitting the wiretap, regardless of whether the order was obtained in violation of the law. …  To hold otherwise would place service providers, like Defendants, and their employees in the precarious situation of risking potential liability for following what appear to be valid court orders.")

\*       \*       \*

Because numerous federal statutes render the Verizon Defendants immune from suit, Plaintiffs' claims against them—under federal and state law—must be dismissed.

## II.     PLAINTIFFS' STATE-LAW CLAIMS MUST BE DISMISSED

Plaintiffs' *state*-law claims fail for other reasons as well:  They are preempted by federal law and are insufficiently pled even as a matter of state law.

### A.     Plaintiffs' State-Law Claims Are Preempted

Plaintiffs' state-law claims are preempted in at least three respects.  First, they seek to regulate alleged conduct in an area over which the federal government has exclusive control: the gathering of intelligence for national security purposes.  Second, they directly and impermissibly attempt to regulate the operations of the federal government, in violation of the

intergovernmental immunity doctrine.  Finally, they impose state-law requirements on Verizon that would irreconcilably conflict with Verizon's obligations to comply with an alleged federal court order.

### 1.     The Constitution Preempts The Field Of Matters Pertaining To National Security And Military Intelligence Gathering

Plaintiffs' state-law claims—which they bring against all Defendants—seek to regulate directly the manner in which the NSA allegedly gathers intelligence for national security purposes.  The Constitution entrusts such matters exclusively to the federal government, leaving no room for state regulation.  Accordingly, Plaintiffs' state-law claims are barred.

Plaintiffs' allegations make clear that they are attempting to use state law to regulate the alleged intelligence-gathering activities of the NSA.  Plaintiffs state, in the second paragraph of their second amended complaint, that "[t]his case challenges the legality of Defendants' participation and conduct in a secret and illegal *government* scheme to intercept and analyze vast quantities of domestic telephonic communications."  SAC ¶ 2 (emphasis added).  According to the second amended complaint, that allegedly unlawful scheme "was authorized and ordered by the President and primarily undertaken by the NSA."  *Id.* ¶ 5; *see also id.* ¶ 25 ("The NSA began a classified surveillance program to intercept the telephone communications of persons inside the United States.").  Consistent with those allegations, Plaintiffs charge Verizon with improperly disclosing their information to the NSA.  *Id.* ¶¶ 2, 26-27, 28.  Plaintiffs seek, among other things, an order requiring the NSA to cease and desist any activities undertaken in connection with the alleged Telephony Metadata Program and to return Plaintiffs' phone records to Verizon.  *Id.* ¶¶ 76, 80, 101.

States, however, have no power to regulate in the area of national security.  Rather, the Constitution vests "plenary and *exclusive*" control over national security and foreign policy in

the federal government.  *Tarble's Case*, 80 U.S. 397, 408 (1871); *see also Perpich v. Dep't of Def.*, 496 U.S. 334, 353 (1990) ("[S]everal constitutional provisions commit matters of foreign policy and military affairs to the *exclusive* control of the National Government.") (emphasis added); *United States v. Marchetti*, 466 F.2d 1309, 1315 (4th Cir. 1972) ("Gathering intelligence information" is "within the President's constitutional responsibility for the security of the Nation as the Chief Executive and as Commander in Chief of our Armed forces.").  Accordingly, the Constitution preempts the application of state law in the entire field of intelligence gathering for national defense.  *See Zschernig v. Miller*, 389 U.S. 429, 441 (1968); *Stehney v. Perry*, 101 F.3d 925, 939 (3d Cir. 1996) (concluding that New Jersey was preempted on the ground that "[w]ere the courts to give effect to the New Jersey … law in this context, it would … prevent any New Jersey employer from serving as an NSA contractor, an impermissible state interference with exclusive federal responsibility in matters of national security."); *see also Saleh v. Titan Corp.*, 580 F.3d 1, 10 (D.C. Cir. 2009) (plaintiffs' state-law claims against military contractors were preempted because "states … constitutionally and traditionally have no involvement in federal wartime policymaking").  State law is preempted even if it does not conflict with existing federal law.  *See Arizona v. United States*, 132 S. Ct. 2492, 2502 (2012) (Where federal law occupies the field, "even complementary state regulation is impermissible."); *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1072 (9th Cir. 2012) (en banc) (holding that "even in the absence of any express federal policy, a state law still may be preempted … if it intrudes on the field of foreign affairs").

