**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LARRY KLAYMAN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | 1:13-cv-00851-RJL |
| v. | ) | |
| | ) | |
| BARACK OBAMA, President of the United States, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| LARRY KLAYMAN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | 1:13-cv-00881-RJL |
| v. | ) | |
| | ) | |
| BARACK OBAMA, President of the United States, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF THE GOVERNMENT DEFENDANTS'
PARTIAL MOTION TO DISMISS**

**INTRODUCTION**

In their opposition to the Government Defendants' Partial Motion to Dismiss, Plaintiffs abandoned their Administrative Procedure Act (APA) claim that the challenged National Security Agency (NSA) intelligence programs exceed the Government's statutory authority, their Stored Communications Act (SCA) claim, and their common-law tort claims. Plaintiffs' Opposition to Government Defendants' Partial Motion to Dismiss at 1-2 (ECF No. 74)[1] ("Pls.' Opp.") ("Plaintiffs, with full reservation of all rights, hereby withdraw their APA and SCA

---

[1] This is the ECF docket number in *Klayman v. Obama*, Civil Action No. 13-0851 (*Klayman I*). Plaintiffs' opposition was also filed in *Klayman v. Obama*, Civil Action No. 13-0881 (*Klayman II*). (ECF No. 56).

claims, and to streamline this case further, Plaintiffs will file an administrative federal tort claims action.  In doing so, Plaintiffs will hereby remove these common law tort claims from these cases without prejudice.").  Plaintiffs have also moved to file a Second Amended Complaint (SAC) in *Klayman II* that withdraws these claims (ECF No. 55, *Klayman II*) and, at the Court's direction, have filed a Third Amended Complaint in *Klayman I* that removed these claims from that case as well.  ECF No. 77, *Klayman I*.  Accordingly, all of these claims are now out of both *Klayman I* and *Klayman II*, as the Court recognized at the February 3, 2014, status conference.

      Plaintiffs' opposition is therefore limited to the Government Defendants' motion to dismiss (1) their claims predicated upon the alleged "PRISM" collection of communications content under Section 702 of the Foreign Intelligence Surveillance Act (FISA), and (2) their claims seeking injunctive and monetary relief based on alleged collection of bulk Internet metadata.  Pls.' Opp. at 3-10.  As explained in the Government Defendants' motion and below, Plaintiffs' arguments in support of these claims are meritless, and the claims should be dismissed.

      Plaintiffs lack standing for their claims based on alleged "PRISM" collection of the content of communications under FISA Section 702, because they have only alleged a highly speculative belief that *their* communications have been or will be collected under this authority.  Section 702 creates only a targeted collection authority and expressly prohibits the targeting of U.S. persons such as Plaintiffs.  Plaintiffs' theories about incidental collection of their communications under PRISM are even more speculative than the theory of standing the Supreme Court rejected in *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013), where the plaintiffs attempted to challenge Section 702 based on their belief that their communications with suspected terrorists would be intercepted under Section 702.  Plaintiffs here allege merely

that they communicate with people in foreign countries, and that some of those countries have been known to harbor terrorists. Such speculation is even less compelling than that rejected by the Supreme Court in *Amnesty International*, and clearly does not suffice for Article III standing.

Plaintiffs similarly do not have standing to pursue injunctive relief based on alleged bulk acquisition of Internet metadata. The NSA's bulk collection of Internet metadata under FISA's pen/trap provision, 50 U.S.C. § 1842, ceased in 2011, meaning that there is no possibility of ongoing harm from this program that could be remedied by injunctive relief. Plaintiffs' arguments about the voluntary cessation exception to the mootness doctrine miss the point. Plaintiffs lack standing to bring these claims because the program was not in operation at the time the complaint was filed and thus there was never a possibility of ongoing harm to give Plaintiffs standing to seek injunctive relief. Mootness applies when the offending conduct ceases during the litigation; that doctrine, and its exceptions, are therefore inapplicable here. In addition, no waiver of sovereign immunity allows suit against the Government for damages based on the remaining constitutionally-based claims that are pled in Plaintiffs' proposed Second Amended Complaint in *Klayman II*.[2]

