UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


LARRY E. KLAYMAN, ET AL.          :      Docket Nos. CA13-851
                                  :      CA13-881 (RJL)
             Plaintiffs,          :
                                  :      February 3, 2014
                                  :
v.                                :      2:30 p.m.
                                  :
BARACK HUSSEIN OBAMA, ET AL.      :
                                  :
             Defendants.          :
. . . . . . . . . . . . . . . .


TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE RICHARD J. LEON
UNITED STATES DISTRICT JUDGE


APPEARANCES:


For the Plaintiff Pro Se:     LARRY E. KLAYMAN
                              Law Office of Larry E. Klayman
                              2020 Pennsylvania Avenue, NW
                              Washington, DC 20006

For the Defendants:           JAMES J. GILLIGAN
                              RODNEY PATTON
                              MARCIA BERMAN
                              BRYAN DEARINGER
                              U.S. Department of Justice
                              20 Massachusetts Avenue, NW
                              Washington, DC 20001


For the Defendant
Verizon Communications:       RANDOLPH D. MOSS
                              Wilmer Cutler Pickering Hale &
                                  Dorr, LLP
                              1875 Pennsylvania Avenue, NW
                              Washington, DC 20006

For the Defendant
National Security Agency:          JAMES R. WHITMAN
                                   U.S. Department of Justice
                                   PO Box 7146
                                   Washington, DC 20044




Court Reporter:                    PATTY ARTRIP GELS, RMR
                                   Official Court Reporter
                                   Room 4700-A, U.S. Courthouse
                                   Washington, D.C. 20001
                                   (202) 962-0200


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

```
1                    P R O C E E D I N G S
2           COURTROOM DEPUTY:  Your Honor, we have Civil Action
3    13-851 and Civil Action 13-881 Larry Klayman et al. versus
4    Barack Hussein Obama, et al. I would ask that counsel please
5    approach the lectern and identify yourself and those at your
6    respective tables.
7           MR. KLAYMAN:  Larry Klayman for Plaintiffs, your Honor.
8           THE COURT:  Welcome back.
9           MR. KLAYMAN:  Good afternoon.
10          MS. BERMAN:  Good afternoon, Marcia Berman for the
11   Government Defendants.
12          THE COURT:  Welcome back.
13          MR. MOSS:  Good afternoon, your Honor, Randolph Moss on
14   behalf of the Verizon Defendants.
15          THE COURT:  Welcome back.  Well, I had set this hearing
16   for argument on the stipulation of dismissal without prejudice
17   and then, of course, I  no sooner than did that but the parties
18   entered into a Notice of Voluntary Dismissal.  So that really
19   takes the issue off the table.
20          I thought since the stipulation of this -- excuse me --
21   since the Notice of Voluntary Dismissal was without prejudice,
22   then I should seriously consider entertaining the existing
23   Motions at the time to determine whether or not the Motions To
24   Dismiss actually applied or not under the circumstances; but
25   once the parties entered into a stipulation of dismissal on
```

1    January 31st under Rule 41, the case is off the table.

2         So there really isn't anything to have an oral argument

3    on in that regard.  That issue is now gone and no matter how

4    clear or unclear the law may be with regard to a company's

5    response to a Court Order, no matter how clear or unclear the

6    law may be as to any lack of responsibility they might have as a

7    result of that, I am not in a position any longer to deal with

8    that issue.  So that issue is off the table, and I think really

9    what that leaves at this point, and I will wait to see what the

10   parties have to say as to what else they think may still be out

11   there, since the case is on appeal,  essentially the ongoing

12   issue of the Government's answering the complaints in this case,

13   they have not answered the complaints in the case.

14        And I have not granted their stay and so they are in a

15   position where they have not complied with the rules without the

16   Court's permission for a stay.

17        So essentially they have put themselves in a position

18   where they could be in default, and I don't know what the

19   Government has got up its sleeve or what it has got planned

20   here, but I have not permitted them not to answer these

21   complaints and I am not getting any answers.

22        So let's hear what the Government has got to say.

23        MS. BERMAN:  Your Honor, the Government filed a partial

24   Motion To Dismiss in response to the complaints on the day that

25   the response to the complaints were due and we -- in that

1    partial Motion To Dismiss we sought to dismiss the APA claim,

2    the FCA claim and the tort claims as well as any claims having

3    to do with the Section 702 content collection, prism claims and

4    internet metadata claims.

5          And so we did not answer the complaint because we filed

6    that Motion To Dismiss instead.  And Plaintiffs have now

7    responded to that Motion; and in their opposition, which was

8    just filed I believe on Friday, they have withdrawn their APA

9    and FCA claims.  They have acknowledged that their tort claims

10   cannot go forward at this time because they have not exhausted

11   their administrative remedies and they have filed -- they have

12   filed a Motion For Leave To Amend the Complaint in Klayman Two

13   to add allegations supposedly going to the Section 702 and

14   internet metadata claims.

15         We think those do not cure the standing problems there,

16   and I am prepared to explain why; but we do have a reply brief

17   due next Monday where we will lay all that out.

18         THE COURT:  So when are you going to answer the

19   complaint?

20         MS. BERMAN:  Your Honor, we believe that filing the

21   partial Motion To Dismiss tolls the time for answering on the

22   claims which we have not moved to dismiss because otherwise you

23   would have -- you could have duplicative pleadings and all sorts

24   of confusion, and we believe there is case law supporting that.

25         THE COURT:  So until I rule on that Motion, you are not

1    going to file an answer? Is that what you are telling me?

2            MS. BERMAN:  Well, and we also have an outstanding Stay

3    Motion but, yes, we did.

4            THE COURT:  The Stay Motion wasn't granted.

5            MS. BERMAN:  And that's why we filed the partial Motion

6    To Dismiss so that was our filing that was in response to the

7    complaint and if, of course, your Honor acts on that, then we

8    would go back at that point and answer if we are -- if that's

9    required.

10           THE COURT:  What part is left after Mr. Klayman's

11   filing on Friday?

12           MS. BERMAN: After--

13           THE COURT:  Constitutional claims?

14           MS. BERMAN:  Yes.  I think that it is fair to say that

15   the constitutional claims are still left.  We did not move to

16   dismiss those claims because the Fourth Amendment claim is

17   obviously on appeal to the D.C. Circuit; and the First Amendment

18   and Fifth Amendment claims there is enough, we felt, there was

19   enough of an overlap with  issues regarding the Fourth Amendment

20   claims that we did not move to dismiss on those grounds at this

21   time.

22           THE COURT:  Why not answer as to the constitutional

23   claims?

24           MS. BERMAN:  I am sorry.

25           THE COURT:  Why don't you file answers to the

1    constitutional claims?

2          MS. BERMAN:   As I said, we believe that there is case

3    law that supports the position that when you file a partial

4    Motion To Dismiss, it tolls the time to answer the remaining

5    claims in the case.

6          THE COURT:  D.C. Circuit?

7          MS. BERMAN:  I know that there is Wright Miller has a

8    chapter on this and there is case law cited in there.  I can't

9    cite the cases right now.  But I know the Government has done

10   this in other cases before too so --

11         THE COURT:  Is that what you are doing in New York?

12         MS. BERMAN:  The New York case was dismissed.

13         THE COURT:  No.  Is that the position you took before

14   the Judge ruled in New York?

15         MS. BERMAN:  We filed a Motion To Dismiss the entire

16   case at the same time we opposed to Preliminary Injunction.

