**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LARRY KLAYMAN, et. al.,

Plaintiffs,

v.

BARACK HUSSEIN OBAMA II, et. al.

Defendants.

Civil Action Number: 13-cv-851

Judge Richard J. Leon

**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTIONS TO REMOVE THE STAY OF THE PRELIMINARY INJUNCTION ORDER OF DECEMBER 16, 2013**

Plaintiffs Larry Klayman, Charles Strange and Mary Ann Strange, hereby file this Reply to the Government Defendants' Opposition to Plaintiffs' Motions to Remove the Stay of the Preliminary Injunction Order of December 16, 2013. ("Defs. Mot."). This Court initially stayed its preliminary injunction "in light of the significant national security interests at stake" and "the novelty of the constitutional issues" involved. *Klayman v. Obama*, 957 F. Supp. 2d 1, 43 (D.D.C. 2013). In Defs. Mot., the Government Defendants disingenuously focus solely on these issues, adding, despite the Court record and numerous examples that prove otherwise, that they have not slowed down the appellate process.

Under the standard for a stay pending appeal, a court considers four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 434 (2009). The person requesting the stay bears the

burden of showing that individualized review of these factors weigh in his or her favor. *Id*. at 433-34. This Court has issued a stay on December 16, 2013; however, because the Government Defendants oppose Plaintiffs in lifting the stay for Plaintiffs Larry Klayman and Charles Strange, they must now bear the burden of proving the four factors.

## I. DEFENDANTS ARE NOT LIKELY TO SUCCEED ON THE MERITS.

This first factor requires more than a mere possibility that relief will be granted. The chance of success must be "better than negligible," and more than a "mere possibility of relief." *Id*. at 434. The Government Defendants simply cannot prove that they will succeed on the merits in the U.S. Court of Appeals for the District of Columbia Circuit ("Circuit Court"). After all, the Circuit Court has long recognized that "as a general matter, warrantless searches are per se unreasonable under the Fourth Amendment.'" *Nat'l Fed'n of Fed. Emps.-IAM v. Vilsack*, 681 F.3d 483, 488-89 (D.C. Cir. 2012); *see also Chandler v. Miller*, 520 U.S. 305, 313 (1997) ("To be reasonable under the Fourth Amendment, a search ordinarily must be based on individualized suspicion of wrongdoing."). In addition, the Circuit Court held "[i]t has long been established that the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009). Indeed, here, this Court ruled that *Plaintiffs* are significantly likely to succeed on the merits of their Fourth Amendment claim and stayed its appeal only because of the potential national security issues and the novelty of the constitutional issues involved.

Simply put, under the circumstances of this case which have transpired since the stay was issued on December 16, 2013 and Defendants obstructionism and misconduct, there are no longer national security issues present when the motion to lift the stay is only for Plaintiffs Larry Klayman and Charles Strange – that is, unless, falsely, the Government Defendants come

forward again and attempt to prejudice this Court again by saying the two named Plaintiffs may be related to terrorists or terrorist activities. In fact, since the Preliminary Injunction Order of December 16, 2013, both Plaintiff Klayman and Plaintiff Strange have continued to receive phone calls from four-digit numbers, received text messages from three, four, five and six digit numbers and have purportedly "sent out" messages to others that they did not compose or send. Both Plaintiffs' constitutional rights, particularly Larry Klayman, an attorney whose attorney-client privileges are invaded and violated on a daily basis, continue to be grossly breached. Plaintiff Klayman should not be required to travel nationwide to meet in person with clients in a secure location because his clients and potential clients not only do not trust but also know for a fact because of recent forced disclosures by the Government Defendants that the information they provide to their attorney will not be confidential and are being accessed by the Government Defendants.

In addition, while Government Defendants have refused to participate in a Rule 26[1] conference or engage in formal court discovery, *see* [Dkt # 103], they do not need to use formal court procedures to obtain so-called disclosures; they have already accessed all of Plaintiffs' metadata and confidential communications through their illegal activities. For the Government Defendants, court sanctioned disclosures or discovery of Plaintiffs is a mere "formality."

[1] Rule 26 of the Federal Rules of Civil Procedure states, in pertinent part, "(f) Conference of the Parties; Planning for Discovery . . . (1) *Conference Timing*. Except in a proceeding exempt from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise, the parties must confer as soon as practicable – and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)." Fed. R. Civ. P. 26.

## II. LIFTING THE STAY FOR PLAINTIFFS LARRY KLAYMAN AND CHARLES STRANGE WILL NOT IRREPARABLY INJURE GOVERNMENT DEFENDANTS.

A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case. A party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion. *Nken*, 556 U.S. at 433.

## III. THE REMOVAL OF THE STAY WILL NOT SUBSTANTIALLY INJURE OTHER PARTIES INTERESTED IN THE PROCEEDING.

In its Preliminary Injunction Order, this Court found that "[a]lthough it is true that granting plaintiffs the relief they request will force the Government to identify plaintiffs' phone numbers and metadata records, and then subject them to otherwise unnecessary individual scrutiny, that is the only way to remedy the constitutional violations that plaintiffs are substantially likely to prove on the merits." Memorandum Opinion of December 16, 2013 ("Mem. Op.").

The Government Defendants falsely hide behind national security issues claiming that "Plaintiffs' motions . . . [do not] address the Court's grounds (including the interests of national security) for issuing the stay . . ." Defs. Mot. at 2. Plaintiffs concur that the security of our nation is vitally important, but not at the risk of violating every American's basic human and constitutional rights. As this Court recognized, "[t]he Government could have requested permission to present additional, potentially classified evidence *in camera*, but it chose not to do so." Mem. Op. at 62 *65. It continues, "[plaintiffs] privacy interests outweigh the Government's interest in collecting and analyzing bulk telephony metadata and therefore the NSA's bulk collection program . . ." *Id*. at 62.

