**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LARRY KLAYMAN, et. al.,

       Plaintiffs,

v.

BARACK HUSSEIN OBAMA II, et. al.

       Defendants.

Civil Action Number:
  1:13-cv-0851-RJL

Judge Richard J. Leon

## PLAINTIFFS' REPLY TO THE DEFENDANTS' OPPOSITION IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs respectfully submit this Reply in support of Plaintiffs' Motion for Partial Summary Judgment and in reply to the Government Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment, concerning partial summary judgment on the liability phase only of Plaintiffs' claims for violation of the Fourth Amendment to the U.S. Constitution. Plaintiffs also move that the case proceed to discovery and trial on the question of damages and upon Plaintiffs' First and Fifth Amendment claims.

## I.     INTRODUCTION

In their Opposition to partial summary judgment, Defendants mostly restate their previous arguments that Defendants had briefed in opposition to the Plaintiffs' Motions for Preliminary Injunction, and ask the Court to now reverse its reasoning, analysis, and rulings and arrive at inconsistent positions in the context of this motion for partial summary judgment.

However, the Court has already ruled on Defendants arguments.  Those decisions on key issues – which now form the law of the case – are sufficient to justify partial summary judgment

now, including for judicial economy.  The threshold for the Court issuing a preliminary

injunction was higher than for now entering partial summary judgment. Plaintiffs move the Court

to apply the Court's same analysis, reasoning, and findings consistently now and come to the

same decision on the same issues in the context of partial summary judgment.  Plaintiffs

incorporate by reference their prior briefing and the Court's December 16, 2013, Memorandum

Opinion ("Mem. Op.") in support of their motion for partial summary judgment.

## II.     FOURTH AMENDMENT ANALYSIS CONTROLLED BY UNITED STATES v. JONES, NOT SMITH v. MARYLAND

This Court already ruled that the Supreme Court precedent of Smith v. Maryland, 442

U.S. 735 (1979) does not apply so broadly as to reach the practiced challenged here, relying

largely on the more recent precedent of United States v. Jones, 565 U.S. , 132 S.Ct. 945 (2012).

Among other points, this Court ruled that the Supreme Court's analysis in Jones that the

constant, pervasive nature of GPS tracking was fundamentally different from Smith or United

States v. Knotts, 460 U.S. 276 (1983), and therefore violated a reasonable expectation of privacy

in a way that less-pervasive surveillance did not.  Mem. Op. at 45-46.   Perhaps of greatest

importance, in Footnote 46, Id., this Court found that in Knotts the U.S. Supreme Court had

explicitly reserved considering the question of "dragnet-type law enforcement practices" as

being potentially different in nature. Id.  The activity in question here is, by its very design, an

extreme example of a dragnet-type practice.  This Court also ruled that in Smith the pen register

was in operation only for a matter of days and there was no expectation that the data would be

retained or used outside of the specific investigation at issue.  Mem. Op. at 47-48.

In general, warrantless searches are presumptively unreasonable (that is, unconstitutional)

under the Fourth Amendment.   See City of Ontario v. Quon, 560 U.S. 746, 760 (2010).  As this

Court held in its Memorandum Opinion, Plaintiffs had a reasonable expectation of privacy when

"the Government indiscriminately collect[ed] their telephony metadata along with the metadata of hundreds of millions of other citizens without any particularized suspicion of wrongdoing, retain[ed] all of that metadata for five years, and then querie[d], analyze[d], and investigate[d] that data without prior judicial approval of the investigative targets." Mem. Op. at 43, 47, 58-59.

## III.    WHEN THIRD PARTY BECOMES AGENT OF GOVERNMENT

This Court also ruled that there is dramatic difference under the Fourth Amendment between a telecommunications provider acting as an independent third party as opposed to acting as an agent for law enforcement.  Mem. Op. at 48-49.  Here, the Court found that the instant practice "is effectively a joint intelligence-gathering operation with the Government."  Mem. Op. at 48.  The challenged practice makes the telecommunications provider so deeply intertwined with Government that the telecommunications provider becomes its agent. See, *Ferguson v. Charleston*, 532 U.S. 67 (2001), which concerned a hospital's staff  "when they undertake to obtain such evidence from their patients *for the specific purpose of incriminating those patients*, they have a special obligation to make sure that the patients are fully informed about their constitutional rights, as standards of knowing waiver require."  By that analysis, the telecommunication providers were required to warn users.  Here, the government cannot rely upon voluntary disclosure as an exception to the Fourth Amendment, after so pervasively entangling the telecommunication providers with the government data collection program.

## IV.    PARTIAL SUMMARY JUDGMENT BASED ON PRELIMINARY INJUNCTION FRCP 65(a)(2)

The issues, argument, and authorities to be decided are exactly the same between entering a preliminary injunction and the Court now deciding partial summary judgment.  Plaintiffs move for partial summary judgment on those particular issues where the Court already ruled in Plaintiffs' favor.

FRCP 65(a)(2) specifically allows for this motion under this posture of the case.  FRCP 65(a)(2) states that "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial."  Fed. R. Civ. P. 65(a)(2).

