IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN, *et al.,*<br><br>  Plaintiffs,<br>v.<br><br>BARACK OBAMA, President of the United States, *et al.,*<br><br>  Defendants. | Case Nos: 1:13-cv-851-RJL<br>        1:13-cv-881-RJL<br>        1:14-cv-092-RJL<br><br>Assigned to Judge Richard J. Leon |

## PLAINTIFFS' MOTION FOR IN CHAMBERS AND EX PARTE INTERVIEW OF WITNESS DENNIS MONTGOMERY

Plaintiffs hereby move the Court to present a key witness and whistleblower to the Court for an in chambers, ex parte interview of Dennis Montgomery. Mr. Montgomery can testify about the unconstitutional and illegal surveillance conducted by the National Security Agency (NSA) and the Central Intelligence Agency (CIA) that is highly relevant and of crucial importance to the above-styled lawsuits, as he worked closely with these agencies following the tragedy of September 11, 2001.

As shown below, Montgomery has attempted to alert appropriate government authorities that surveillance goes beyond what whistleblower Edward Snowden disclosed. In fact, the surveillance has even harvested the records of judicial, congressional, and executive government officials. Indeed, this is confirmed in no small part by Senator Diane Feinstein, previously the Chair of the Senate Intelligence Committee, who revealed that the CIA had illegally harvested emails and other information of her and her staff.

The Court's interview of Dennis Montgomery in chambers and ex parte is needed to take control and implement appropriate protective measure to preserve Montgomery's testimony and

1

to prevent witness tampering and obstruction of justice, including the issuance of appropriate injunctions and/or protective orders. Montgomery has already been subject to witness tampering and attempted obstruction of justice, threats, retaliation, and intimidation. He feels that even his life and the safety of his family are in danger.

The Court must respectfully take whatever actions are within the powers of the federal court to protect this witness and to reassure him to come forward and testify against the weight of the intimidation and threats to the contrary.

## I. INTRODUCTION:  PROCEDURAL POSTURE

The lawsuits before this Court arose from uncontroverted public revelations that the federal government, through the NSA and CIA, with the participation of certain telecommunication and Internet companies, have secretly conducted overreaching and unlawful surveillance of not just Plaintiffs but all American citizens within the United States, while gathering and collecting certain highly-revealing, confidential, and highly-intrusive data about individuals' telephone, email, social media and Internet activity.

In June, 2013, Plaintiffs brought two related lawsuits, *Klayman v. Obama*, Civil Action No. 13-0851 (*Klayman I*), and *Klayman v. Obama*, Civil Action No. 13-0881 (*Klayman II*) challenging the constitutionality and statutory authorization of certain intelligence-gathering practices by the U.S. government relating to the wholesale collection of the phone, email, Internet and social media metadata of virtually all U.S. citizens. In *Klayman I*, this Court issued a preliminary injunction against the Government Defendants on December 16, 2013, which is now on appeal to the U.S. Court of Appeals for the District of Columbia Circuit. *See Klayman v. Obama, et al.*, Nos. 14-5004, 14-5005, 14-5016, 14-5017 (D.C. Circuit).

Plaintiffs in *Klayman II* challenged the Government's secret and expansive government scheme to intercept and analyze vast quantities of communications from Internet and electronic service providers, through highly classified surveillance programs, such as "PRISM." *Klayman II*

Am. Compl. 3-6. PRISM is an internal government computer system implemented under Section 702 of the Foreign Intelligence Surveillance Act (FISA) and is used to spy on, gather, and access domestic and foreign intelligence collected from the Internet and other electronic service providers. *Klayman II* Am. Compl. 2, 4-5.  Thus far, none of Snowden's revelations have been disproved by the Government Defendants, causing even Defendant President Barack Obama to concede and disingenuously recommend, under intense pressure and to deflect criticism, NSA surveillance reform.

Plaintiffs brought a third lawsuit, *Klayman v. Obama*, Civil Action No. 14-0092 (*Klayman III*), which alleged many of the same facts and plead similar causes of action as the first two related lawsuits but was brought as a class action to address the constitutional violations for all affected U.S. citizens.

## II. STATEMENT OF FACTS AND EXIGENT CIRCUMSTANCES

### A. Need to Take Expedited Action to Protect Montgomery

Montgomery is in poor health. He suffered a brain aneurysm and a related multi-infarct stroke on May 12, 2014.  He suffered both a hemorrhagic stroke (caused by ruptured blood vessels that cause brain bleeding) and ischemic stroke (loss of blood flow).  This type of stroke has a 70-80% death rate in the first 28 days, which miraculously Montgomery survived.  He was in the hospital for two months, through July 2014.  He has been left permanently disabled and partially paralyzed.  During two months of hospitalization he had only a limited ability to communicate but he slowly recovered to some extent.  See Exhibit 1.

