**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
)
LARRY KLAYMAN, *et al.*, )
)
                Plaintiffs, )
)   No. 1:13-cv-0851 (RJL)
                v. )   No. 1:13-cv-0881 (RJL)
)   No. 1:14-cv-0092 (RJL)
BARACK OBAMA, President of the )
United States, *et al.*, )
)
                Defendants. )
_____)

**THE GOVERNMENT DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR IN CHAMBERS AND
<u>EX PARTE INTERVIEW OF WITNESS DENNIS MONTGOMERY</u>**

**<u>INTRODUCTION</u>**

Plaintiffs' extraordinary request that the Court conduct an *ex parte*, *in camera* interview of a putative witness, Dennis Montgomery, for the purpose of receiving information, some of which may be classified and none of which has any apparent bearing on these cases, should be denied.

Plaintiffs offer no support for their wholly conclusory assertions that Mr. Montgomery possesses information that is "highly relevant" and "crucial" to these cases. Nor does the law of this Circuit support Plaintiffs' unusual proposal for an *ex parte* presentation of testimony on the merits of their claims. And Plaintiffs' proffered factual justifications for an *ex parte* interview of Mr. Montgomery fail, even on their own terms: their allegations of Government retaliation against Mr. Montgomery for filing so-called "whistleblower" complaints are baseless and contradicted by Mr. Montgomery's own inconsistent statements in other lawsuits. Finally, to the extent that the purpose of the proposed interview is to make way for Mr. Montgomery to disclose classified information that he acquired as a Government contractor, subject to a non-disclosure

agreement, the Executive Branch—which bears exclusive responsibility for the protection and control of classified information—has not authorized Mr. Montgomery to make any such disclosures, and he is therefore prohibited from doing so.

## ARGUMENT

**I.     Plaintiffs Identify No Probative Information That Mr. Montgomery Has to Offer.**

Plaintiffs request, in effect, that the Court receive testimony from Mr. Montgomery on an *in camera*, *ex parte* basis. But quite apart from whether Mr. Montgomery should be permitted to testify *ex parte*, it is far from clear that he has anything relevant to say at all.

As Plaintiffs observe, these lawsuits contest the legality of three NSA intelligence programs: the bulk collection of telephony metadata from telecommunications service providers; "PRISM" collection of online communications from Internet service providers; and the (now discontinued) bulk acquisition of Internet metadata. Pls.' Mot at 2–3; *see Klayman I* 3d Am. Compl. ¶¶ 2, 7, 25–28; *Klayman II* 2d Am. Compl. ¶¶ 1–4, 7, 38–40. Plaintiffs do not explain how or in what capacity Mr. Montgomery could have acquired any knowledge regarding the NSA programs they challenge here,[1] much less information that is "highly relevant" or "of crucial importance," Pls' Mot. at 1; *see also id.* at 4, 7.

The only "factual context" Plaintiffs offer to show that Mr. Montgomery "has direct knowledge and evidence" bearing on their claims, Pls.' Mot. at 7, are references to Chapter 2 of

---

[1] Mr. Montgomery is a self-described inventor and software developer, and co-founder of a now-defunct company named eTreppid Technologies, LLC. *See* Exh. 1 at 5. From 2003 to 2005 he performed work under a contract between eTreppid and the Air Force involving image-identification technology. Exh. 2; *see* Exh. 1 at 5–6; Exh. 3 ¶ 4.a. In 2009, Mr. Montgomery's then-employer, Blxware, LLC, entered into a short-term agreement with the Air Force for purposes of evaluating "video compression and anomaly detection and tracking" software, developed by Mr. Montgomery, that reportedly "would enable the advanced processing and exploitation of multi-media files." Exh. 4 § 1.0. Blxware's work under the contract terminated in mid-2009. Plaintiffs do not explain how Mr. Montgomery, while employed on such matters, acquired information germane to the NSA bulk metadata collection or PRISM programs.