Because Plaintiffs' state-law claims seek to regulate alleged conduct in a domain over which the federal government has exclusive power, those claims are preempted.  That is true whether or not Plaintiffs' state-law claims conflict with federal law.

14

2.      **Plaintiffs' State-law Claims Are Also Barred By The Intergovernmental Immunity Doctrine**

Separately, the Supremacy Clause commands that "the activities of the Federal Government are free from regulation by any state." *Mayo v. United States*, 319 U.S. 441, 445 (1943). This "intergovernmental immunity component of Supremacy Clause jurisprudence" means that "states may not directly regulate the federal government's operations or property." *Arizona v. Bowsher*, 935 F.2d 332, 334 (D.C. Cir. 1991). Yet, as discussed above, that is exactly what the Plaintiffs' state-law claims seek to do: to regulate the federal government's alleged intelligence-collections operations. The Supremacy Clause does not allow those state-law claims to proceed. *See Mayo*, 319 U.S. at 447 (invalidating Florida labeling requirement as applied to federal government operations); *Johnson v. Maryland*, 245 U.S. 51 (1920) (concluding that Maryland could not enforce a particular motor vehicle law against a postal worker performing his duties and noting that "even the most unquestionable and most universally applicable state laws" may not "interrupt the acts of the general government itself"); *Blackburn v. United States*, 100 F.3d 1426, 1435 (9th Cir. 1996) (intergovernmental immunity barred California from applying its Resort Act to operations at Yosemite National Park).[4]

3.      **Plaintiffs' State-Law Claims Also Conflict With Federal Law**

Plaintiffs' state-law claims against Verizon are also preempted because they conflict with federal law. Verizon simply could not comply with both a purported state-law duty not to disclose telephone call records to the NSA and its obligation under the alleged federal court

---

[4]      The intergovernmental immunity doctrine applies whether the federal government takes an action itself or acts through a private party. *See Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 814 (1989); *Union Oil Co. v. Minier*, 437 F.2d 408, 411 (9th Cir. 1970) (State law must "give way" when it interferes with the federal government's authority, regardless of "whether the United States exercises its rights directly or through the use of private persons"). The intergovernmental immunity doctrine thus bars Plaintiffs' claims against Verizon.

order requiring it to disclose that information.  Under the Supremacy Clause, "[w]here state and federal law directly conflict, state law must give way." *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567, 2577 (2011) (internal quotation marks omitted); *see also Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372 (2000) ("[S]tate law is naturally preempted to the extent of any conflict with a federal statute").  "[S]tate and federal law conflict where it is impossible for a private party to comply with both state and federal requirements." *PLIVA*, 131 S. Ct. at 2577 (quotation marks and citation omitted).  Such impossibility exists here.

Plaintiffs allege that Verizon provided their telephone records to the NSA after the FISC issued an order "directing" Verizon to do so.  SAC ¶ 2; *see also id.* ¶¶ 25-27, 28.  Thus, according to Plaintiffs' allegations, a federal court order, issued pursuant to federal law, *required* Verizon to disclose the call records at issue.  Plaintiffs' state-law claims, however, seek to hold Verizon liable under state law for this alleged conduct.  In the face of that irreconcilable conflict, "state law must give way." *PLIVA*, 131 S. Ct. at 2577.  Plaintiffs' state-law claims are therefore preempted.  *See id.* at 2577-2578 (holding that state failure-to-warn claims were preempted by federal law where "it was not lawful under federal law for the [defendants] to do what state law required of them"); *SEC v. Pacfic Bell*, 704 F. Supp. 11, 15 (D.D.C. 1989) (concluding that a California law was preempted where it would have prohibited the disclosure of telephone records whose disclosure was authorized by federal law).