---

[2] The Government Defendants' Partial Motion to Dismiss, seeking dismissal of only certain claims in both of the above-captioned cases, tolled the time to answer the entire complaints in both cases. Under Fed. R. Civ. P. 12(a)(4), service of a motion to dismiss alters the time period in which a defendant is required to respond to a complaint. The large majority of courts interpreting Rule 12(a)(4) have held that filing a partial motion to dismiss suspends the time to answer all claims pled, including those claims that are not subject to the motion, because a contrary interpretation would result in duplicative sets of pleadings in the event that the motion to dismiss is denied, and would cause confusion over the proper scope of discovery during the motion's pendency. *See, e.g., In re Vaughan Co., Realtors*, 477 B.R. 206, 226 (Bkrtcy. D. N.M. Aug. 2, 2012); *Sun v. Rickenbacker Collections*, 2012 WL 2838782, at *2 (N.D. Cal. July 10, 2012); *Talbot v. Sentinel Insur. Co., Ltd.*, 2012 WL 1068763, at *4 (D. Nev. Mar. 29, 2012) (collecting cases); *Richter v. Corporate Finance Associates, LLC*, 2007 WL 1164649, at *2 (S.D. Ind. April 19, 2007); *Godlewski v. Affiliated Computer Services, Inc.*, 210 F.R.D. 571, 572 (E.D. Va. 2002); *Tingley Systems, Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 122 (D. Mass. 2001); *Finnegan v. Univ. of Rochester Med. Center*, 180 F.R.D. 247, 249-50 (W.D.N.Y.

## ARGUMENT

I. **PLAINTIFFS LACK STANDING SO FAR AS THEIR CLAIMS ARE BASED ON ALLEGED "PRISM" COLLECTION OF COMMUNICATIONS CONTENT PURSUANT TO FISA SECTION 702**

Plaintiffs' proposed amendments to their *Klayman II* complaint do not cure their standing problems with respect to their challenge against "PRISM" collection of communications content under FISA section 702. Plaintiffs' attempt to establish standing to challenge PRISM collection is clearly foreclosed by *Amnesty International*. Plaintiffs acknowledge that Section 702 authorizes the Government to target the communications of non-U.S. persons, reasonably believed to be located outside the United States, to acquire foreign intelligence information. Pls.' Opp. at 3; *see also* 50 U.S.C. § 1881a. As the Government Defendants showed in their opposition to Plaintiffs' preliminary injunction motions and in their motion to dismiss, and as the Court noted in its preliminary injunction decision, Plaintiffs have not alleged sufficient facts to show that their communications have been or likely will be intercepted pursuant to PRISM. Gvt. Defs.' Opposition to Plaintiffs' Motions for Preliminary Injunctions at 21-22 (ECF No. 25) ("Gvt. Defs.' PI Opp."); Gvt. Defs.' Partial Motion to Dismiss at 9 (ECF No. 68) ("Gvt. Defs.' Partial MTD"); *Klayman v. Obama*, 2013 WL 6571596, at *1 n.6 (D.D.C. Dec. 16, 2013).