17         THE COURT:  Okay.

18         MS. BERMAN:  And that was granted, the Motion To

19   Dismiss was granted in full.

20         THE COURT:  So what's the big deal about answering the

21   constitutional claims?  Why is that a big problem for the

22   Government?

23         MS. BERMAN:  Well, your Honor, we would have to answer

24   the factual allegations of the complaint.  That's what an answer

25   for is factual allegations.  So, you know, if we had to parse

1    and figure out which facts related solely to the constitutional

2    claims as opposed to the other claims, that would be difficult

3    and something that we would have to, you know, presumably in any

4    further -- you would have two answers out there.  One, we would

5    have to answer for the claims that's in the current partial

6    Motion To Dismiss and that could be very confusing.

7           So I do point out also that you say what's left after

8    the opposition to the partial Motion To Dismiss? So it is just

9    the constitutional claims, and I think that the cases also sort

10   of further narrow to just against the Government Defendants.  As

11   you started out saying, the Verizon Defendants are now out of

12   the case.

13          The Plaintiffs have also dropped the internet companies

14   and their CEOs from the Klayman Two  proposed second Amended

15   Complaint.  And so, you know, we think that the case is narrowed

16   in that way as well and it also is narrowed in terms of, as I

17   said, the allegations that they have made about Section 702 and

18   internet metadata are not sufficient to give them standing.  So

19   it is really is about Section 215 telephony metadata.

20          We think those are all good reasons for granting the

21   stay appending the appeal because really it has now narrowed to

22   the critical issue that's before the D.C. Circuit; and we don't

23   think that it makes sense to go forward on both tracks while the

24   D.C. Circuit is deciding the Fourth Amendment claims, the D.C.

25   Circuit will presumably give us some good guidance on the

1    viability of that claim and we can avoid duplicative litigation.

2           In the meantime, we can save the resources that it

3    would  take to proceed on both tracks and we can also prevent

4    any unnecessary risk of disclosure of still classified

5    information.

6           So we really think that the case is in an even stronger

7    posture now than it was --

8           THE COURT:  What do you mean the risk of disclosure of

9    classified information? You mean in answering the complaint you

10   are going to have to reveal classified information?

11          MS. BERMAN:  No.  I don't mean in answering the

12   complaint.  I mean the Plaintiffs in their response to our Stay

13   Motion have confirmed that they want to seek discovery, you

14   know, to determine the scope of the agency's surveillance and

15   whether their metadata has been correctly accessed had and

16   reviewed.

17          So they are clearly -- and they have also asked for a

18   security clearance for their lawyer.  They are clearly bringing

19   to the fore issues that could risk the disclosure of still

20   classified information; and we think that that litigation

21   surrounding will be very contentious, and it is also something

22   that is potentially avoidable depending on the outcome of the

23   D.C. Circuit appeal.

24          THE COURT:  So what's left of your Motion To Dismiss

25   now that he has filed the filing he filed on Friday? What's

1   left?

2           MS. BERMAN:  We have a reply due next week, next Monday

3   and in that reply we would explain why there is still no

4   standing for the Section 702 and internet metadata claims.

5           And that has to do with the fact that the allegations

6   that they are seeking to amend with the Second Amended

7   Complaint, they have alleged that they have, the Plaintiffs,

8   communicate with people in foreign countries and they have

9   alleged that some of those countries, again allegedly, harbor

10  terrorists, but they haven't alleged that they are communicating

11  with terrorists, they haven't alleged that even if they were,

12  that those people that they are communicating with have been

13  targeted for communication under Section 702 and, you know, as

14  you know in the Amnesty International case, you can't just

15  assume that your communications would be caught up or would be

16  incidentally intercepted through a  Section 702 targeting in

17  order to get standing to challenge Section 702.

18          THE COURT:  That's for the second case? This is your

19  reasoning for claim Klayman Two.

20          MS. BERMAN:  Yes.

21          THE COURT:  What's about Klayman One?  What's left of

22  your Motion To Dismiss as to Klayman One, standing to assert

23  constitutional violations?

24          MS. BERMAN:  I think for Klayman One, the other --

25  basically all the claims that we moved to dismiss on have been

1    conceded.

2              THE COURT:  All right.  So we will dismiss that.  We

3    will deny that Motion To Dismiss as to Klayman One.

4              MS. BERMAN:  Right.

5              THE COURT:  So now you need to answer.

6              MS. BERMAN:   The constitutional claims at that point.

7              THE COURT:  All right. So now you need to answer

8    Klayman One.

9              MS. BERMAN:  Well, like I said, your Honor, his

10   opposition was just filed last Friday.  It was actually due I

11   think a week ago before that.  So we have to digest that and we

12   have to see what's next.

13             THE COURT:  I just denied your Motion To Dismiss as to

14   Klayman One.  Did you understand what I just said?

15             MS. BERMAN:  No, you said that --

16             THE COURT:  What's left of your Motion To Dismiss as to

17   Klayman One is denied.

18             MS. BERMAN:  But there is nothing left.  What we say

19   there is nothing left I believe because he conceded that the

20   claims we moved to dismiss on were gone.  He withdrew those

21   claims so we essentially got the relief we asked for on our

22   Motion To Dismiss claim in One.

23             THE COURT:  And it is denied as moot.

24             MS. BERMAN:  Okay.

25             THE COURT:  So when are you going to answer Klayman

1    One?

2           MS. BERMAN:  Okay.  I would like to confer with my

3    colleagues for a moment if that's okay.

4           THE COURT:  You can have a week.

5           MS. BERMAN:  A week to answer or to confer? Would you

6    mind if I conferred with my colleagues?

7           THE COURT:  Was that a joke?

8           MS. BERMAN:  That was not a joke.  I didn't understand

9    you.

10          THE COURT:  You have a week to file your answer as to

11   Klayman One.

12          MS. BERMAN:  Okay.

13          THE COURT:  Now, what's left as to Klayman Two?

14          MS. BERMAN:  So what's left as to Klayman Two --

15          THE COURT:  By the way, who is at this table?

16          MS. BERMAN:  Sure.  Absolutely.  I am sorry, your

17   Honor.  I have Jim Gilligan, Tony Cappolino --

18          THE COURT: No. No.  Where they are from.

19          MS. BERMAN:  Oh, from the Department of Justice.

20          THE COURT:  Just each one and where they are from.

21          MS. BERMAN:  Jim Gilligan from the Department of

22   Justice, the Civil Division.  Anthony Coppolino Department of

23   Justice Civil Division.  Rodney Patton, Department of Justice

24   Civil Division and Bryan Dearinger Department of Justice Civil

25   Division.

1          THE COURT:  Okay.

2          MS. BERMAN:  So to get back to your question on Klayman

3     Two,  we have the reply due next Monday and then we will set out

4     why we believe there is no standing for the Section 702 and the

5     internet metadata claims.  Is that it? Any further questions?

6          THE COURT:  Do you have anything else?

7          MS. BERMAN:  No.  Thank you, your Honor.

8          THE COURT:  How about Klayman Three, have you got

9     anything to say about that?

10         MS. BERMAN:  Klayman Three, your Honor, first of all,

11    it hasn't been served and it seems to be entirely duplicative of

12    Klayman Two just with the class action allegations; and we think

13    it is a blatant attempt to circumvent the rules on class

14    certification requirements.  So -- but again it hasn't even been

15    served.

16         THE COURT:  All right.  We will see what it looks like

17    when it comes in.

18         MS. BERMAN:  Okay.  Thank you, your Honor.

19         THE COURT:  Mr. Klayman, do you have anything you want

20    to add, subtract, amplify?

21         MR. KLAYMAN:  Thank you, your Honor.  Just briefly, we

22    filed the pleadings we did because we are trying to streamline

23    the case, and  we would like it to move as quickly as possible

24    because as the Mills case points out in the D.C. Circuit, when

25    constitutional rights are violated for one minute, that's one

1   minute too long.