Most importantly, however, are the Government Defendants' false claims that it would be burdensome to comply with any order that requires the NSA to remove plaintiffs from its database. Government's Opposition to Preliminary Injunction at 65. This Court clearly sees that " . . . the public has no interest in saving the Government from the burdens of complying with the Constitution!" Mem. Op. at 65. "To the extent that removing plaintiffs from the database would create a risk of 'eliminating, or cutting off potential call chains," Shea Declaration at ¶ 65, the Government [Defendants] concede[s] that the odds of this happening are miniscule.'" Mem. Op. at 66 *68. *See* Shea Declaration at ¶ 23 ("Only the tiny fraction of the telephony metadata records that are responsive to queries authorized under the RAS standard are extracted, reviewed, or disseminated . . ."). As this Court recognized, " . . . I am *certainly* not convinced that the removal of two individuals from the database will 'degrade' the program in any meaningful sense." Mem. Op. at 66.

## IV. THE REMOVAL OF THE STAY FURTHERS THE PUBLIC INTEREST.

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Am. Freedom Def. Initiative v. Wash. Metro. Area Transit Auth.*, 898 F. Supp. 2d 73, 84 (D.D.C. 2012). This Court rules that "[t]hat issue looms large in this case, given the significant privacy interests at stake and the unprecedented scope of the NSA's collection and querying efforts . . ." Mem. Op. at 65. What furthers the public interest more than maintaining confidentiality between an attorney and his client, a doctor and his patient, even a priest and his congregate? A lift of the stay for Plaintiffs Larry Klayman and Charles Strange does not present any national security issues nor does it harm the public interest; it simply allows two Plaintiffs – who have already been granted a preliminary injunction because this Court found the Government Defendant's behavior to be unconstitutional – to continue their vocations and

indeed their lives without unnecessary, overarching, intimidating, coercive and illegal government interference.

## V. GOVERNMENT DEFENDANTS CONTINUE TO ABUSE THE JUDICAL PROCESS RESULTING IN PREJUDICE TO PLAINTIFFS.

This Court emphasized several times the need to move this case forward quickly. The Honorable Richard J. Leon firmly instructed this at the status conference of November 18 and again in his December 16, 2013 order. Since then the Government Defendants have engaged in a continuing pattern of obstructionism in bad faith.

**First**, instead of moving the case along, the Government Defendants refuse to acknowledge service of process of the individual Government Defendants [Dkt. #88], thereby preventing the case from moving forward with regard to them.

**Second**, the Government Defendants have also filed an answer – only after the Court reminded them that they would otherwise be in default – that is factually and legally deficient and which is an insult to the Court. [Dkt. # 83].

**Third**, they refused to answer paragraphs on the grounds of national security while this Court has a security clearance. As discussed above, the Government Defendants could have filed two answers; one for the public and one for the Court *in camera*. It is clear that the Government Defendants are acting in bad faith, do not trust this Court and continue to flout its process and authority.

**Fourth**, Government Defendants have failed and even refused to participate in a Rule 26 disclosure conference. [Dkt #110] They obviously do not need to, given their complete illegal access to all of Plaintiffs confidential telephonic and Internet communications. Discovery is simply irrelevant for the Government Defendants, given their continuing unconstitutional conduct.

**Fifth**, the Government Defendants have also slowed down the appellate process by requesting an eight-week extension to file dispositive motions. [Dkt # 1482429 Appellate Court] Then, after the Circuit Court granted them an extension of time of six weeks to do so, and after the six weeks had ticked off, they then claimed that they did not need to file dispositive motions [Dkt # 1488122] after all so instead filed an outrageous and factually and legally misleading pleading simply designed to prejudice the Circuit Court's appellate review.

**Sixth**, the Government Defendants also failed to join Plaintiffs in seeking immediate review by the U.S. Supreme Court which undoubtedly would have sped up the appellate process.

**Seventh**, and most outrageously, the Government Defendants continue to lie to this Court about collecting Internet metadata – and filed a fraudulent motion to dismiss on that basis – when in fact, the Government shifted the Internet collection from Section 215 to 702. The Government Defendants failed to advise this Court of its shell-game and in fact misled it. [Dkt # 106]

All of these factors cry out for this Court to extend no further courtesy to Government and Individual Defendants but instead to lift the stay with regard to Larry Klayman and Charles Strange so they can communicate with each other free from having these Government Defendants access their attorney-client and other communications, as well as prevent the Government Defendants from continuing to engage in what is illegal, unconstitutional and unauthorized discovery.

For the foregoing reasons, Plaintiffs' motion to lift the stay should respectfully be granted.

Dated: April 30, 2014

Respectfully submitted,

/s/ *Larry Klayman*
Larry Klayman, Esq.

General Counsel
Freedom Watch, Inc.
D.C. Bar No. 334581
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of April, 2014 a true and correct copy of the foregoing Reply To Defendants' Opposition To Plaintiffs' Motions To Remove The Stay Of The Preliminary Injunction Order Of December 16, 2013 (Civil Action No. 13-cv- 851) was submitted electronically to the District Court for the District of Columbia and served via CM/ECF upon the following:

James J. Gilligan
Special Litigation Counsel
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C. 20044
(202) 514-3358
Email: James.Gilligan@usdoj.gov

Randolph D. Moss
WILMER CUTLER PICKERING HALE & DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6640
Fax: (202) 663-6363
Email: randolph.moss@wilmerhale.com

Attorneys for Defendants.

Respectfully submitted,
/s/ *Larry Klayman*

Larry Klayman, Esq.
D.C. Bar No. 334581
Klayman Law Firm
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006
Tel: (310) 595-0800