FRCP 65(a)(2) provides a means of securing an expedited decision on the merits, as long as parties receive notice of the court's intention and an opportunity to prepare before the hearing commences. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  Accordingly, based on the record, pleadings, and affidavits, a district court judge, acting *sua sponte*, may fashion permanent relief after the close of the preliminary injunction hearing while the case is on appeal. *See Eli Lilly & Co., Inc. v. Generix Drug Sales, Inc.*, 460 F.2d 1096, 1096 (5th Cir. 1972).

## V.     EXPECTATION OF PRIVACY

Defendants argue at length asking the Court to reverse its position on whether the metadata collection program violates Plaintiffs' expectation of privacy.  However, the Court already ruled that the challenged practice does violate Plaintiff's expectation of privacy.

Perhaps it is too easy to overlook a central fact.  The Government is ordering telecommunications firms to provide the data precisely because the Government cannot obtain the data in the public domain.  The data is not publicly available.  Users (subscribers) of telecommunications services not only expect but know that the telecommunications companies treat their transactional information (metadata) as confidential and do not release it to the public.

## VI.    COURT'S PRIOR STANDING ANALYSIS IS APPROPRIATE

The Government Defendants again ask the Court to change its analysis on Plaintiffs'

standing, as being inconsistent with *Clapper v. Amnesty International*, 133 S. Ct. 1138 (2013), decided February 26, 2013 – before this Court's December 16, 2013, Memorandum Opinion. Plaintiffs move the Court to apply the same analysis as previously applied, consistently.

In *Amnesty International*, standing was claimed based upon the telephone subscribers' own prediction that persons outside the U.S.A. with whom they communicated were probably targets of surveillance of international phone calls.  The Supreme Court found that those plaintiffs' prediction that their phone calls were being intercepted did not constitute standing.

Here, this Court has already ruled that standing is grounded on the goals stated by the Government, not on the Plaintiffs' own subjective beliefs.   This Court's analysis found standing based upon the documentation of the revealed program and the Government's claims that the purpose of the program is to maintain a database of all communications that can be searched in a later investigation.  The Government's announced justification for collecting the data could not be rationally advanced without also including the Plaintiffs telecommunications services.

## VII.    EFFECT UPON INDIVIDUAL *BIVENS* DEFENDANTS

Defendants argue that some Defendants sued under *Bivens'* claims have not been served, and therefore partial summary judgment would prejudice them.

First, those Defendants have been served.  Defendants moved for an entry of default against them for not filing a response.  As a result, those Defendants have waived defenses and certain types of notice as a result. FRCP 12. Those Defendants could participate now.

Second, Plaintiffs move for partial summary only as to liability on their cause of action concerning violation by the United States Government of the Plaintiffs' Fourth Amendment rights under the United States Constitution. Nevertheless, the Constitutional analysis will be the same.  On the question of whether the challenged data collection program violates the U.S.

Constitution, Fourth Amendment, the answer must be the same with regard to all parties.

## VIII.   REASONABLENESS OF SEARCH AND FOURTH AMENDMENT "SPECIAL NEEDS" ANALYSIS

Defendants argue again that the Government's surveillance of U.S. citizens is (a) a "reasonable" search under the Fourth Amendment and/or (b) justified under the "special needs" analysis of the Fourth Amendment recognized by Federal Courts, because "the Government's important interest in identifying and tracking terrorist operatives" outweighs the privacy interests of citizens.  Defendants recite that "[t]he undisputed purpose of the telephony metadata program is identifying unknown terrorist operatives and preventing terrorist attacks…"  But this is disputed.  The Government is not actually identifying and tracking terrorists operatives.  The "special needs" must consider the correct balance, which is collection of mostly irrelevant data.

Here, terrorist operatives are identified by entirely separate and independent means, not by this metadata collection program.  At that point, the Government could obtain a warrant from a judge, and listen to the actual contents of communications under a warrant.  Instead the Government is indiscriminately monitoring innocent U.S. citizens communicating within the domestic U.S.  Indeed, under a Fourth Amendment reasonable search analysis or a special needs analysis, this seems to be a massive waste of misdirected resources better used elsewhere.

The metadata collected is incapable of revealing whether the phone subscriber targeted is involved in terrorism.  Contrast this with the ability of government to get a warrant to actually listen to the content of a suspect's communications.  A warrantless search of the database could only cause an analyst to speculate based on a person's Muslim-sounding name or the like. Under a reasonableness or special needs analysis, investigating a person's contacts, who will overwhelmingly be innocuous and innocent, would be slower and more time-consuming than simply getting a warrant to wire-tap and listening in directly on legitimate suspects of terrorism.