Montgomery could suffer a similar or repeated event causing him to die at any time.  He could also lose the ability to communicate from the brain injury already experienced or from a related, repeat neurological event.  There is a continuing danger that complications or related or repeat stroke events could injury his memory. Defendants' actions to harass and harm

Montgomery to suppress his testimony has also caused severe emotional and physical stress on him, which could be fatal under these medical circumstances. *Id.*

### B. Background and Whistleblower Status

The U.S. Government approached Montgomery, Warren Trepp, and their company eTreppid urging them to divert their efforts away from commercial applications of their technology and expertise and away from negotiations with private companies for commercial business. Trepp and Montgomery were eventually persuaded after the importance was explained by U.S. Government officials to postpone their commercial work to help national security.

Later, upon learning of the vast constitutional violations being committed by government agencies, Montgomery attempted to do the honorable and patriotic thing by filing whistleblower complaints with the Inspectors General of the CIA, Defense Intelligence Agency, Department of Defense, Department of Homeland Security, Department of Justice, Director of National Intelligence, and Internal Revenue Service. Montgomery received letters summarily dismissing his whistleblower complaints. In fact, nobody ever interviewed him to be able to evaluate or analyze his whistleblower claims. Montgomery was unable to get the signers of the denial letters on the phone. Montgomery also sent whistleblower complaints (reports) to Congressional Committees such as the U.S. Senate Intelligence Committee and to the White House under the then-new administration of President Barack Obama, who had run for election on a promise of a new air of transparency and an end to excessive surveillance activities. *See* Exhibit 2 - Kelly Riddell, "Chairman of Judiciary Committee blasts FBI's handling of whistleblowers," The Washington Times, March 12, 2015.

### C. Factual Context of Testimony For This Case

Montgomery is a witness as significant as whistleblower Edward Snowden, in particular terms of the issues relevant in the instant cases. The elements of these lawsuits that have been most discussed and addressed are within firsthand knowledge of Montgomery. Unlike Snowden,

Montgomery has not fled the country, is available as a witness, and is willing to present himself to the Court in the pursuit of justice.

Montgomery, previously avoiding any public role and not a public figure, has now come forward and filed a lawsuit in response to calculated defamation and attacks by Defendants upon his character and professional conduct. The lawsuit, a copy of which is attached as Exhibit 3, is for defamation by <u>New York Times</u> reporter James Risen arising in part out of Risen's book <u>Pay Any Price: Greed, Power, and Endless War.</u> The lawsuit is *Dennis Montgomery v. James Risen, et al.*, U.S. District Court for the Southern District of Florida, Case No. 1:15-cv-20782. In Risen's book, Risen acknowledges that he had received classified information from the intelligence agencies of the U.S. Government. However, this information was falsified in order to harm Montgomery and destroy his reputation.

More importantly, the content and nature of Risen's writings about Montgomery portray high-level conversations, meetings and decisions within the U.S. intelligence apparatus concerning Montgomery's detection and analysis of foreign policy threats to the United States. Risen's reports include meetings, decisions, and conversations involving the highest levels of Government. Risen also writes that Montgomery had direct access to the Oval Office and the President of the United States. Risen would have no way of knowing about this access much more what was discussed in the Oval Office unless those conversations were leaked to him by U.S. Government officials at the highest levels. In this regard, Montgomery worked closely with several high level officials such as CIA director John Brennan and Director of National Intelligence, James Clapper, and many others. Further, by Risen's own tacit acknowledgement and actions, intelligence officials in the U.S. Government have sought to destroy Montgomery professionally and personally in order to silence him and/or discredit him if he should speak and testify in the national interest, as Snowden has done.

Importantly, Vice President Dick Cheney was recently interviewed by reporter James Rosen of <u>Playboy</u> magazine regarding the intelligence activities ordered by President W. Bush after September 11, 2001.  As shown above, Montgomery was an integral part of the Bush/Cheney White House's intelligence operations.  When asked about Risen, here is what Cheney told Rosen: "I don't have much confidence in Risen" and "I don't give any credence to what Risen says…".  See Exhibit 3 – James Rosen, "Playboy Interview: Dick Cheney," Playboy, March 17, 2015.  Accordingly, Risen was used as a tool by the NSA and the CIA to try to destroy Montgomery and undercut his whistleblowing status in order to "save their own skins."

    **D.  <u>Witness Tampering and Obstruction of Justice</u>**

Accordingly, in retaliation to Montgomery's efforts to deal with his concerns honorably and lawfully, Montgomery has been the target of a campaign to destroy his credibility and professional reputation, and to threaten, intimidate and terrorize Montgomery as a likely witness in cases like the instant ones before this Court now.  Montgomery was abruptly attacked with a variety of scatter-shot false charges and smears.  His livelihood has been destroyed, resulting in impoverishment.  He has suffered the foreclosure of his home and eviction from his prior place of residence.

Montgomery believes that his attempts to blow the whistle have also resulted in unfounded and unlawful retaliation against him by the Internal Revenue Service ("IRS").  The IRS was at his home with the FBI conducting a raid later ruled to be illegal by a Federal judge.  The U.S. Government then seized documents from his attorneys in 2010 without a court order allowing them to do so. The DOJ conducted this raid and seizure under special orders from the CIA.  In violation of records retention laws, the U.S. Government has been destroying evidence in Montgomery's case for years.