2

James Risen's book, Pay Any Price: Greed, Power and Endless War (Exhibit A to Pls.' Mot. Exh. 4); *see id.* at 4-6, which purports to describe past dealings between Mr. Montgomery and the Government. The Government does not confirm or deny the accuracy of the matters reported in the book, but nothing portrayed therein suggests a nexus between Mr. Montgomery's past work for the Government and Plaintiffs' claims here. Much less do they show that Mr. Montgomery has information relevant to any issues that will remain to be decided *after* the D.C. Circuit has decided the pending appeals.[2]

II.     **Plaintiffs Have Made No Showing of the Extraordinary Circumstances Required to Permit *Ex Parte* Submissions of Evidence.**

In addition to the lack of relevance, neither the law nor Plaintiffs' allegations support their request for an *ex parte* examination of Mr. Montgomery. As this Court has observed, "*ex parte* relief runs counter to core values of notice and opportunity to be heard." *TD Int'l, LLC v. Fleischmann*, 639 F. Supp. 2d 46, 47, n.1 (D.D.C. 2009). "It is therefore the firmly held main rule that a court may not dispose of the merits of a case on the basis of *ex parte, in camera* submissions." *Abourezk v. Reagan*, 785 F.2d 1043, 1060-61 (D.C. Cir. 1986). "Exceptions to the main rule are both few and tightly contained," and "[o]nly in the most extraordinary circumstances does [D.C. Circuit] precedent countenance court reliance upon *ex parte* evidence to decide the merits of a dispute." *Id.* at 1061; *see also Berntsen v. CIA,* 511 F. Supp. 2d 108, 110 (D.D.C. 2007). Such circumstances include the invocation of the state secrets privilege, where there is "a demonstration of compelling national security concerns," and exceptions to

---

[2] Plaintiffs' motion also disregards the fact that the Court has stayed these cases pending the Court of Appeals' ruling on this Court's preliminary injunction order. *See* Minute Order, Civ. No. 14-92, Sept. 3, 2014; Minute Orders, Civ. Nos. 13-851, 13-881, July 30, 2014. Plaintiffs' motion provides no basis for lifting the stay and hearing Mr. Montgomery's testimony now. The correspondence they append to their motion from Mr. Montgomery's doctors shows no imminent threat to his life or ability to communicate. *See* Pls.' Mot., Exh. 1 at 1-2.

"the main rule" specifically permitted by statute, such as in Freedom of Information Act ("FOIA") litigation. *Abourezk*, 785 F.2d at 1061.[3] There is no applicable exception that allows Mr. Montgomery to testify in the manner advocated by Plaintiffs.

In this regard Plaintiffs cite *Judicial Watch v. U.S. Dep't of Commerce*, 384 F. Supp. 2d 163 (D.D.C. 2005), arguing that, in *Judicial Watch*, Judge Lamberth "took information" *in camera* without the presence of the parties or counsel. Pls.' Mot. at 7-8. But in *Judicial Watch*, the Court simply undertook *ex parte* review of documents responsive to a FOIA request to determine whether they had been properly withheld. *See* 384 F. Supp. 2d at 166. The FOIA specifically authorizes *ex parte* review for such purposes. *See* 5 U.S.C. § 552(a)(4)(B). No statute authorizes the *ex parte* interview Plaintiffs seek here.

Nor do Plaintiffs' unsupported allegations of intimidation and retaliation against Mr. Montgomery justify proceeding *ex parte* here. Plaintiffs assert that the Government unleashed a campaign of intimidation and retaliation against Mr. Montgomery because of so-called "whistleblower" complaints he filed alleging "vast constitutional violations." Pls.' Mot. at 4, 6-7. According to Plaintiffs, Mr. Montgomery "has been driven into bankruptcy and personal financial and professional ruin as a result of the retaliation against him." *Id.* at 7. None of these allegations withstands scrutiny, and, in fact, several are contradicted by Mr. Montgomery's own submissions in other legal proceedings.

Plaintiffs point first to a "raid" of Mr. Montgomery's home by the FBI as evidence of the "retaliation" that "resulted" from his attempts to "blow the whistle." Pls.' Mot. at 6. But the FBI's search of Mr. Montgomery's home occurred in March 2006. *See Montgomery v. eTreppid Tech., LLC*, 2009 WL 910739, at *3 (D. Nev. Mar. 31, 2009). And, so far as the Government

---

[3] In the Guantanamo Bay habeas litigation, this Court has also held that inculpatory evidence may be submitted *ex parte* where necessary to protect classified, highly sensitive source-identifying information. *Mousovi v. Obama*, 916 F. Supp. 2d 67 (D.D.C. 2013).