### B.     Plaintiffs' State-Law Claims Otherwise Fail As A Matter Of Law

Plaintiffs' state-law claims also fail because Plaintiffs have not pled facts sufficient to meet the elements of each claim.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  A complaint with only "'labels and

conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555.  Here, Plaintiffs cannot meet these standards.

<u>Intentional Infliction of Emotional Distress</u>.  Plaintiffs' first state-law claim is for intentional infliction of emotional distress ("IIED").  The elements of that claim are:  "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress."  *See Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. Ct. App. 1982); *see also Restatement (Second) of Torts* § 46 (1965).  Plaintiffs have not alleged facts demonstrating any of these elements.

First, Plaintiffs fail plausibly to allege that the Verizon Defendants engaged in extreme and outrageous conduct.  A plaintiff must establish that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Joyner v. Sibley Memorial Hosp.*, 826 A.2d 362, 373 (D.C. Ct. App. 2003); *Restatement (Second) of Torts* § 46, cmt. d (1965) (It is not "enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.").  Here, Plaintiffs allege that Verizon turned over telephone call records to a government agency only after being ordered to do so by a FISC judge.  SAC ¶ 2.  Actions taken pursuant to a court order or otherwise

17

authorized by law do not qualify as outrageous, extreme, or highly offensive.  *See, e.g., Walsh v. Taylor*, 689 N.W. 2d 506, 517-518 (Mich. App. 2004) (IIED claim against arresting officer failed "as a matter of law" where the arresting officer relied on an arrest warrant obtained with "presumptively credible information"); *Schmidt v. Ameritech Illinois*, 329 Ill. App. 3d 1020, 1031 (2002) (telephone company's review of its employee's personal telephone records was not highly offensive because the company's actions were authorized by federal law); *Pelkey v. City of Presque Isle*, 685 A.2d 429, 431-432 (Me. 1996) (warrantless search of a restaurant by fire inspectors did not qualify as "extreme and outrageous" conduct where the search was authorized by a state statute).

Second, the amended complaint does not plausibly allege that the Verizon Defendants *intended* to cause its customers severe emotional distress.  Plaintiffs allege in conclusory fashion that the defendants "intended to cause Plaintiffs and members of the Class emotional distress and physical harm and acted in reckless disregard."  SAC ¶ 72.  They offer no factual allegations to support this counterintuitive—and wholly conclusory—assertion.  Plaintiffs are challenging what they themselves describe as a "secret" government surveillance program.  *See id.* ¶ 2.  Indeed, they allege that "The Guardian posted a *classified* order from the *secretive* Foreign Intelligence Surveillance Court."  *Id.* (emphasis added).  Plaintiffs assert without explanation that the "only purpose of [defendants'] outrageous and illegal conduct is to intimidate American citizens and keep them from challenging a tyrannical administration and government presently controlled by the Defendants, a government which seeks to control virtually every aspect of Plaintiffs, members of the Class, and other American's lives, to further its own, and Defendants['] 'agendas.'"  SAC ¶ 72.  This allegation is facially implausible and entirely unsupported, particularly as applied to the Verizon Defendants.  *See Iqbal*, 556 U.S. at 678.

Third, Plaintiffs have failed adequately to allege that they suffered "severe emotional distress."  Although the second amended complaint alleges in a conclusory manner that Plaintiffs suffered "severe emotional distress and physical harm," SAC ¶¶ 74, 75, it provides no support whatsoever for this contention.  It does not allege that Plaintiffs experienced any particular symptoms, that Plaintiffs sought medical treatment, or that any symptoms Plaintiffs suffered had any concrete impact on their lives.  Plaintiffs' bare assertion that they suffered "severe emotional distress" is insufficient to state a plausible claim.  *See, e.g., Russo v. White*, 241 Va. 23, 28 (1991) (granting motion to dismiss IIED claim where plaintiff alleged that "she was nervous, could not sleep, experienced stress and its physical symptoms, withdrew from activities, and was unable to concentrate at work," but failed to allege that, for example, "she had any objective physical injury caused by the stress, that she sought medical attention, that she was confined at home or in a hospital, or that she lost income."); *Thacker v. City of Hyattsville*, 762 A.2d 172, 197 (Md. Spec. App. 2000) (affirming grant of summary judgment against the plaintiff where the evidence showed that he continued to work after the alleged incident and where the plaintiff presented no evidence that he could not continue with his normal life activities or that he sought any professional treatment for his alleged emotional distress).