---

1998); *Oil Express National, Inc. v. D'Alessandro*, 173 F.R.D. 219, 220-21 (N.D. Ill. 1997); *Brocksopp Engineering, Inc. v. Bach-Simpson Ltd.*, 136 F.R.D. 485, 486-87 (E.D. Wisc. 1991); 5B C. Wright and A. Miller, Federal Practice and Procedure Civil § 1346 (3d ed.). The case espousing the minority view, *Gerlach v. Michigan Bell Tel. Co.*, 448 F. Supp. 1168, 1174 (E.D. Mich. 1978), finding that separate counts are independent bases for a lawsuit and should therefore be answered when not challenged by a motion to dismiss, has been widely rejected. *See Talbot*, 2012 WL 1068763, at *4; *Godlewski*, 210 F.R.D. at 572; *Tingley Systems*, 152 F. Supp. 2d at 122; *Brocksopp*, 136 F.R.D. at 486-87. Our research uncovered no cases in the D.C. Circuit or this district directly addressing this issue, but the court in *Openshaw v. Consolidated Engineering Services, Inc.*, 2007 WL 1087482, at *2 (D.D.C. April 10, 2007), noted, without objection, the defendant's intention to answer the complaint after the court ruled on its partial motion to dismiss.

In response, Plaintiffs first claim that their general allegation that the NSA has engaged in "a systematic program of warrantless eavesdropping upon phone and email communications of hundreds of millions of individuals, including American citizens and permanent legal residents, both within and outside of the U.S.," followed by the assertion that "[s]uch intrusive and illegal surveillance ha[s] directly impacted each and every Plaintiff," establishes that their communications have been intercepted under Section 702.  Pls.' Opp. at 4; Amended Complaint in *Klayman II* ¶¶ 55-56.  Such conclusory pleading clearly does not satisfy the standing requirement of demonstrating "'concrete, particularized, and actual or imminent'" injury. *Amnesty Int'l*, 133 S. Ct. at 1147 (quoting *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010)).  *See Block v. Meese*, 793 F.2d 1303, 1308 (D.C. Cir. 1986); *see also Interstate Natural Gas Ass'n of Am. v. FERC*, 285 F.3d 18, 46 (D.C. Cir. 2002); *American Sports Council v. U.S. Dep't of Educ.*, 850 F. Supp. 2d 288, 292, 299-300 (D.D.C. 2012).

Recognizing this deficiency, Plaintiffs add allegations to their proposed Second Amended Complaint that they communicate by telephone and email with persons in foreign countries, and that some of those countries have been known to harbor terrorists or have been the sites of terrorist attacks.  *Klayman II* SAC ¶¶ 11-20.  But that is not enough under *Amnesty International* to show that their communications have been intercepted under Section 702 or that such interception is "certainly impending" as is required to allege injury for purposes of standing.  133 S. Ct. at 1147.  Notably, Plaintiffs do not allege (plausibly or otherwise) that the people in foreign countries with whom they communicate have been targeted by the United States under PRISM, and that Plaintiffs' communications with those persons have been intercepted as a result.

Plaintiffs do not even allege that any of the people in foreign countries with whom they communicate are suspected terrorists.[3]

Even if Plaintiffs had raised such allegations, it would be to no avail. The plaintiffs in *Amnesty International* raised such allegations, and yet the Supreme Court concluded that their fear that their communications would be intercepted under Section 702 was "highly speculative" and could not support their standing to challenge Section 702. *Id.* at 1145, 1148. The *Amnesty International* plaintiffs' theory of standing relied on a "highly attenuated chain of possibilities" that: "(1) the Government will decide to target the communications of non-U.S. persons with whom [the plaintiffs] communicate; (2) in doing so, the Government will choose to invoke its authority under [Section 702] rather than utilizing another method of surveillance; (3) the Article III judges who serve on the Foreign Intelligence Surveillance Court will conclude that the Government's proposed surveillance procedures satisfy [Section 702]'s many safeguards and are consistent with the Fourth Amendment; (4) the Government will succeed in intercepting the communications of [the plaintiffs'] contacts; and (5) [the plaintiffs] will be parties to the particular communications that the Government intercepts." *Id.* at 1148.