2         And in terms of the way these cases should proceed in

3   terms of discovery, we can start discovery without security

4   clearances.  In fact, your Honor has the ability to take things

5   in-camera and consequently we are amenable to any method that

6   would push the case along as long as you could get the truth

7   from the NSA Defendants which other courts have had a hard time

8   doing in the past.

9         And your role is extremely important, as I said last

10  time, because there is no independent oversight here.  Just a

11  few weeks after you ruled, the NSA Defendants ran off to the

12  FISC Court again and had the FISC Court rubber stamp what they

13  have been doing.

14        In terms of what they are claiming with regard to

15  Section 215 with regard to internet metadata, the cases are

16  clear that a Defendant just can't stop the conduct voluntarily

17  and try to in effect pull the rug out from under a Court making

18  the decisions here.  The Supreme Court has held, here is a quote

19  from the Supreme Court in the Friends of Earth case.

20        The Supreme Court stated:  It is well settled that a

21  Defendant's voluntary cessation of a challenge practice does not

22  deprive a Federal Court of its power to determine legality to

23  practice because if it did, the Courts would be compelled to

24  leave the Defendant free to return to his old ways.

25        And, consequently, there is no reason why this case

1    cannot proceed directly ahead; and your Honor has the ability to

2    determine whether or not they are still collecting internet

3    metadata and your Honor has the ability to determine what

4    happens with regard to Prism and we did specify with greater

5    degree of detail the contacts I have had.

6         I have had a lot of contact, for instance, with the

7    Israeli Government.  I have had contact the Prime Minister's

8    Office there, and it was revealed that just about a month ago,

9    that the NSA was tapping the phones of the Israeli Prime

10   Minister.  So this is not far-fetched.

11        Any call into the Israeli Prime Minister's Office or

12   Daniel Shapiro who was the consul, first the deputy foreign

13   minister in Israel when I met with him and then he became consul

14   from Los Angeles, now he is the Ambassador. That would be picked

15   up by NSA for sure.

16        So consequently these matters need to move forward and

17   we are ready to proceed, and that's basically all I have to say.

18        THE COURT:  Well, the Motion To Dismiss that they are

19   currently responding to won't be ripe until next week in any

20   event.  Obviously I need to take a look at whatever they file

21   and assess whether or not in light of the appeal that's going on

22   right now the Court is in a position to entertain it frankly.

23        So that will probably be the next step for me in this

24   process, taking a look at the filings that have come in on the

25   Motion To Dismiss and assessing whether or not holding a hearing

1    on the Motion To Dismiss while the case is pending appeal on the

2    constitutional issues is consistent and appropriate with D.C.

3    Circuit precedent.

4           So I will try to figure that out sometime in the next

5    two weeks.  If I decide it is, then I will probably set a

6    hearing for oral argument the on the Motion To Dismiss probably

7    within three weeks from now, four weeks from now.

8           MR. KLAYMAN:  I might point out too, your Honor reached

9    the Fourth Amendment claims.  We have First Amendment claims and

10   Fifth Amendment claims as well so they are live.  In other

11   words, they are not on appeal so we are moving everything we can

12   to get as quick a determination as we can and that your Honor

13   will probably read about -- today we filed a  Petition For Writ

14   of Certiori with the Supreme Court asking them to take the case

15   from the D.C. Circuit.

16          That's how important it is to move the case.  And with

17   regard to discovery, we can fashion a method of discovery that

18   doesn't in any way compromise national security.  We don't want

19   to compromise national security.  That's not what this case has

20   ever been about.

21          This case is about going overboard and getting

22   everybody's metadata in this country over 300 million people.

23   There are many ways through in-camera review by your Honor.  We

24   can also take depositions and someone from the NSA can be there

25   and make a ruling whether we are getting close to national

1    security information and you can come in and break any impasse.

2         I did that when we had our China Gate case against the

3    Commerce Department when I was with Judicial Watch. We had a CIA

4    Judge sitting there making a decision while I was deposing the

5    CIA briefer who had given classified information to someone who

6    was believed to be a Chinese spy, John Wong.

7         So there is lots of ways that we can do this, but we

8    can't -- I don't believe that we should waste any time here

9    because the appellate process can take a long time.  They have

10   already tried to slow it down to some degree.  They took 3 weeks

11   to file a two line Notice of Appeal.  They didn't need to do

12   that. They are trying to slowing it down by not filing the

13   answers on a timely basis.

14        I just want to get the show on the road for the

15   American people and for myself and the other Plaintiffs because

16   I am a lawyer and I have reason to believe that, you know, they

17   are accessing my data and it violates my attorney-client

18   privilege with my clients.  It has a chilling affect.  I can't

19   even talk on the phone any more and I have to go visit people

20   and even though who knows if cell phones are being turned on

21   which they have the capability to do that.

22        So speed is of the essence and there are ways that we

23   can proceed ahead. Government is very wealthy.  We are not.  So

24   even if in the unlikely event they were to prevail either at the

25   D.C. Circuit  on appeal, there is very little of the taxpayer

1    money that would be wasted in doing that as opposed to the harm

2    that would be caused to us, the American people and to the

3    Plaintiffs.

4         So as long as we can move ahead, we don't even need to

5    get into classified information initially.  Let the case move

6    forward respectfully.  We will do a case management report.  We

7    will talk about security clearances down the road.  That would

8    take some time, but we can get it rolling right now and your

9    Honor can certainly take a look at what's been going on over

10   there because frankly the American people haven't had the truth

11   and for Mr. Clapper to come forward with a letter to say that

12   internet metadata ceased in 2011 is fantasy land.

13        You might as well go to Walt Disney World on that one

14   after he did not tell the Congress the truth.  That's not to

15   attack him personally  but the reality is these Defendants have

16   not been honest with Courts or the American people. We just

17   can't believe what they say, and that's why we need to move it

18   along because every day it occurs, as it did in the Mills case,

19   it is harm to Plaintiffs and the American people.  So thank you.

20        THE COURT:  All right.  Well, I will wait to see what's

21   filed next Monday both in the reply brief and the answer and

22   then I will endeavor to make a decision very quickly thereafter

23   about setting oral argument or not setting oral argument on the

24   Motion To Dismiss as it relates to the Klayman Two.

25        MS. BERMAN:  If, your Honor, I could make one more

```
 1    point.  Thank you.  Since we are now going to be answering the
 2    Klayman One complaint, as I mentioned before, in their
 3    opposition to our Motion To Dismiss, they withdrew the APA, FCA
 4    and tort claims and it is captioned for both claims -- I am
 5    sorry -- for both complaints, but they have only filed a
 6    Proposed Amended Complaint for Klayman Two.
 7            So we would ask that those claims also be removed from
 8    Klayman One as well which will help us in answering.
 9            THE COURT:  That makes sense.  I think you might as
10    well if you are going to be taking that position, Mr. Klayman,
11    modify Klayman One to be consistent therewith.
12            MR. KLAYMAN:  Sure.
13            THE COURT:  Why don't you file a revised version of
14    Klayman One.  They can answer that one.
15            MS. BERMAN:  Thank you, your Honor.  And also I wanted
16    to point out the appeal is expedited under the Court's rules and
17    the Court of Appeals has already set a schedule for Motions and
18    we expect that my understanding is that they will be setting a
19    briefing schedule soon.
20            THE COURT:  Motions? They do Motions?
21            MS. BERMAN:  They do.  Procedural and dispositive.  So
22    Dispositive Motions I believe are due February 27th.  I just
23    wanted to make you aware of that.
24            THE COURT:  Dispositive Motions?
25            MS. BERMAN:  Yes.
```

1          THE COURT:  On an appeal from a PI ruling?

2          MS. BERMAN:  Um-hmm.  And then lastly, your Honor, the

3    last point I wanted to make is that given that we are arguing no

4    standing for the Prism Section 702 and internet metadata claims,

5    we obviously think there should not be any discovery on those

6    claims until those arguments are resolved.  Thank you, your

7    Honor.

8          THE COURT:  You are not in it any more, Mr. Moss?

9          MR. MOSS:  We are not any more.

10         THE COURT:  Thanks for your hard work.

11         MR. MOSS:  Thank you.

12         THE COURT:  We will stand in recess.

13         (Whereupon, at 3:13 p.m., the proceedings were

14    concluded.)