Furthermore, this occurs in a context.  Congress enacted FISA after the so-called "Church Committee" uncovered that for decades the U.S. Government "had illegally infringed the Fourth Amendment rights of American citizens" in "warrantless domestic intelligence-gathering activities."  S. Rep. No. 95-604 at 7; Mem. Op. at 9.  The Government actions which the U.S. Congress found to be illegal under the U.S. Constitution were not disclosed voluntarily, but by overcoming attempts to conceal them.  Similarly, then Director of National Intelligence Admiral James Clapper was asked by Sen. Ron Wyden at a Senate Intelligence Committee hearing in March, 2013, whether or not the Executive Branch was engaging in the instant practice.  ABC News, James Clapper Apologizes to Congress for 'Clearly Erroneous' Testimony, July 2, 2013. [1]  Under oath, Clapper definitively denied it. *Id.* Then a government contractor at Booz Allen Hamilton disclosed classified information revealing these activities by the U.S. Government. Mem. Op. at 6.  The Government has not changed its policy of actively concealing its surveillance, but is seeking to extradite and prosecute Snowden.  This pattern of deception weakens the weight that the Government's assertions should be given now.

## IX.   GOVERNMENT'S MODIFICATIONS TO PROGRAM

Defendants argue that two changes to the challenged metadata collection program ordered by President Barack Obama cure or mitigate the violation of the Fourth Amendment.  Plaintiffs disagree.

First, this Court found that the violation occurs differently than conceived of by the Defendants, such that the two changes ordered by Obama do not reduce the violation. This Court ruled that every time the database is used, every person's information is subecte to a search under Fourth Amendment analysis.

---

[1] http://abcnews.go.com/blogs/politics/2013/07/james-clapper-apologizes-to-congress-for-clearly-erroneous-testimony/

Second, the Plaintiffs argue and the Court ruled that the violations occur when the metatdata is collected, not merely when an analyst runs a search of it.  Thus, the two modifications do not address the constitutional problem.

Third, the Government's voluntary modification of the program in the face of public outcry and national, indeed international, scrutiny does not protect the Plaintiffs or others from the Government resuming the prior practice when public attention fades.

The Supreme Court has stated "[i]t is well settled that "'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" for "if it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'" *Friends of the Earth v. Laidlaw Envt'l Services, Inc.*, 528 U.S. 167, 189 (2000) (*quoting City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)); *see United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953). Precisely because the voluntary cessation of allegedly wrongful activity can be undone by an equally voluntary decision to resume the conduct, courts have consistently held that "[t]he heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968); *see Laidlaw*, 528 U.S. at 189 (*quoting Concentrated Phosphate*).

## X.   INJURY

Defendants argue that Plaintiffs have not shown injury because, in effect, the Government Defendants are concealing from the Plaintiffs what the Defendants did with the information obtained, and Plaintiffs might not know what happened to information about them. However, the Court found that the entire database is searched in constitutional terms – that every

person's data is searched – every time an analyst performs a database search.

Plaintiffs have been injured merely by having their Constitutional rights and protections violated. As the Court ruled here, "It has long been established that the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" Mills v. District of Columbia, 571 F.3d 1304, 1312 (D.C. Cir. 2009)  (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion), which in that case involved a fairly analogous situation involved "Neighborhood Safety Zones" traffic checkpoint for vehicles entering a high-crime neighborhood.

Whether or not there might also be a quantifiable amount of damages that can be fixed into a monetary award should be considered in the damages phase later.  Plaintiffs are moving the Court now only for partial summary judgment on liability under their Fourth Amendment claim, but propose to continue to try the dispute with regard to the quantum of damages that may be proven.  All citizens whose metadata was obtained suffered an injury, but whether monetary damages may be awarded and how much is for the damages phase.

## XI.    CONCLUSION

The Court has already ruled – to a higher standard and threshold – on all of the elements involved now in entering partial summary judgment on the liability phase of Plaintiffs' claims of violations of their Fourth Amendment Constitutional rights.  Pursuant to FCRP 65(a)(2) and in the interest of judicial economy, the Court should now enter partial summary judgment consistent with the Court's previous ruling that the Government has violated the Fourth Amendment rights of the Plaintiffs through and by the challenged indiscriminate collection of the telecommunications metadata concerning Plaintiffs' communications.  Plaintiffs ask that the case proceed to discovery and trial on damages and Plaintiff's First and Fifth Amendment

claims.

Dated: May 19, 2014

Respectfully submitted,

 /s/ *Larry Klayman*
Larry Klayman, Esq.
General Counsel
Freedom Watch, Inc.
D.C. Bar No. 334581
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 19th day of May, 2014 a true and correct copy of the foregoing Plaintiffs' Reply To The Defendants' Opposition In Opposition To Plaintiffs' Motion For Partial Summary Judgment (Civil Action No. 13-cv-851) was submitted electronically to the District Court for the District of Columbia and served via CM/ECF upon the following:

James J. Gilligan
Special Litigation Counsel
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C.  20044
 (202) 514-3358
Email: James.Gilligan@usdoj.gov

Randolph D. Moss
WILMER CUTLER PICKERING HALE & DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6640
Fax: (202) 663-6363
Email: randolph.moss@wilmerhale.com

Attorneys for Defendants.

Respectfully submitted,
 /s/ *Larry Klayman*
Larry Klayman, Esq.
D.C. Bar No. 334581
Klayman Law Firm
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006
Tel: (310) 595-0800