In sum, Montgomery has endured repeated raids on his home and business files.   He has had to go to court to get his property back.  Although it has cost him enormous sums in

attorneys' fees, he has been successful in prevailing against the Government agencies which abused him. He has been driven into bankruptcy and personal financial and professional ruin as a result of the retaliation against him as a whistleblower and potential witness. When the stress and emotional pressure have left him struggling to cope, he has been persecuted and misrepresented about the slightest imperfection in his personal life.

Only recently, an anonymous poster at Wikipedia kept repeatedly posting private information about Dennis Montgomery's children on a Wikipedia article about Dennis Montgomery, re-posting the details about his children as fast as Montgomery acted to remove those names from Wikipedia. Naturally, Montgomery's children are not relevant to the posting at Wikipedia. But more disturbing to Montgomery are the questions of who, but the NSA and CIA, would know this private information about his children and why they would be so determined to repeatedly post it on the internet at Wikipedia and harm him and his loved ones.

### III. REQUESTED ACTION BY THE COURT.

The Court should take direct supervision of this matter and take action to protect Montgomery because the record of conduct shows efforts at obstruction of justice and witness tampering, including attempts to directly interfere with the claims in these cases.[1] The full extent of this and the direct relevance to key issues in this case will become clear upon interviewing Montgomery. Montgomery has direct knowledge and evidence going to prove Plaintiffs' case.

There is precedent for this procedure in the U.S. District Court for the District of Columbia. The Honorable Royce C. Lamberth took information *in camera* without parties or

---

[1] Plaintiffs respectfully request that this matter <u>not</u> be referred to the Department of Justice or the FBI as of yet. The DOJ are the lawyers for the Defendants in this case. In addition, the DOJ has been shown to be compromised under the Obama Administration, with scandals such as the IRS scandal, the Fast and the Furious scandal, and the Benghazi scandal. *See* Exhibit 2 - Kelly Riddell, "Chairman of Judiciary Committee blasts FBI's handling of whistleblowers," The Washington Times, March 12, 2015. Thus, subject to being interviewed *in camera* by the Court, Plaintiffs request that witness Dennis Montgomery be taken under the Court's protective wing.

counsel present in the cases of *Judicial Watch v. U.S. Department of Commerce*, Case No. 95-0133 (D.D.C. July 29, 2005) which involved national security briefings by the CIA of suspected communist Chinese spy John Huang at the Clinton Commerce Department.

In the same manner as Judge Lamberth's precedent, this Court should now interview Montgomery *in camera* under and pursuant to the security clearance of the district judge without attorneys or parties present at this stage. The judge may then inform counsel and the parties through a non-classified summary.

Prima facie evidence has been presented of multiple incidents of witness tampering and obstruction of justice by retaliation of Montgomery, as presented in the Complaint filed by Montgomery in the District Court for the Southern District of Florida (Exhibit 4), and as presented in the writings and admissions by reporter James Risen that he was "leaked" what in-effect was falsified and defamatory information about Montgomery by the NSA, CIA, and other U.S. Government intelligence services.

In summary, the Court's interview of Dennis Montgomery in chambers and ex parte, is needed to take control and issue appropriate protection to preserve Montgomery against further witness tampering and obstruction of justice, including the issuance of appropriate injunctions and/or protective orders. The Plaintiffs respectfully ask the Court to take supervision and take action to protect the important and necessary testimony of Montgomery on an exigent basis given the threats to Montgomery and his poor health, resulting in the possibility that he could die before he could come forward as a witness at trial. The Court and the parties will need to craft procedures and rules to manage any classified information that may be disclosed to the Court during the *in camera* interview and thereafter.

## IV. **CONCLUSION**

Plaintiffs, by counsel, respectfully request the Court to craft an appropriate procedure to interview Dennis Montgomery in chambers ex parte.

Plaintiffs sought consent for this motion from Defendants' counsel. Defendants' counsel indicated that they oppose this motion.

Dated:   March 20, 2015                                      Respectfully submitted,

                                                      */s/ Larry Klayman*
                                                      Larry Klayman, Esq.
                                                      Freedom Watch, Inc.
                                                     D.C. Bar No. 334581
                                                    2020 Pennsylvania Ave. NW, Suite 345
                                                    Washington, DC 20006
                                                    Tel: (310) 595-0800
                                                    Email: leklayman@gmail.com

                                                    *Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of March, 2015, a true and correct copy of the foregoing Plaintiffs' Motion For In Chambers And Ex Parte Interview Of Witness Dennis Montgomery (Civil Action Nos. 13-cv-851, 13-cv-881, and 14-cv-92) was submitted electronically to the District Court for the District of Columbia and served via CM/ECF upon the following:

James J. Gilligan
Special Litigation Counsel
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C.  20044
 (202) 514-3358
Email: James.Gilligan@usdoj.gov

Attorneys for Defendants.

                    Respectfully submitted,
                     /s/ *Larry Klayman*
                    Larry Klayman, Esq.
                    D.C. Bar No. 334581
                    Klayman Law Firm
                    2020 Pennsylvania Ave. NW, Suite 345
                    Washington, DC 20006
                    Tel: (310) 595-0800