Defendants' counsel have been able to ascertain, Mr. Montgomery filed the "whistleblower" complaints to which Plaintiffs allude, Pls.' Mot. at 4, between 2013 and 2015. The FBI's 2006 search of his home simply could not have been an act of retaliation "result[ing]" from complaints he filed years later.

Indeed, declarations submitted by Mr. Montgomery in other litigation conflict with his allegations here. In 2014, in a libel action brought against him, *Atigeo LLC v. Offshore Ltd. D*, Civ. No. 2:13-cv-1694 (W.D. Wash.), Mr. Montgomery submitted a declaration in which he maintained that the FBI's search of his home was part of "a witch hunt" initiated by his former business partner, Warren Trepp. *See* Decl. of Defendant Dennis Montgomery, ECF No. 58 (attached hereto as Exh. 5) ¶¶ 4-5. That claim comports with a 2006 declaration that Mr. Montgomery filed in still other litigation against his former employer, eTreppid. *See* Sealed Decl. of Dennis Montgomery, *Montgomery v. eTreppid Tech., LLC,* No. 3:06-cv-00056 (D. Nev.), ECF No. 228 (attached hereto as Exh. 6) ¶ 34. In short, Mr. Montgomery's prior sworn statements in 2006 and 2014 contradict Plaintiffs' chronologically untenable claim that "his attempts to blow the whistle" resulted in his enduring "repeated raids on his home and business files." Pls' Mot. at 6.

Similarly, Plaintiffs also claim "retaliation against [Mr. Montgomery] by the [IRS]," but do not explain what form that retaliation took, except to allege that "[t]he IRS was at his home with the FBI conducting [the March 2006] raid." *Id.* As noted above, however, Mr. Montgomery apparently did not file his "whistleblower" complaints until at least 2013; no action allegedly taken by the IRS in 2006 could have been motivated by those complaints.

Regarding the Government's 2010 collection of records from Mr. Montgomery's attorneys, Plaintiffs incorrectly claim that "[t]he U.S. Government . . . seized documents from his attorneys in 2010 without a court order." *Id.* at 6. In fact, Department of Justice attorneys

5

collected the documents in question pursuant to stipulated orders—agreed to by Mr. Montgomery's own attorneys—to ensure compliance with a protective order that had been entered in Mr. Montgomery's litigation with eTreppid to prevent disclosures of information over which the Government had asserted the state secrets privilege.  *See* Stipulated Order Regarding Enforcement of United States Protective order, *Montgomery v. eTreppid Tech., Inc.*, 3:06-cv-00056 (D. Nev. Dec. 10, 2009), ECF No. 1136 (Exh. 7, hereto) at 1, 5–6; *see supra* n.1 (discussing eTreppid's work pursuant to a contract with the Air Force).

Specifically, in the *eTreppid* litigation, the United States, invoking the state secrets privilege, obtained a protective order to prevent disclosure of information relating to (1) the existence or non-existence of any actual or proposed relationship, agreement, connection, contract, transaction, communication, or meeting of any kind between Montgomery or eTreppid and any intelligence agency of the Government, and (2) any actual or proposed application or use by any such agency of any software technology owned or claimed by Montgomery or eTreppid. Exh. 1 at 2; *see also* Exh. 3 ¶¶ 1-3, 5, 6; Exh. 8.[4]  The district court retained jurisdiction to enforce the protective order after the litigation settled in 2009.  Exh. 9 ¶ 3.  To safeguard information subject to that protective order, Mr. Montgomery's attorneys agreed to and signed stipulated orders that outlined procedures for Government employees to review certain documents, redact them as needed, and return them to Mr. Montgomery's attorneys.  *See*, *e.g.*, Exh. 7 at 5–6.  Thus, this claim of retaliation, like those discussed above, is baseless.