Intrusion Upon Seclusion.  Plaintiffs' second state-law claim is for intrusion upon seclusion.  That tort has three elements: (1) an invasion or interference . . . ; (2) into a place where the plaintiff has secluded himself, or into his private or secret concerns . . . ; (3) that would be highly offensive to an ordinary, reasonable person . . . ."  *Wolf v. Regardie*, 553 A.2d 1213, 1217 (D.C. App. 1989).  In addition, the plaintiff must demonstrate that the intrusion caused emotional distress.  *Id.*  Plaintiffs also have failed adequately to allege these elements.

For reasons noted above, Plaintiffs cannot demonstrate that Verizon's alleged compliance with a court order *directing* it to disclose certain call information to a government agency is so offensive as to give rise to a claim. As also explained above, Plaintiffs have failed sufficiently to allege that they experienced "emotional distress" as a result of the alleged intrusion. Finally, Plaintiffs have not alleged a cognizable intrusion. The tort of intrusion upon seclusion "is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 232 (1998) (citing *Restatement (Second) of Torts* § 652B, cmt. c). The Supreme Court has held that parties do not have a reasonable expectation of privacy in their telephone calling records. *See Smith v. Maryland*, 442 U.S. 735, 735 (1979). We recognize that this Court has recently addressed this issue in the context of the claims against the government, *see* Dkt. No. 48 at 43-56, but we respectfully submit that that Plaintiffs have not alleged facts sufficient to demonstrate that the Verizon Defendants alleged disclosure of telephone call records to the government as required by court order violated Plaintiffs' reasonable expectations of privacy under *Smith* or otherwise. In any event, as noted above, Plaintiffs fail to allege the other elements of this claim.

## III.    PLAINTIFFS' APA CLAIM AGAINST THE VERIZON DEFENDANTS MUST BE DISMISSED

Plaintiffs' second amended complaint purports to assert a claim against the Verizon Defendants under the Administrative Procedure Act. SAC ¶¶ 96-99. That claim fails as a matter of law. As an initial matter, this Court has concluded that it lacks jurisdiction to hear Plaintiffs' APA claim. *See* Dkt. No. 48 at 5, 23-31. In any event, the APA applies only to federal government "agenc[ies]." 5 U.S.C. § 702 (providing right to judicial review to those injured "because of *agency* action" (emphasis added)); *id.* § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject

20

to judicial review."); *see also Geronimo v. Obama*, 725 F. Supp. 2d 182, 186 (D.D.C. 2010) ("[F]or a claim to arise under the APA, an individual must allege action on the part of an agency[.]"); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 882 (1990); Dkt. No. 48 at 24 ("[T]he APA permits such aggrieved persons to bring suit against the United States and its officers . . . ."). Here, of course, neither Verizon Communications Inc. nor Mr. McAdam is a federal "agency" or officer. Accordingly, the Verizon Defendants are not covered by the APA, and Plaintiffs' APA claim against the Verizon Defendants necessarily fails as a matter of law. *See McKinney v. Caldera*, 141 F. Supp. 2d 25, 34-35 (D.D.C. 2001) (granting motion to dismiss the plaintiff's APA claim against the Judge Advocate General after concluding that the JAG was "not an 'agency' for the purposes of the APA"); *see also Dong v. Smithsonian Inst.*, 125 F.3d 877, 882 (D.C. Cir. 1997) (holding in case under the Privacy Act that "private organization[s]" are not authorities of the U.S. government).