Plaintiffs' theory of injury relies on the same attenuated chain of possibilities (with the exception of number three) that the Supreme Court found insufficient in *Amnesty International*, and is even more speculative for the reasons discussed above. Moreover, to the extent that Plaintiff Klayman alleges that *he* has been targeted by the Government under Section 702, as opposed to the people in foreign countries with whom he communicates, Section 702 expressly

---

[3] Mr. Klayman alleges that he had meetings in Spain about suing the Islamic Republic of Iran, but he does not allege that he communicated with anyone in Iran about this. *Klayman II* SAC ¶ 16. He also claims to have served the Organization of the Petroleum Exporting Countries (OPEC) with process and that OPEC has ties to terrorism. *Id.* Again, these allegations fall short of alleging actual communications with anyone in OPEC.

6

provides that U.S. persons cannot be targeted for surveillance under Section 702. 50 U.S.C. § 1881a(b)(1)-(3). *See also Amnesty Int'l*, 133 S. Ct. at 1148. Plaintiff Klayman neither alleges nor offers proof of any facts from which it could plausibly be concluded that the Government has targeted his communications in disregard of this prohibition, or that it would have any foreign intelligence reason for doing so. Plaintiffs' claims predicated upon alleged content collection under PRISM are therefore foreclosed for lack of standing "as squarely dictated" by *Amnesty International*. *Klayman*, 2013 WL 6571596, at *1 n.6.

Finally, Plaintiffs baldly assert in their brief that "the NSA PRISM program has been and is being used to illegally spy on all Americans regardless of their having any contact with terrorism or terrorists overseas." Pls.' Opp. at 6. Plaintiffs provide absolutely no support for this contention, and it is directly refuted by FISA Section 702 itself and the information the Government has confirmed about the operation of PRISM. The statute clearly forecloses the targeting of U.S. persons and further prohibits the indirect targeting of persons reasonably believed to be in the United States through the targeting of foreign persons. 50 U.S.C. § 1881a(b); *Amnesty Int'l*, 133 S. Ct. at 1144, 1148. Moreover, the Government has also made clear that the collection of the content of electronic communications under PRISM is a targeted collection program, directed at non-U.S. persons located outside the United States. *See* Gvt. Defs.' PI Opp. at 13-15.

II. **PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF BASED ON ALLEGED BULK ACQUISITION OF INTERNET METADATA, NOR IS THERE A WAIVER OF SOVEREIGN IMMUNITY FOR DAMAGES APPLICABLE TO THEIR REMAINING CONSTITUTIONAL CLAIMS**

Plaintiffs also lack standing to seek injunctive relief based on the bulk collection of certain Internet metadata—that is, certain routing, addressing, and signaling information about Internet-based electronic communications such as e-mail (*see* Gvt. Defs.' PI Opp. at 15-16)—

pursuant to FISA's pen register and trap and trace provision, 50 U.S.C. § 1842. Plaintiffs lack standing to seek prospective injunctive relief for any such claims because this activity was discontinued in 2011, thus "there is no possible ongoing harm that could be remedied by injunctive relief." *Klayman*, 2013 WL 6571596, at *1 n.6. Plaintiffs have also failed to identify a waiver of sovereign immunity for damages claims against the Government based on the alleged unconstitutionality of this activity.

Plaintiffs lack standing to seek prospective injunctive relief on the basis of their Internet metadata claims because there is no real and immediate threat of future injury from a discontinued program. Gvt. Defs.' Partial MTD at 9 n.4; *Klayman*, 2013 WL 6571596, at *1 n.6; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 105-06 (1983); *Coalition for Mercury-Free Drugs v. Sebelius*, 671 F.3d 1275, 1279-80 (D.C. Cir. 2012). The Supreme Court's decision in *Lyons* is controlling on this point. The plaintiff in *Lyons* sued the City of Los Angeles challenging an alleged "chokehold" policy implemented by the City's police officers. The complaint alleged that police stopped Mr. Lyons and applied a chokehold to him five months earlier, but provided no basis for believing that he would be subjected to such conduct in the future. The Supreme Court concluded that Mr. Lyons' allegation about past conduct did not establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer who would apply the allegedly illegal chokehold procedure to him again. Because it was not likely that Mr. Lyons would suffer future injury from the chokehold policy, he did not have standing to seek to enjoin it. *Lyons*, 461 U.S. at 105-06. *See also Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 184 (2000) ("In *Lyons*, we held that a plaintiff lacked standing to seek an injunction against the

enforcement of a police chokehold policy because he could not credibly allege that he faced a realistic threat from the policy.").