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF REPORTER

2

3          I, Patty A. Gels, certify that the foregoing is a

4    correct transcript from the record of proceedings in the

5    above-entitled matter.

6

7

8

9                                      _____

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**1**

**13-851** [1] - 3:3
**13-881** [1] - 3:3
**1875** [1] - 1:25

**2**

**20** [1] - 1:21
**20001** [2] - 1:21, 2:9
**20006** [2] - 1:17, 1:25
**20044** [1] - 2:4
**2011** [1] - 18:12
**2014** [1] - 1:6
**202** [1] - 2:9
**2020** [1] - 1:17
**215** [2] - 8:19, 14:15
**27th** [1] - 19:22
**2:30** [1] - 1:7

**3**

**3** [2] - 1:6, 17:10
**300** [1] - 16:22
**31st** [1] - 4:1
**3:13** [1] - 20:13

**4**

**41** [1] - 4:1
**4700-A** [1] - 2:8

**7**

**702** [9] - 5:3, 5:13, 8:17, 10:4, 10:13, 10:16, 10:17, 13:4, 20:4
**7146** [1] - 2:4

**9**

**962-0200** [1] - 2:9

**A**

**ability** [3] - 14:4, 15:1, 15:3
**above-entitled** [1] - 21:5
**absolutely** [1] - 12:16
**accessed** [1] - 9:15
**accessing** [1] - 17:17
**acknowledged** [1] - 5:9
**Action** [2] - 3:2, 3:3
**action** [1] - 13:12
**acts** [1] - 6:7
**add** [2] - 5:13, 13:20
**administrative** [1] - 5:11
**affect** [1] - 17:18
**afternoon** [3] - 3:9, 3:10, 3:13
**Agency** [1] - 2:3
**agency's** [1] - 9:14
**ago** [2] - 11:11, 15:8
**ahead** [3] - 15:1, 17:23, 18:4
**aided** [1] - 2:11

**AL** [2] - 1:4, 1:8
**al** [2] - 3:3, 3:4
**allegations** [6] - 5:13, 7:24, 7:25, 8:17, 10:5, 13:12
**alleged** [4] - 10:7, 10:9, 10:10, 10:11
**allegedly** [1] - 10:9
**Ambassador** [1] - 15:14
**amenable** [1] - 14:5
**amend** [2] - 5:12, 10:6
**Amended** [3] - 8:14, 10:6, 9:6
**Amendment** [8] - 6:16, 6:17, 6:18, 6:19, 8:24, 16:9, 16:10
**American** [5] - 17:15, 18:2, 18:10, 18:16, 18:19
**Amnesty** [1] - 10:14
**amplify** [1] - 13:20
**Angeles** [1] - 15:14
**answer** [17] - 4:20, 5:5, 5:18, 6:1, 6:8, 6:22, 7:4, 7:23, 7:24, 8:5, 11:5, 11:7, 11:25, 12:5, 12:10, 18:21, 19:14
**answered** [1] - 4:13
**answering** [7] - 4:12, 5:21, 7:20, 9:9, 9:11, 19:1, 19:8
**answers** [4] - 4:21, 6:25, 8:4, 17:13
**Anthony** [1] - 12:22
**APA** [3] - 5:1, 5:8, 19:3
**Appeal** [1] - 17:11
**appeal** [10] - 4:11, 6:17, 8:21, 9:23, 15:21, 16:1, 16:11, 16:11, 17:25, 19:16, 20:1
**Appeals** [1] - 19:17
**APPEARANCES** [1] - 1:14
**appellate** [1] - 17:9
**appending** [1] - 8:21
**applied** [1] - 3:24
**approach** [1] - 3:5
**appropriate** [1] - 16:2
**arguing** [1] - 20:3
**argument** [5] - 3:16, 4:2, 16:6, 18:23
**arguments** [1] - 20:6
**ARTRIP** [1] - 2:7
**assert** [1] - 10:22
**assess** [1] - 15:21
**assessing** [1] - 15:25
**assume** [1] - 10:15
**attack** [1] - 18:15
**attempt** [1] - 13:13
**attorney** [1] - 17:17
**attorney-client** [1] - 17:17
**Avenue** [3] - 1:17, 1:21, 1:25
**avoid** [1] - 9:1
**avoidable** [1] - 9:22
**aware** [1] - 19:23

**B**

**Barack** [1] - 3:4
**BARACK** [1] - 1:8
**basis** [1] - 17:13
**became** [1] - 15:13
**BEFORE** [1] - 1:12

**behalf** [1] - 3:14
**BERMAN** [42] - 1:19, 3:10, 4:23, 5:20, 6:2, 6:5, 6:12, 6:14, 6:24, 7:2, 7:7, 7:12, 7:15, 7:18, 7:23, 9:11, 10:2, 10:20, 10:24, 11:4, 11:6, 11:9, 11:15, 11:18, 11:24, 12:2, 12:5, 12:8, 12:12, 12:14, 12:16, 12:19, 12:21, 13:2, 13:7, 13:10, 13:18, 18:25, 19:15, 19:21, 19:25, 20:2
**Berman** [1] - 3:10
**big** [2] - 7:20, 7:21
**blatant** [1] - 13:13
**Box** [1] - 2:4
**break** [1] - 17:1
**brief** [2] - 5:16, 18:21
**briefer** [1] - 17:5
**briefing** [1] - 19:19
**briefly** [1] - 13:21
**bringing** [1] - 9:18
**Bryan** [1] - 12:24
**BRYAN** [1] - 1:20

**C**

**CA13-851** [1] - 1:4
**CA13-881** [1] - 1:5
**camera** [2] - 14:5, 16:23
**cannot** [2] - 5:10, 15:1
**capability** [1] - 17:21
**Cappolino** [1] - 12:17
**captioned** [1] - 19:4
**case** [29] - 4:1, 4:11, 4:12, 4:13, 5:24, 7:2, 7:5, 7:8, 7:12, 7:16, 8:12, 8:15, 9:6, 10:14, 10:18, 13:23, 13:24, 14:6, 14:19, 14:25, 16:1, 16:14, 16:16, 16:19, 16:21, 17:2, 18:5, 18:6, 18:18
**cases** [5] - 7:9, 7:10, 8:9, 14:2, 14:15
**caught** [1] - 10:15
**caused** [1] - 18:2
**ceased** [1] - 18:12
**cell** [1] - 17:20
**CEOs** [1] - 8:14
**certainly** [1] - 18:9
**CERTIFICATE** [1] - 21:1
**certification** [1] - 13:14
**certify** [1] - 21:3
**certiori** [1] - 16:14
**cessation** [1] - 14:21
**challenge** [2] - 10:17, 14:21
**chapter** [1] - 7:8
**chilling** [1] - 17:18
**China** [1] - 17:2
**Chinese** [1] - 17:6
**CIA** [2] - 17:3, 17:5
**Circuit** [10] - 6:17, 7:6, 8:22, 8:24, 8:25, 9:23, 13:24, 16:3, 16:15, 17:25
**circumstances** [1] - 3:24
**circumvent** [1] - 13:13
**cite** [1] - 7:9
**cited** [1] - 7:8
**Civil** [6] - 3:2, 3:3, 12:22, 12:23, 12:24