Plaintiffs' remaining claims of retaliation also provide no basis for *ex parte* presentation of any testimony by Mr. Montgomery.  Plaintiffs claim that Mr. Risen's book constitutes "calculated defamation and attacks by [the Government] upon [Mr. Montgomery's] character

---

[4] The order did not preclude, however, discovery or disclosures regarding the existence and nature of eTreppid's contract with the Air Force.  Exh. 3 ¶ 4.a.

and professional conduct." Pls' Mot. at 5. But nothing, either on the face of the book, *see id.*, or in Plaintiffs' motion, supports the contention that Mr. Risen (and his publisher) allowed the Government to use him "as a tool . . . to destroy [Mr.] Montgomery." *Id.* at 6. Similarly, Plaintiffs' suggestion that the NSA and CIA anonymously modified a Wikipedia page about Mr. Montgomery, http://en.wikipedia.org/wiki/Dennis_L._Montgomery (last visited Apr. 13, 2015) (copy attached as Exhibit 10, hereto), to include information about his children, Pls.' Mot. at 7, is entirely lacking in support. And Plaintiffs' contention that Government retaliation forced Mr. Montgomery into "bankruptcy and personal financial and professional ruin," Pls. Mot. at 7, is both unsupported by evidence and again undercut by Mr. Montgomery's own allegations (in yet another case) that his financial straits were caused by "egregious acts perpetrated against [him and his wife] by [their mortgage company]." *Flynn v. NV Mortgage Inc.*, 2:13-cv-360 (W.D. Wash.), Am. Compl. (ECF No. 4) ¶¶ 1.3, 5.13 (Exhibit 11, hereto).[5]

Indeed, Plaintiffs' motion, in itself, undercuts any claimed basis for the Court to hear testimony from Mr. Montgomery *ex parte*. The motion identifies him both by name, and as the individual who has filed whistleblower complaints with seven Government agencies alleging "vast constitutional violations." Pls' Mot. at 4. An *ex parte* interview cannot be justified by the need to protect his identity from the Government, notwithstanding Plaintiffs' (meritless) claims of intimidation and retaliation. Once the D.C. Circuit issues its decision and the stay of these proceedings is lifted, Plaintiffs would be free (should these cases proceed) to seek the testimony of Mr. Montgomery, to the extent it is relevant, unprivileged, and unclassified. But there is no reason for the Court to hear from him *ex parte* now.

---

[5] The discrepancies between Mr. Montgomery's prior statements and the claims now being made on his behalf perhaps should come as no surprise. In the *eTreppid* litigation, the court imposed sanctions against Mr. Montgomery for perjuring himself in a September 2007 declaration. *See Montgomery*, *supra*, 2010 WL 1416771, at *11, *16-18.

**III.     Plaintiffs Have No Entitlement to Disclosures of Classified Information.**

Plaintiffs' extraordinary request for an *in camera*, *ex parte* interview of Mr. Montgomery also should be denied to the extent it is intended to permit him to disclose classified information for their use in these cases, as the motion indicates.  *See* Pls.' Mot. at 8 ("The Court and the parties will need to craft procedures . . . to manage any classified information that may be disclosed to the Court during the *in camera* interview and thereafter.").

The Constitution confers on the Executive the responsibility "to classify and control access to information bearing on national security."  *Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988); *Bland v. Johnson*, 2014 WL 4347191, at *2 (D.D.C. Sept. 2, 2014).  The Executive Branch's "control and responsibility over access to classified information," and "compelling interest in withholding national security information from unauthorized persons" are "historically recognized."  *People's Mojahedin Org. of Iran v. Dep't of State*, 327 F.3d 1238, 1242 (D.C. Cir. 2003).[6]  *See also CIA v. Sims,* 471 U.S. 159, 180 (1985) (it is "the responsibility of [the Executive,] not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether" to disclose classified information); *accord People's Mujahedin Org.*, 327 F.3d at 1242 ("courts are often ill-suited to determine the sensitivity of classified information . . ."); *El-Masri v. United States*, 479 F.3d 296, 305 (4th Cir. 2007) ("the Executive and the intelligence agencies . . . occupy a position superior to that of the courts in evaluating the consequences of a release of sensitive information.").

---

[6] The disclosure of classified information may increase the risk to national security, irrespective of the trustworthiness of any particular individual:  "It is not to slight judges, lawyers, or anyone else to suggest that any such disclosure carries with it serious risk that highly sensitive information may be compromised."  *Halkin v. Helms*, 598 F.2d 1, 7 (D.C. Cir. 1978) (quoting *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1369 (4th Cir. 1975)).