## IV.  PLAINTIFFS' VAGUE AND CURSORY ALLEGATIONS REGARDING ALLEGED DISCLOSURES OF CALL CONTENTS ARE INSUFFICIENT

The only specific claims Plaintiffs assert against Verizon concern its alleged disclosure of telephone call records to the NSA pursuant to a FISC order. *See* Dkt. No. 48 at 4 n.6 ("*Klayman I* concerns only the collection and analysis of phone record data."). At various points, however, the second amended complaint contains stray allegations that Verizon disclosed the *contents* of Plaintiffs' communications. *See* SAC ¶¶ 7, 9, 39, 79. Even if these unsupported and conclusory allegations were meant to support claims against Verizon for alleged disclosures of communications *contents*, they would be insufficient: They fail to establish standing and fail to state a plausible claim for relief.

## A.        Plaintiffs Have Not Pled Facts Sufficient To Demonstrate Their Standing

Any claims by Plaintiffs relating to alleged disclosures of communications contents would fail for lack standing under *Clapper v. Amnesty International USA*, 133 S. Ct. 1138 (2013).  To establish standing to sue in federal court, Plaintiffs must demonstrate that they have suffered an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  *Clapper*, 133 S. Ct. at 1147.  To meet this injury-in-fact requirement, a plaintiff must offer more than mere speculation that he or she has been targeted by a government surveillance program.  *See id.* at 1148.

In *Clapper*, for example, the Supreme Court held that the plaintiffs lacked standing to challenge Section 702 of the FISA, which authorizes the Attorney General to conduct surveillance of foreign nationals located abroad.  *Id.*  The plaintiffs—a group of "attorneys, and human rights, labor, legal, and media organizations"—asserted that they had been injured because "there [was] an objectively reasonable likelihood that their communications with their foreign contacts will be intercepted under [§ 702.]"  *Id.* at 1145, 1147.  The Court rejected this reasoning, holding that the plaintiffs "ha[d] no actual knowledge of the Government's … targeting practices" and could "merely speculate and make assumptions about whether their communications with their foreign contacts will be acquired under [§ 702]."  *Id.* at 1148; *see also id.* at 1149.[5]

Like the plaintiffs in *Clapper*, Plaintiffs (at most) offer nothing more than speculation that their communications *contents* were disclosed to the government.  Plaintiffs' cryptic

---

[5]        Similarly, in *Halkin v. Helms*, 690 F.2d 977, 998 (D.C. Cir. 1982), the D.C. Circuit held that plaintiffs seeking to challenge alleged NSA surveillance lacked standing because they could not prove that their conversations had been intercepted:  "We hold that appellants' inability to adduce proof of actual acquisition of their communications now prevents them from stating a claim cognizable in the federal courts.  In particular, we find appellants incapable of making the showing necessary to establish their standing to seek relief."

allegations—"[o]n information and belief"—that Verizon disclosed the contents of their

communications, *id.* ¶¶ 9, 79, are wholly speculative.  Plaintiffs allege *no* factual basis—detailed

or otherwise—for their assertion, made in passing, that Verizon allegedly disclosed the contents

of their communications.  Under *Clapper*, speculative and conclusory assertions of this type are

inadequate to demonstrate standing.  *See* 133 S. Ct. at 1148-1150; *cf.* Dkt. No. 48 at 4 n.6 ("[T]o

the extent plaintiffs challenge the Government's targeted collection of internet data *content*

pursuant to Section 702 (50 U.S.C. § 1881a) under the so-called 'PRISM' program, which

targets non-U.S. persons located outside the U.S., plaintiffs have not alleged sufficient facts to

show that the NSA has targeted any of their communications.").

**B.      Plaintiffs Fail To State A Plausible Claim For Relief**

Plaintiffs' limited assertions regarding alleged disclosures of communications contents

are also insufficient to satisfy general pleading standards.  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  A complaint

with only "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action

will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Likewise, "a

complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual

enhancements.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  "Factual

allegations must be enough to raise a right to relief above a speculative level."  *Twombly*, 550

U.S. at 555.