This analysis is directly applicable here. Given the fact that the bulk Internet metadata collection program under FISA's pen/trap provision was discontinued at least a year before *Klayman II* was filed, there is no likelihood that Plaintiffs will suffer future injury from this program that would warrant injunctive relief against it. In their opposition to the Government's motion to dismiss, Plaintiffs fail entirely to respond to this argument, and do not even cite *Lyons*. Pls.' Opp. at 8-10. Instead, Plaintiffs respond to an argument that the Government did not make. Plaintiffs assert that the Government argued that any Internet metadata claims are moot due to the discontinuance of the program, and they invoke the "voluntary cessation" exception to the mootness doctrine as a basis for maintaining their claims. *Id.* However, as Plaintiffs' own case authority shows, mootness and its exceptions apply when the offending conduct, existing at the time the complaint was filed, ceases during the litigation. *See, e.g.*, *Laidlaw*, 528 U.S. at 184 (noting that in contrast to *Lyons*, "Laidlaw's unlawful conduct—discharging pollutants in excess of permit limits—was occurring at the time the complaint was filed."); *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 202-03 (1968) (holding case not moot under the voluntary cessation doctrine; the offending conduct allegedly ceased after the case had been submitted to the district court). When, as here, the allegedly offending conduct ceased before the complaint was even filed, it is the plaintiff's burden to show an imminent likelihood of injury to establish standing, not the defendant's burden to show that the discontinued activity will not recur. *See Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 730 (2013) ("Although the voluntary cessation standard requires the defendant to show that the challenged behavior cannot reasonably be expected to recur, we have never held that the doctrine—by imposing this burden

on the defendant—allows the plaintiff to rely on theories of Article III injury that would fail to establish standing in the first place."); *Laidlaw*, 528 U.S. at 184. For the reasons described above, *Lyons* forecloses Plaintiffs' standing to seek injunctive relief for alleged bulk collection of Internet metadata because their allegations of future injury are speculative and unfounded.

Aside from their misguided mootness argument, Plaintiffs contest the Government's assertion that the bulk collection of certain Internet metadata pursuant to FISA's pen/trap provision ceased in 2011. But they provide no support for their contention that this program is still ongoing, and instead rely on hyperbole about an "almost Orwellian" police state. Pls.' Opp. at 10. Plaintiffs' unsupported belief that this program has not in fact terminated has no basis and must be rejected. To the extent that Plaintiffs imply that PRISM collection is what ceased in 2011, *id*. at 2 (after describing Plaintiffs' conception of PRISM, stating that the Director of National Intelligence represented that "the program ceased in 2011"), and argue that the bulk collection of Internet metadata occurred pursuant to Section 215, *id*. at 7, 10, they are wrong on both counts. The NSA acquired bulk Internet metadata under orders issued by the Foreign Intelligence Surveillance Court (FISC) pursuant to FISA's pen/trap provision, 50 U.S.C. § 1842, not Section 215 and not under PRISM. Gvt. Defs.' PI Opp. at 15-16.