**claim** [6] - 5:1, 5:2, 6:16, 9:1, 10:19, 11:22
**claiming** [1] - 14:14
**claims** [36] - 5:2, 5:3, 5:4, 5:9, 5:14, 5:22, 6:13, 6:15, 6:16, 6:18, 6:20, 6:23, 7:1, 7:5, 7:21, 8:2, 8:5, 8:9, 8:24, 10:4, 10:25, 11:6, 11:20, 11:21, 13:5, 16:9, 16:10, 19:4, 19:7, 20:4, 20:6
**Clapper** [1] - 18:11
**class** [2] - 13:12, 13:13
**classified** [6] - 9:4, 9:9, 9:10, 9:20, 17:5, 18:5
**clear** [3] - 4:4, 4:5, 14:16
**clearance** [1] - 9:18
**clearances** [2] - 14:4, 18:7
**clearly** [2] - 9:17, 9:18
**client** [1] - 17:17
**clients** [1] - 17:18
**close** [1] - 16:25
**colleagues** [2] - 12:3, 12:6
**collecting** [1] - 15:2
**collection** [1] - 5:3
**COLUMBIA** [1] - 1:2
**Commerce** [1] - 17:3
**communicate** [1] - 10:8
**communicating** [2] - 10:10, 10:12
**communication** [1] - 10:13
**Communications** [1] - 1:23
**communications** [1] - 10:15
**companies** [1] - 8:13
**company's** [1] - 4:4
**compelled** [1] - 14:23
**complaint** [8] - 5:5, 5:12, 5:19, 6:7, 7:24, 9:9, 9:12, 19:2
**Complaint** [3] - 8:15, 10:7, 19:6
**complaints** [6] - 4:12, 4:13, 4:21, 4:24, 4:25, 19:5
**complied** [1] - 4:15
**compromise** [2] - 16:18, 16:19
**computer** [1] - 2:11
**computer-aided** [1] - 2:11
**conceded** [2] - 11:1, 11:19
**concluded** [1] - 20:14
**conduct** [1] - 14:16
**confer** [2] - 12:2, 12:5
**CONFERENCE** [1] - 1:11
**conferred** [1] - 12:6
**confirmed** [1] - 9:13
**confusing** [1] - 8:6
**confusion** [1] - 5:24
**Congress** [1] - 18:14
**consequently** [3] - 14:5, 14:25, 15:16
**consider** [1] - 3:22
**consistent** [2] - 16:2, 19:11
**constitutional** [11] - 6:13, 6:15, 6:22, 7:1, 7:21, 8:1, 8:9, 10:23, 11:6, 13:25, 16:2
**consul** [2] - 15:12, 15:13
**contact** [2] - 15:6, 15:7

**contacts** [1] - 15:5
**content** [1] - 5:3
**contentious** [1] - 9:21
**Coppolino** [1] - 12:22
**correct** [1] - 21:4
**correctly** [1] - 9:15
**counsel** [1] - 3:4
**countries** [2] - 10:8, 10:9
**country** [1] - 16:22
**course** [2] - 3:17, 6:7
**Court** [13] - 2:7, 2:8, 4:5, 14:12, 14:17, 14:18, 14:19, 14:20, 14:22, 15:22, 16:14, 19:17
**COURT** [49] - 1:1, 3:8, 3:12, 3:15, 5:18, 5:25, 6:4, 6:10, 6:13, 6:22, 6:25, 7:6, 7:11, 7:13, 7:17, 7:20, 9:8, 9:24, 10:18, 10:21, 11:2, 11:5, 11:7, 11:13, 11:16, 11:23, 11:25, 12:4, 12:7, 12:10, 12:13, 12:15, 12:18, 12:20, 13:1, 13:6, 13:8, 13:16, 13:19, 15:18, 18:20, 19:9, 19:13, 19:20, 19:24, 20:1, 20:8, 20:10, 20:12
**Court's** [2] - 4:16, 19:16
**Courthouse** [1] - 2:8
**COURTROOM** [1] - 3:2
**Courts** [2] - 14:23, 18:16
**courts** [1] - 14:7
**critical** [1] - 8:22
**cure** [1] - 5:15
**current** [1] - 8:5
**Cutler** [1] - 1:24

# D

**D.C** [11] - 2:9, 6:17, 7:6, 8:22, 8:24, 9:23, 13:24, 16:2, 16:15, 17:25
**Daniel** [1] - 15:12
**data** [1] - 17:17
**DC** [4] - 1:17, 1:21, 1:25, 2:4
**deal** [2] - 4:7, 7:20
**Dearinger** [1] - 12:24
**DEARINGER** [1] - 1:20
**decide** [1] - 16:5
**deciding** [1] - 8:24
**decision** [2] - 17:4, 18:22
**decisions** [1] - 14:18
**default** [1] - 4:18
**Defendant** [4] - 1:23, 2:2, 14:16, 14:24
**Defendant's** [1] - 14:21
**Defendants** [9] - 1:9, 1:18, 3:11, 3:14, 8:10, 8:11, 14:7, 14:11, 18:15
**degree** [2] - 15:5, 17:10
**denied** [3] - 11:13, 11:17, 11:23
**deny** [1] - 11:3
**Department** [8] - 1:20, 2:3, 12:19, 12:21, 12:22, 12:23, 12:24, 17:3
**deposing** [1] - 17:4
**depositions** [1] - 16:24
**deprive** [1] - 14:22
**DEPUTY** [1] - 3:2
**deputy** [1] - 15:12

**detail** [1] - 15:5
**determination** [1] - 16:12
**determine** [5] - 3:23, 9:14, 14:22, 15:2, 15:3
**difficult** [1] - 8:2
**digest** [1] - 11:11
**directly** [1] - 15:1
**disclosure** [3] - 9:4, 9:8, 9:19
**discovery** [6] - 9:13, 14:3, 16:17, 20:5
**Dismiss** [23] - 3:24, 4:24, 5:1, 5:6, 5:21, 6:6, 7:4, 7:15, 7:19, 8:6, 8:8, 9:24, 10:22, 11:3, 11:13, 11:16, 11:22, 15:18, 15:25, 16:1, 16:6, 18:24, 19:3
**dismiss** [7] - 5:1, 5:22, 6:16, 6:20, 10:25, 11:2, 11:20
**dismissal** [2] - 3:16, 3:25
**Dismissal** [2] - 3:18, 3:21
**dismissed** [1] - 7:12
**Disney** [1] - 18:13
**dispositive** [1] - 19:21
**Dispositive** [3] - 19:22, 19:24
**DISTRICT** [3] - 1:1, 1:2, 1:12
**Division** [4] - 12:22, 12:23, 12:24, 12:25
**Docket** [1] - 1:4
**done** [1] - 7:9
**Dorr** [1] - 1:24
**down** [3] - 17:10, 17:12, 18:7
**dropped** [1] - 8:13
**due** [6] - 4:25, 5:17, 10:2, 11:10, 13:3, 19:22
**duplicative** [3] - 5:23, 9:1, 13:11

# E

**Earth** [1] - 14:19
**effect** [1] - 14:17
**either** [1] - 17:24
**endeavor** [1] - 18:22
**entered** [2] - 3:18, 3:25
**entertain** [1] - 15:22
**entertaining** [1] - 3:22
**entire** [1] - 7:15
**entirely** [1] - 13:11
**entitled** [1] - 21:5
**essence** [1] - 17:22
**essentially** [3] - 4:11, 4:17, 11:21
**et** [2] - 3:3, 3:4
**ET** [2] - 1:4, 1:8
**event** [2] - 15:20, 17:24
**excuse** [1] - 3:20
**exhausted** [1] - 5:10
**existing** [1] - 3:22
**expect** [1] - 19:18
**expedited** [1] - 19:16
**explain** [2] - 5:16, 10:3
**extremely** [1] - 14:9