In connection with his work at eTreppid Technologies, Mr. Montgomery executed a standard Non-Disclosure Agreement ("NDA"), as required by Executive Order 13,526 for his access to classified information. Exh. 2.[7] That agreement prohibits him from disclosing classified information to anyone other than authorized agency personnel without the written permission of the U.S. Government. *See id.* ¶ 3. Such agreements are "an entirely appropriate exercise" of Executive authority. *Snepp v. United States*, 444 U.S. 507, 510 n.3 (1980).

To the extent Plaintiffs seek an order permitting Mr. Montgomery to disclose classified information for their benefit, they have identified no legal basis on which the Court could or should do so. As the NDA itself makes clear, when Mr. Montgomery was granted access to classified information, he was authorized to use it only for the performance of specified governmental functions; the information remained the property of the Government and its use and dissemination remained subject to Government control, Exh. 2 ¶ 7. *See Pfeiffer v. CIA*, 60 F.3d 861, 864 (D.C. Cir. 1995) (copies of classified document to which individual previously had authorized access were "indisputably the property of the Government").

Moreover, as one to whom the Government entrusted sensitive national security information, Mr. Montgomery in return assumed "special duties of non-disclosure," and has no right to make unauthorized disclosures of that information now, whether for Plaintiffs' purposes, or his own. *See United States v. Aguilar*, 515 U.S. 593, 605-06 (1995); *Snepp*, 444 U.S. at 510 n.3; *Wilson v. CIA*, 586 F.3d 171, 183-84 (2d Cir. 2009); *United States v. Kim*, 808 F. Supp. 2d 44, (D.D.C. 2011) (quoting *Boehner v. McDermott*, 484 F.3d 573, 579 (D.C. Cir. 2007)).

Similarly, Plaintiffs can claim no right of access to classified information possessed by Mr. Montgomery. The Supreme Court and the courts of appeals, including the D.C. Circuit,

---

[7] Executive Order 13,526 requires individuals to execute approved nondisclosure agreements before they may have access to the information. E.O. 13,526 § 4(a)(1)-(3).

have made it clear that there is no right of access to national security information. *See Holy Land Found. for Relief & Dev. v. Ashcroft,* 333 F.3d 156, 164 (D.C. Cir. 2003) (no due-process right of access to classified information on which the agency based plaintiff's designation as a foreign terrorist organization); *Doe v.Cheney*, 885 F.2d 898, 909-10 (D.C. Cir. 1989) ("no entitlement to access" classified information) (citing *Egan*, 484 U.S. at 528).  Plaintiffs can claim no entitlement, therefore, to access or use classified information in these cases.[8]

This is all the more so considering again that Plaintiffs have made no showing that any information Mr. Montgomery possesses has any bearing on their claims.  *Supra* at 2-3.  If ever there could be circumstances in which a court might properly license the disclosure of classified information to advance the interests of private civil litigants, they are not presented here.

## **CONCLUSION**

For the reasons stated above, Plaintiffs' request that the Court conduct an *in camera*, *ex parte* interview of Mr. Montgomery should be denied.

Dated:  April 13, 2014

                                          Respectfully submitted,

                                          BENJAMIN C. MIZER
                                          Acting Assistant Attorney General

                                          JOSEPH H. HUNT
                                          Director, Federal Programs Branch

                                          ANTHONY J. COPPOLINO
                                          Deputy Branch Director

---

[8]  Importantly, Plaintiffs cite no statute purporting to authorize disclosure of classified information under these circumstances, and there is none.  The Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. 3, establishes mechanisms for the use and protection of classified information in criminal prosecutions.  But by its plain terms, CIPA does not apply to civil cases.  *See* Pub. L. No. 96-456, 94 Stat. 2025 (1980) (codified at 18 U.S.C. App. 3).

   */s/ James J. Gilligan*
JAMES J. GILLIGAN
Special Litigation Counsel

RODNEY PATTON
Trial Attorney

JULIA A. BERMAN
Trial Attorney

U.S Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6102
Washington, D.C.  20001
Phone:   (202) 514-3358
Fax:       (202) 616-8470
E-mail:  james.gilligan@usdoj.gov

*Counsel for the Government Defendants*