Here, as noted, Plaintiffs provide nothing beyond the naked assertion that, "on

information and belief," Verizon has disclosed the contents of their communications.  *See* SAC

¶¶ 9, 79.  Such unadorned statements, "devoid of further factual enhancements," *Iqbal*, 556 U.S.

at 678, are insufficient to survive a motion to dismiss. *See, e.g., In re Papst Licensing GMBH & Co. KG Litig.*, 585 F. Supp. 2d 32, 35 (D.D.C. 2008) (unadorned allegation that "upon information and belief" the defendant had sold products that infringed the plaintiff's patent is not sufficient to state a claim for patent infringement under *Twombly*); *Zelaya v. UNICCO Serv. Co.*, 587 F. Supp. 2d 277, 287-288 (D.D.C. 2008) (Plaintiff failed to state a claim for relief where she offered only a "nebulous assertion of information and belief [that] defendants UNICCO and Alarcon made false and defamatory statements" about her and "fail[ed] to offer any information or facts…to inform this belief"). Accordingly, to the extent Plaintiffs are attempting to assert claims based on Verizon's alleged disclosure of the contents of Plaintiffs' communications, Plaintiffs have failed to state a plausible claim for relief.

## V.        PLAINTIFFS' CLAIMS AGAINST MR. McADAM MUST BE DISMISSED

Plaintiffs have asserted claims against both Verizon Communications Inc. and its CEO Lowell C. McAdam. Plaintiffs' claims against Mr. McAdam are foreclosed not only for all of the reasons set forth above, but also because Plaintiffs do not allege that Mr. McAdam personally did anything at all.

A corporate officer cannot be held personally liable for torts allegedly committed by the corporation's employees "based merely on the officer's position in the corporation." *Perry ex rel. Perry v. Frederick Inv. Corp.*, 509 F. Supp. 2d 11, 18 (D.D.C. 2007); *Restatement (Third) of Agency* § 7.01, cmt. d (2013) ("The fact that an agent occupies a superior position within an organization is in itself immaterial to whether the agent is subject to tort liability. An agent is not subject to liability on the basis of the agent's status within an organization."). Personal liability "must be premised upon a corporate officer's meaningful participation in the wrongful acts." *Perry*, 509 F. Supp. 2d at 18.

24

The only allegation that Plaintiffs level against Mr. McAdam is that he is the Chief Executive Officer of Verizon.  *See* SAC ¶ 16.  They do not assert that Mr. McAdam participated in the conduct alleged.  There is thus no basis for naming Mr. McAdam as a defendant in this suit, and the claims against him must be dismissed.

## VI.   THE VERIZON DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN THIS DISTRICT

Finally, Plaintiffs' claims against the Verizon Defendants must be dismissed for lack of personal jurisdiction.  "On a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of making a *prima facie* showing that the court has personal jurisdiction over each defendant."  *Mazza v. Verizon Washington, DC, Inc.*, 852 F. Supp. 2d 28, 32 (2012).  The plaintiff "cannot rest on bare allegations or conclusory statements," but rather "must allege specific facts connecting [each] defendant with the forum."  *Id.* (internal quotation marks omitted).  Here, Plaintiffs have not met that burden.  Just last year, another judge of this Court concluded that Verizon Communications Inc., a holding company, is not subject to personal jurisdiction in this forum.  *See id.*  Plaintiffs' second amended complaint provides no basis to depart from that conclusion or to subject Verizon's CEO to jurisdiction here.

### A.   Plaintiffs Must Show Continuous And Systematic Contacts With D.C. Or Allege Injuries Arising From Specific Conduct With A Sufficient Connection To D.C.

Personal jurisdiction in this district generally "must be determined by reference to District of Columbia law."  *Mazza*, 852 F. Supp. 2d at 39 (quoting *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995)); *see also* Fed. R. Civ. P. 4(k)(1)(A).  The court must also "determine whether the exercise of personal jurisdiction comports with the requirements of due process."  *Mazza*, 852 F. Supp. 2d at 40.