Plaintiffs' claims for damages for alleged bulk Internet metadata collection must also be dismissed for the fundamental reason that Plaintiffs have not identified any waiver of sovereign immunity that would allow them to seek damages against the Government based on the alleged unconstitutionality of this conduct.[4] Now that Plaintiffs, following the initial filing of the

---

[4] The Government observes, furthermore, that Plaintiffs' claims for damages based on Internet metadata collection are so speculative as to the collection of *their* Internet metadata as to lack standing under *Amnesty International*. While the Government has declassified the existence of this program, and acknowledged that it operated in bulk and thus "on a very large scale," Gvt. Defs.' PI Opp., Exh. I at 3, it has not disclosed any more about the scope on which it operated,

Government Defendants' motion to dismiss, have withdrawn their tort, SCA and APA-based claims, only their constitutional claims remain. Although application of the APA's waiver of sovereign immunity to Plaintiffs' constitutional claims is not precluded, *see Klayman,* 2013 WL 6571596, at *13, the APA's waiver does not authorize suits against the Government for monetary relief. *See, e.g.*, *Smoking Everywhere, Inc. v. FDA*, 680 F. Supp. 2d 62, 77 n.19 (D.D.C. 2010); *Bill Barrett Corp. v. U.S. Dep't of the Interior*, 601 F. Supp. 2d 331, 336 (D.D.C. 2009). Plaintiffs cannot rely on 18 U.S.C. § 2712 for the requisite waiver, which applies to statutory claims only, as Plaintiffs, in the face of the Government's motion to dismiss, have withdrawn their statutory claims (Section 2712 also contains an exhaustion requirement with which Plaintiffs have not complied). *See* Gvt. Defs.' Partial MTD at 11 n.6. Nor can *Bivens* actions be brought against a federal agency. *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994).[5]

---

how the metadata was acquired, or from whom. *Id*. at 15-16, 22. Plaintiffs offer no proof that the NSA has actually acquired Internet metadata about their communications, or that the NSA acquired Internet metadata about "all Americans'" communications under this program. Pls.' Opp. at 6. They thus have not established that they have standing to pursue claims for money damages predicated on the collection of metadata about their online communications. *Amnesty Int'l*, 133 S. Ct. at 1146-50.

[5] The proposed Second Amended Complaint in *Klayman II*, submitted after the Government filed its motion to dismiss, contains two references to an alleged "government program" entitled "MUSCULAR." SAC ¶ 8 ("More recently, it has come to light that through a government program entitled 'MUSCULAR,' the FBI, CIA, and NSA have been intercepting information of the entirety of American citizenry from internet companies such as Google and Yahoo! as it travels over fiber optic cables from one data center to another."), ¶ 51 ("Defendants Obama, Holder, Alexander, Vinson, Clapper, Comey, Brennan, FBI, CIA, DOJ and NSA violated Plaintiffs' constitutional rights when they authorized broad and intrusive collections of records of individuals through the PRISM and MUSCULAR surveillance programs, thereby giving Defendants authority to obtain telephone and internet data for a specified amount of time."). These allegations are so vague and non-specific as to not require a response from the Government, and they should be stricken from the complaint. Plaintiffs do not allege any concrete facts about this alleged program, and the Government has not confirmed or denied its existence, let alone any facts about it. Moreover, as these allegations appear to be the only thing that ties Defendants Brennan and the CIA to *Klayman II*, these defendants should be dismissed from the case.

**CONCLUSION**

For all the foregoing reasons, as well as the reasons set forth in Government Defendants' Partial Motion to Dismiss, the Government Defendants respectfully request that the Court dismiss Plaintiffs' claims (1) challenging "PRISM" collection of communications content pursuant to FISA Section 702, and (2) seeking injunctive and monetary relief based on alleged bulk acquisition of Internet metadata.

Dated: February 10, 2014

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

JOSEPH H. HUNT
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Branch Director

*/s/James J. Gilligan*
JAMES J. GILLIGAN
Special Litigation Counsel
MARCIA BERMAN
Senior Trial Counsel
BRYAN DEARINGER
Trial Attorney
RODNEY PATTON
Trial Attorney
U.S Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6102
Washington, D.C.  20001
Phone: (202) 514-2205
Fax: (202) 616-8470

Attorneys for the Government Defendants