## F

**fact** [2] - 10:5, 14:4
**facts** [1] - 8:1
**factual** [2] - 7:24, 7:25
**fair** [1] - 6:14
**fantasy** [1] - 18:12
**far** [1] - 15:10
**far-fetched** [1] - 15:10
**fashion** [1] - 16:17
**FCA** [3] - 5:2, 5:9, 19:3
**February** [2] - 1:6, 19:22
**Federal** [1] - 14:22
**felt** [1] - 6:18
**fetched** [1] - 15:10
**few** [1] - 14:11
**Fifth** [2] - 6:18, 16:10
**figure** [2] - 8:1, 16:4
**file** [7] - 6:1, 6:25, 7:3, 12:10, 15:20, 17:11, 19:13
**filed** [14] - 4:23, 5:5, 5:8, 5:11, 5:12, 6:5, 7:15, 9:25, 11:10, 13:22, 16:13, 18:21, 19:5
**filing** [5] - 5:20, 6:6, 6:11, 9:25, 17:12
**filings** [1] - 15:24
**first** [2] - 13:10, 15:12
**First** [2] - 6:17, 16:9
**FISC** [1] - 14:12
**FOR** [1] - 1:2
**fore** [1] - 9:19
**foregoing** [1] - 21:3
**foreign** [2] - 10:8, 15:12
**forward** [5] - 5:10, 8:23, 15:16, 18:6, 18:11
**four** [1] - 16:7
**Fourth** [3] - 6:16, 8:24, 16:9
**fourth** [1] - 6:19
**frankly** [1] - 15:22, 18:10
**free** [1] - 14:24
**Friday** [4] - 5:8, 6:11, 9:25, 11:10
**Friends** [1] - 14:19
**full** [1] - 7:19

## G

**Gate** [1] - 17:2
**Gels** [1] - 21:3
**GELS** [1] - 2:7
**Gilligan** [2] - 12:17, 12:21
**GILLIGAN** [1] - 1:18
**given** [2] - 17:5, 20:3
**Government** [8] - 3:11, 4:19, 4:22, 4:23, 7:9, 8:10, 15:7, 17:23
**government** [1] - 7:22
**Government's** [1] - 4:12
**granted** [4] - 4:14, 6:4, 7:18, 7:19
**granting** [1] - 8:20
**greater** [1] - 15:4
**grounds** [1] - 6:20
**guidance** [1] - 8:25

## H

**Hale** [1] - 1:24
**harbor** [1] - 10:9
**hard** [2] - 14:7, 20:10
**harm** [2] - 18:1, 18:19
**hear** [1] - 4:22
**hearing** [3] - 3:15, 15:25, 16:6
**held** [1] - 14:18
**help** [1] - 19:8
**hmm** [1] - 20:2
**holding** [1] - 15:25
**honest** [1] - 18:16
**Honor** [24] - 3:2, 3:7, 3:13, 4:23, 5:20, 6:7, 7:23, 11:9, 12:17, 13:7, 13:10, 13:18, 13:21, 14:4, 15:1, 15:3, 16:8, 16:12, 16:23, 18:9, 18:25, 19:15, 20:2, 20:7
**HONORABLE** [1] - 1:12
**Hussein** [1] - 3:4
**HUSSEIN** [1] - 1:8

## I

**identify** [1] - 3:5
**impasse** [1] - 17:1
**important** [2] - 14:9, 16:16
**in-camera** [2] - 14:5, 16:23
**incidentally** [1] - 10:16
**independent** [1] - 14:10
**information** [7] - 9:5, 9:9, 9:10, 9:20, 17:1, 17:5, 18:5
**Injunction** [1] - 7:16
**instance** [1] - 15:6
**instead** [1] - 5:6
**intercepted** [1] - 10:16
**International** [1] - 10:14
**internet** [10] - 5:4, 5:14, 8:13, 8:18, 10:4, 13:5, 14:15, 15:2, 18:12, 20:4
**Israel** [1] - 15:13
**Israeli** [3] - 15:7, 15:9, 15:11
**issue** [6] - 3:19, 4:3, 4:8, 4:12, 8:22
**issues** [3] - 6:19, 9:19, 16:2

## J

**JAMES** [2] - 1:18, 2:3
**January** [1] - 4:1
**Jim** [2] - 12:17, 12:21
**John** [1] - 17:6
**joke** [2] - 12:7, 12:8
**Judge** [2] - 7:14, 17:4
**JUDGE** [1] - 1:12
**Judicial** [1] - 17:3
**Justice** [7] - 1:20, 2:3, 12:19, 12:22, 12:23, 12:24

## K

**KLAYMAN** [7] - 1:4, 1:16, 3:7, 3:9, 13:21, 16:8, 19:12

**Klayman** [29] - 1:16, 3:3, 3:7, 5:12, 8:14, 10:19, 10:21, 10:22, 10:24, 11:3, 11:8, 11:14, 11:17, 11:25, 12:11, 12:13, 12:14, 13:2, 13:8, 13:10, 13:12, 13:19, 18:24, 19:2, 19:6, 19:8, 19:10, 19:11, 19:14
**Klayman's** [1] - 6:10
**knows** [1] - 17:20

## L

**lack** [1] - 4:6
**land** [1] - 18:12
**LARRY** [2] - 1:4, 1:16
**Larry** [3] - 1:16, 3:3, 3:7
**last** [3] - 11:10, 14:9, 20:3
**lastly** [1] - 20:2
**law** [5] - 4:4, 4:6, 5:24, 7:3, 7:8
**Law** [1] - 1:16
**lawyer** [2] - 9:18, 17:16
**lay** [1] - 5:17
**Leave** [1] - 5:12
**leave** [1] - 14:24
**leaves** [1] - 4:9
**lectern** [1] - 3:5
**left** [11] - 6:10, 6:15, 8:7, 9:24, 10:1, 10:21, 11:16, 11:18, 11:19, 12:13, 12:14
**legality** [1] - 14:22
**LEON** [1] - 1:12
**letter** [1] - 18:11
**light** [1] - 15:21
**line** [1] - 17:11
**litigation** [2] - 9:1, 9:20
**live** [1] - 16:10
**LLP** [1] - 1:24
**look** [3] - 15:20, 15:24, 18:9
**looks** [1] - 13:16
**Los** [1] - 15:14

## M

**machine** [1] - 2:11
**management** [1] - 18:6
**Marcia** [1] - 3:10
**MARCIA** [1] - 1:19
**Massachusetts** [1] - 1:21
**matter** [3] - 4:3, 4:5, 21:5
**matters** [1] - 15:16
**mean** [4] - 9:8, 9:9, 9:11, 9:12
**meantime** [1] - 9:2
**mentioned** [1] - 19:2
**met** [1] - 15:13
**metadata** [12] - 5:4, 5:14, 8:18, 8:19, 9:15, 10:4, 13:5, 14:15, 15:3, 16:22, 18:12, 20:4
**method** [2] - 14:5, 16:17
**might** [4] - 4:6, 16:8, 18:13, 19:9
**Miller** [1] - 7:7
**million** [1] - 16:22