General Jurisdiction.  Under D.C. law, a "District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief."  D.C. Code § 13-422.  A court may also exercise this kind of "general" jurisdiction under D.C. law where a nonresident corporation is "doing business in the District" if the defendant is served in the District.  *Id.* § 13-334(a); *see also Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002).  "[T]he reach of 'doing business' jurisdiction under § 13–334(a) is coextensive with the reach of constitutional due process."  *Id.* at 510.  As a matter of due process, the Supreme Court has explained that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).

Specific Jurisdiction.  "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Goodyear*, 131 S. Ct. at 2851 (internal quotation marks omitted).  Under D.C. law, a court may exercise specific jurisdiction "over a person, who acts directly or by an agent, as to a claim for relief arising from the person's:

(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia;

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages

26

in any other persistent course of conduct, or derives substantial revenue from
goods used or consumed, or services rendered, in the District of Columbia;

….

D.C. Code § 13-423(a) (omitting subsections (5) - (7) governing real property, sureties, and
family relations).

"With limited exceptions, the Code's 'transacting any business' clause has been
interpreted to provide jurisdiction to the full extent allowed by the Due Process Clause."
*Ferrara*, 54 F.3d at 828.  When jurisdiction is based on § 13-423(a), "only a claim for relief
arising from acts enumerated in th[at] section may be asserted."  D.C. Code § 13-423(b).  To
determine whether the exercise of specific jurisdiction comports with due process, a court must
determine "whether there was 'some act by which the defendant purposefully avail[ed] itself of
the privilege of conducting activities within the forum State, thus invoking the benefits and
protections of its laws.'"  *Goodyear*, 131 S. Ct. at 2854 (quoting *Hanson v. Denckla*, 357 U.S.
235, 253 (1958)).

### B.     Verizon Communications Inc. Has No Connection To D.C. And Therefore Is Not Subject To General Or Specific Jurisdiction In D.C.

Verizon Communications Inc. has no jurisdictional connections to Washington, D.C., and
thus is not subject to general or specific jurisdiction in this case.  As explained in the
accompanying Declaration of Jane A. Schapker, Verizon Communications Inc. is a Delaware
corporation with its principal place of business in New York.  *See* Schapker Decl. ¶ 2.  The
company has never been qualified or licensed to do business in the District of Columbia, and it
does not have a registered agent for service of process in the District of Columbia.  *Id.* ¶ 4.  It
thus is not subject to general jurisdiction under section 13-422 of the D.C. Code.

27

Nor is Verizon Communications Inc. subject to general jurisdiction under D.C. Code § 13–334(a). As noted above, a court may exercise general personal jurisdiction over a nonresident corporation under that provision only if the corporation was served within the District of Columbia.[6] Here, Plaintiffs served Verizon by mailing a copy of the complaint and summons to an address in New York. *See* Schapker Decl. ¶ 6. They did not and could not serve Verizon in the District of Columbia. *Id.* Accordingly, Verizon is not subject to general personal jurisdiction under the applicable long-arm statute, § 13–334(a). *See, e.g., Gorman*, 293 F.3d at 514 (Section 13-334(a) did not confer the district court with jurisdiction over the defendant where plaintiff served the defendant by mailing a copy of the summons and complaint to the defendant's corporate headquarters in Nebraska); *McDaniel v. FEDITC LLC*, 825 F.Supp.2d 157, 161 (D.D.C. 2011) (finding service of process by mail to the defendant's principal place of business in Maryland insufficient to confer jurisdiction under Section 13–334).

In any event, Verizon Communications Inc. does not have sufficient ties to the District to subject it to general jurisdiction under § 13–334(a) of the D.C. Code or specific jurisdiction under § 13–423(a). The absence of any ties between Verizon and the District likewise means that the exercise of jurisdiction would not comport with due process. Verizon Communications Inc. is merely a holding company. *See* Schapker Decl. ¶ 3. Its sole purpose is to hold stock of other companies. *See id.* The company "does not sell, market, or provide any

---

[6]     *See* D.C. Code § 13–334(a) ("In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, when he is absent and cannot be found, by leaving a copy at the principal place of business in the District, or, where there is no such place of business, by leaving a copy at the place of business or residence of the agent in the District...."); *Janod, Inc. v. Echo Enter., Inc.*, 890 F. Supp. 2d 13, 23, n.4 (D.D.C. 2012) ("[I]n order for a court to invoke jurisdiction under Section 13–334(a), … the defendant must have been personally served [with process] in the District of Columbia."); *Johns v. Newsmax Media Inc.*, 887 F. Supp. 2d 90, 97-98 (D.D.C. 2012) ("If a company is not served in the District of Columbia, it cannot be subject to general jurisdiction under § 13–334.").