**Mills** [2] - 13:24, 18:18
**mind** [1] - 12:6
**Minister** [1] - 15:10
**minister** [1] - 15:13
**Minister's** [2] - 15:7, 15:11
**minute** [2] - 13:25, 14:1
**modify** [1] - 19:11
**moment** [1] - 12:3
**Monday** [4] - 5:17, 10:2, 13:3, 18:21
**money** [1] - 18:1
**month** [1] - 15:8
**moot** [1] - 11:23
**Moss** [2] - 3:13, 20:8
**MOSS** [4] - 1:23, 3:13, 20:9, 20:11
**Motion** [28] - 4:24, 5:1, 5:6, 5:7, 5:12, 5:21, 5:25, 6:3, 6:4, 6:5, 7:4, 7:15, 7:18, 8:6, 8:8, 9:13, 9:24, 10:22, 11:3, 11:13, 11:16, 11:22, 15:18, 15:25, 16:1, 16:6, 18:24, 19:3
**Motions** [7] - 3:23, 19:17, 19:20, 19:22, 19:24
**move** [6] - 6:15, 6:20, 13:23, 15:16, 16:16, 18:4, 18:5, 18:17
**moved** [3] - 5:22, 10:25, 11:20
**moving** [1] - 16:11
**MR** [8] - 3:7, 3:9, 3:13, 13:21, 16:8, 19:12, 20:9, 20:11
**MS** [41] - 3:10, 4:23, 5:20, 6:2, 6:5, 6:12, 6:14, 6:24, 7:2, 7:7, 7:12, 7:15, 7:18, 7:23, 9:11, 10:2, 10:20, 10:24, 11:4, 11:6, 11:9, 11:15, 11:18, 11:24, 12:2, 12:5, 12:8, 12:12, 12:14, 12:16, 12:19, 12:21, 13:2, 13:7, 13:10, 13:18, 18:25, 19:15, 19:21, 19:25, 20:2

## N

**narrow** [1] - 8:10
**narrowed** [3] - 8:15, 8:16, 8:21
**national** [3] - 16:18, 16:19, 16:25
**National** [1] - 2:3
**need** [7] - 11:5, 11:7, 15:16, 15:20, 17:11, 18:4, 18:17
**New** [3] - 7:11, 7:12, 7:14
**next** [9] - 5:17, 10:2, 11:12, 13:3, 15:19, 15:23, 16:4, 18:21
**Nos** [1] - 1:4
**nothing** [2] - 11:18, 11:19
**Notice** [3] - 3:18, 3:21, 17:11
**NSA** [5] - 14:7, 14:11, 15:9, 15:15, 16:24
**NW** [3] - 1:17, 1:21, 1:25

## O

**Obama** [1] - 3:4
**OBAMA** [1] - 1:8
**obviously** [3] - 6:17, 15:20, 20:5
**occurs** [1] - 18:18
**OF** [3] - 1:2, 1:11, 21:1

**Office** [3] - 1:16, 15:8, 15:11
**Official** [1] - 2:8
**old** [1] - 14:24
**once** [1] - 3:25
**One** [12] - 10:22, 10:24, 11:3, 11:8, 11:14, 11:22, 12:1, 12:11, 19:2, 19:8, 19:11, 19:14
**one** [9] - 8:4, 10:21, 11:17, 12:20, 13:25, 18:13, 18:25, 19:14
**ongoing** [1] - 4:11
**opposed** [2] - 7:16, 8:2, 18:1
**opposition** [4] - 5:7, 8:8, 11:10, 19:3
**oral** [4] - 4:2, 16:6, 18:23
**order** [1] - 10:17
**Order** [1] - 4:5
**otherwise** [1] - 5:22
**outcome** [1] - 9:22
**outstanding** [1] - 6:2
**overboard** [1] - 16:21
**overlap** [1] - 6:19
**oversight** [1] - 14:10

## P

**p.m** [2] - 1:7, 20:13
**parse** [1] - 7:25
**part** [1] - 6:10
**partial** [7] - 4:23, 5:1, 5:21, 6:5, 7:3, 8:5, 8:8
**parties** [3] - 3:17, 3:25, 4:10
**past** [1] - 14:8
**Patton** [1] - 12:23
**PATTON** [1] - 1:19
**PATTY** [1] - 2:7
**Patty** [1] - 21:3
**pending** [1] - 16:1
**Pennsylvania** [2] - 1:17, 1:25
**people** [9] - 10:8, 10:12, 16:22, 17:15, 17:19, 18:2, 18:10, 18:16, 18:19
**permission** [1] - 4:16
**permitted** [1] - 4:20
**personally** [1] - 18:15
**Petition** [1] - 16:13
**phone** [1] - 17:19
**phones** [2] - 15:9, 17:20
**PI** [1] - 20:1
**picked** [1] - 15:14
**Pickering** [1] - 1:24
**Plaintiff** [1] - 1:16
**Plaintiffs** [9] - 1:5, 3:7, 5:6, 8:13, 9:12, 10:7, 17:15, 18:3, 18:19
**planned** [1] - 4:19
**pleadings** [2] - 5:23, 13:22
**PO** [1] - 2:4
**point** [8] - 4:9, 6:8, 8:7, 11:6, 16:8, 19:1, 19:16, 20:3
**points** [1] - 13:24
**position** [7] - 4:7, 4:15, 4:17, 7:3, 7:13, 15:22, 19:10
**possible** [1] - 13:23

**posture** [1] - 9:7
**potentially** [1] - 9:22
**power** [1] - 14:22
**practice** [2] - 14:21, 14:23
**precedent** [1] - 16:3
**prejudice** [2] - 3:16, 3:21
**Preliminary** [1] - 7:16
**prepared** [1] - 5:16
**presumably** [2] - 8:3, 8:25
**prevail** [1] - 17:24
**prevent** [1] - 9:3
**Prime** [3] - 15:7, 15:9, 15:11
**prism** [3] - 5:3, 15:4, 20:4
**privilege** [1] - 17:18
**Pro** [1] - 1:16
**problem** [1] - 7:21
**problems** [1] - 5:15
**procedural** [1] - 19:21
**proceed** [5] - 9:3, 14:2, 15:1, 15:17, 17:23
**Proceedings** [1] - 2:11
**proceedings** [2] - 20:13, 21:4
**process** [2] - 15:24, 17:9
**produced** [1] - 2:11
**proposed** [2] - 8:14, 19:6
**pull** [1] - 14:17
**push** [1] - 14:6
**put** [1] - 4:17

## Q

**questions** [1] - 13:5
**quick** [1] - 16:12
**quickly** [2] - 13:23, 18:22
**quote** [1] - 14:18

## R

**ran** [1] - 14:11
**RANDOLPH** [1] - 1:23
**Randolph** [1] - 3:13
**reached** [1] - 16:8
**read** [1] - 16:13
**ready** [1] - 15:17
**reality** [1] - 18:15
**really** [6] - 3:18, 4:2, 4:8, 8:19, 8:21, 9:6
**reason** [2] - 14:25, 17:16
**reasoning** [1] - 10:19
**reasons** [1] - 8:20
**recess** [1] - 20:12
**record** [1] - 21:4
**regard** [6] - 4:3, 4:4, 14:14, 14:15, 15:4, 16:17
**regarding** [1] - 6:19
**related** [1] - 8:1
**relates** [1] - 18:24
**relief** [1] - 11:21
**remaining** [1] - 7:4
**remedies** [1] - 5:11