28

telecommunications services." *Id.* ¶ 4.  It thus necessarily does not do so in the District of Columbia.  The company "does not have offices in the District of Columbia, does not own or lease any real property in the District of Columbia, and does not advertise, solicit, or conduct business in the District of Columbia." *Id.* ¶ 5.  For these reasons, the Court has no basis, as a matter of D.C. law or due process, to exercise jurisdiction over Verizon.

Recognizing that Verizon Communications Inc. had no contacts with the District of Columbia, Judge Sullivan in *Mazza* concluded that the plaintiff had "not met his burden of establishing a basis for specific jurisdiction under any of the relevant categories set forth in the long-arm statute."  852 F. Supp. 2d at 40.  The Court similarly rejected general jurisdiction, noting that "Verizon Communications has proffered evidence that it does not conduct business in the District of Columbia or have any commercial ties here." *Id.* at 42 n.13.  The Court found that the plaintiff in that case could not show "that Verizon Communications [Inc.] has 'continuous and systematic' business contacts with this forum." *Id.*[7]

### C.    Plaintiffs Have Not Alleged That Mr. McAdam Has Any Connection To D.C.

Plaintiffs have not made any allegations that would establish a *prima facie* case of personal jurisdiction over Mr. McAdam, Verizon's CEO.  They have not alleged that he is domiciled in D.C. *See* D.C. Code § 13-422.  Nor do they allege that he has continuous or systematic contacts with the District.  Finally, they do not allege that he took any action giving rise to this specific lawsuit that either occurred in the District or caused injury here.  Indeed, as

---

[7]    The Court in *Mazza* also rejected the plaintiff's attempt to impute to Verizon Communications Inc. the contacts of its subsidiaries, finding that the plaintiff had done nothing to rebut Verizon Communications Inc.'s showing that it is "separate and distinct from other Verizon entities and maintains all corporate formalities." *Id.* at 42; *see also Khatib v. Alliance Bankshares Corp.*, 846 F. Supp. 2d 18, 26-34 (D.D.C. 2012).  Here, Plaintiffs do not make any allegations in their complaint that would cast doubt on Verizon Communications Inc.'s showing that it is "separate and distinct from other Verizon entities and maintains all corporate formalities."  Schapker Decl. ¶ 3.

noted above, Plaintiffs' second amended complaint does not allege that Mr. McAdam did

*anything* at all.  The only allegation regarding Mr. McAdam in the second amended complaint is

that he "is the Chief Executive Officer of Verizon Communications."  SAC ¶ 16.

## CONCLUSION

For the foregoing reasons, the claims in Plaintiffs' Class Action Second Amended

Complaint directed at the Verizon Defendants should be dismissed with prejudice.


Dated:  December 16, 2013                    Respectfully submitted,

                                             /s/ Randolph D. Moss
                                             Randolph D. Moss (D.C. Bar No. 417749)
                                             Brian M. Boynton (D.C. Bar No. 483187)
                                             WILMER CUTLER PICKERING HALE AND DORR LLP
                                             1875 Pennsylvania Avenue, NW
                                             Washington, DC 20006
                                             Tel.: (202) 663-6000
                                             Fax: (202) 663-6363
                                             randolph.moss@wilmerhale.com

                                             *Counsel for the Verizon Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2013, I filed the foregoing document with the Clerk of Court for the United States District Court for the District of Columbia using the Court's CM/ECF system, which caused notice of the filing to be served upon all counsel of record.


/s/ Randolph D. Moss
_____
Randolph D. Moss (D.C. Bar No. 417749)