**removed** [1] - 19:7
**reply** [5] - 5:16, 10:2, 10:3, 13:3, 18:21
**report** [1] - 18:6
**reported** [1] - 2:11
**REPORTER** [1] - 21:1
**Reporter** [2] - 2:7, 2:8
**required** [1] - 6:9
**requirements** [1] - 13:14
**resolved** [1] - 20:6
**resources** [1] - 9:2
**respectfully** [1] - 18:6
**respective** [1] - 3:6
**responded** [1] - 5:7
**responding** [1] - 15:19
**response** [5] - 4:5, 4:24, 4:25, 6:6, 9:12
**responsibility** [1] - 4:6
**result** [1] - 4:7
**return** [1] - 14:24
**reveal** [1] - 9:10
**revealed** [1] - 15:8
**review** [1] - 16:23
**reviewed** [1] - 9:16
**revised** [1] - 19:13
**RICHARD** [1] - 1:12
**rights** [1] - 13:25
**ripe** [1] - 15:19
**risk** [3] - 9:4, 9:8, 9:19
**RJL** [1] - 1:5
**RMR** [1] - 2:7
**road** [2] - 17:14, 18:7
**Rodney** [1] - 12:23
**RODNEY** [1] - 1:19
**role** [1] - 14:9
**rolling** [1] - 18:8
**Room** [1] - 2:8
**rubber** [1] - 14:12
**rug** [1] - 14:17
**rule** [1] - 5:25
**Rule** [1] - 4:1
**ruled** [2] - 7:14, 14:11
**rules** [3] - 4:15, 13:13, 19:16
**ruling** [2] - 16:25, 20:1

## S

**save** [1] - 9:2
**schedule** [2] - 19:17, 19:19
**scope** [1] - 9:14
**Se** [1] - 1:16
**second** [3] - 8:14, 10:6, 10:18
**Section** [11] - 5:3, 5:13, 8:17, 8:19, 10:4, 10:13, 10:16, 10:17, 13:4, 14:15, 20:4
**Security** [1] - 2:3
**security** [6] - 9:18, 14:3, 16:18, 16:19, 17:1, 18:7
**see** [4] - 4:9, 11:12, 13:16, 18:20
**seek** [1] - 9:13

**seeking** [1] - 10:6
**sense** [2] - 8:23, 19:9
**seriously** [1] - 3:22
**served** [2] - 13:11, 13:15
**set** [4] - 3:15, 13:3, 16:5, 19:17
**setting** [3] - 18:23, 19:18
**settled** [1] - 14:20
**Shapiro** [1] - 15:12
**shorthand** [1] - 2:11
**show** [1] - 17:14
**sitting** [1] - 17:4
**sleeve** [1] - 4:19
**slow** [1] - 17:10
**slowing** [1] - 17:12
**solely** [1] - 8:1
**someone** [2] - 16:24, 17:5
**sometime** [1] - 16:4
**soon** [1] - 19:19
**sooner** [1] - 3:17
**sorry** [3] - 6:24, 12:16, 19:5
**sort** [1] - 8:9
**sorts** [1] - 5:23
**sought** [1] - 5:1
**specify** [1] - 15:4
**speed** [1] - 17:22
**spy** [1] - 17:6
**stamp** [1] - 14:12
**stand** [1] - 20:12
**standing** [7] - 5:15, 8:18, 10:4, 10:17, 10:22, 13:4, 20:4
**start** [1] - 14:3
**started** [1] - 8:11
**STATES** [2] - 1:1, 1:12
**STATUS** [1] - 1:11
**stay** [5] - 4:14, 4:16, 6:2, 6:4, 8:21
**Stay** [1] - 9:12
**step** [1] - 15:23
**still** [6] - 4:10, 6:15, 9:4, 9:19, 10:3, 15:2
**stipulation** [3] - 3:16, 3:20, 3:25
**stop** [1] - 14:16
**streamline** [1] - 13:22
**stronger** [1] - 9:6
**subtract** [1] - 13:20
**sufficient** [1] - 8:18
**supporting** [1] - 5:24
**supports** [1] - 7:3
**supposedly** [1] - 5:13
**Supreme** [4] - 14:18, 14:19, 14:20, 16:14
**surrounding** [1] - 9:21
**surveillance** [1] - 9:14

## T

**table** [4] - 3:19, 4:1, 4:8, 12:15
**tables** [1] - 3:6
**tapping** [1] - 15:9
**targeted** [1] - 10:13

**targeting** [1] - 10:16
**taxpayer** [1] - 17:25
**telephony** [1] - 8:19
**terms** [4] - 8:16, 14:2, 14:3, 14:14
**terrorists** [2] - 10:10, 10:11
**THE** [50] - 1:2, 1:12, 3:8, 3:12, 3:15, 5:18, 5:25, 6:4, 6:10, 6:13, 6:22, 6:25, 7:6, 7:11, 7:13, 7:17, 7:20, 9:8, 9:24, 10:18, 10:21, 11:2, 11:5, 11:7, 11:13, 11:16, 11:23, 11:25, 12:4, 12:7, 12:10, 12:13, 12:15, 12:18, 12:20, 13:1, 13:6, 13:8, 13:16, 13:19, 15:18, 18:20, 19:9, 19:13, 19:20, 19:24, 20:1, 20:8, 20:10, 20:12
**themselves** [1] - 4:17
**thereafter** [1] - 18:22
**therewith** [1] - 19:11
**three** [1] - 16:7
**Three** [2] - 13:8, 13:10
**timely** [1] - 17:13
**today** [1] - 16:13
**tolls** [2] - 5:21, 7:4
**Tony** [1] - 12:17
**took** [2] - 7:13, 17:10
**tort** [3] - 5:2, 5:9, 19:4
**tracks** [2] - 8:23, 9:3
**TRANSCRIPT** [1] - 1:11
**transcript** [2] - 2:11, 21:4
**transcription** [1] - 2:11
**tried** [1] - 17:10
**truth** [3] - 14:6, 18:10, 18:14
**try** [2] - 14:17, 16:4
**trying** [2] - 13:22, 17:12
**turned** [1] - 17:20
**two** [4] - 5:12, 8:4, 16:5, 17:11
**Two** [8] - 8:14, 10:19, 12:13, 12:14, 13:3, 13:12, 18:24, 19:6

## U

**U.S** [3] - 1:20, 2:3, 2:8
**um-hmm** [1] - 20:2
**unclear** [2] - 4:4, 4:5
**under** [5] - 3:24, 4:1, 10:13, 14:17, 19:16
**UNITED** [2] - 1:1, 1:12
**unlikely** [1] - 17:24
**unnecessary** [1] - 9:4
**up** [3] - 4:19, 10:15, 15:15

## V

**Verizon** [3] - 1:23, 3:14, 8:11
**version** [1] - 19:13
**versus** [1] - 3:3
**viability** [1] - 9:1
**violated** [1] - 13:25
**violates** [1] - 17:17
**violations** [1] - 10:23
**visit** [1] - 17:19

6

**voluntarily** [1] - 14:16
**Voluntary** [2] - 3:18, 3:21
**voluntary** [1] - 14:21

# W

**wait** [2] - 4:9, 18:20
**Walt** [1] - 18:13
**Washington** [5] - 1:17, 1:21, 1:25, 2:4,
2:9
**waste** [1] - 17:8
**wasted** [1] - 18:1
**Watch** [1] - 17:3
**ways** [4] - 14:24, 16:23, 17:7, 17:22
**wealthy** [1] - 17:23
**week** [6] - 10:2, 11:11, 12:4, 12:5,
12:10, 15:19
**weeks** [5] - 14:11, 16:5, 16:7, 17:10
**welcome** [2] - 3:8, 3:12
**Welcome** [1] - 3:15
**WHITMAN** [1] - 2:3
**Wilmer** [1] - 1:24
**withdrawn** [1] - 5:8
**withdrew** [2] - 11:20, 19:3
**Wong** [1] - 17:6
**words** [1] - 16:11
**World** [1] - 18:13
**Wright** [1] - 7:7
**Writ** [1] - 16:13

# Y

**York** [3] - 7:11, 7:12, 7:14
**yourself** [1] - 3:5