**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

LARRY KLAYMAN, *et al.*,

                 Plaintiffs,

                 v.

BARACK OBAMA, President of the United
   States, *et al.*,

                 Defendants.
_____

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 13-cv-0851 (RJL)

## THE GOVERNMENT DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT

     The Government Defendants do not oppose Plaintiffs' request for leave to file their proposed Fourth Amended Complaint.  *See* ECF Nos. 145, 145-1.  Nevertheless, in light of Plaintiffs' intention to continue to pursue injunctive relief regarding the Section 215 bulk telephony metadata program, *see* Transcript of Status Conference (Sept. 2, 2015) ("Tr.") at 22, 26, 32 (notwithstanding the program's imminent statutory termination), the Government Defendants make the following points regarding the appropriate course of these proceedings if the proposed Fourth Amended Complaint is filed.

## DISCUSSION

     The proposed Fourth Amended Complaint ("Fourth Am. Compl.") amends the prior complaint (ECF No. 77) in essentially three respects.  First, it adds as plaintiffs Mr. J. J. Little and his law firm, J. J. Little & Associates, P.C., alleging that both Mr. Little and his firm are and at "[a]t all material times" have been subscribers of Verizon Business Network Services, Inc. ("VBNS").  Fourth Am. Compl. (proposed) ¶ 18.  Second, it pleads additional facts that are evidently intended to support Plaintiffs' allegation that Verizon Wireless is a participating telecommunications service provider in the Section 215 program.  *Id.* ¶¶ 47-48.  Third, it pleads

additional facts regarding the now-discontinued bulk Internet metadata program, and Plaintiff

Larry Klayman's international e-mail communications with individuals in various foreign

countries.  *Id.* ¶¶ 10-15, 44-46.  The Government Defendants make the following points in the

face of these proposed amendments.

      1.    <u>Plaintiffs are not entitled to prospective injunctive relief in light of the USA</u>

<u>FREEDOM Act</u>:  Plaintiffs' addition of VBNS subscribers to the case, and their attempt to

bolster the standing claims of the Verizon Wireless subscriber-plaintiffs (following the adverse

ruling by the Court of Appeals, *Klayman v. Obama*, 2015 WL 5058403 (D.C. Cir. Aug. 28,

2015)), is evidently a first step toward seeking a new preliminary injunction before the Section

215 program terminates on November 29, 2015, just two and one-half months from now.  The

Government Defendants submit, however, that in light of the USA FREEDOM Act, Pub. L. No.

114-23, 129 Stat. 268 (2015), Plaintiffs are not entitled to such relief, and that expedited

proceedings for the purpose of obtaining such relief are therefore neither necessary nor

appropriate.

      The USA FREEDOM Act will, as of November 29, 2015, prohibit the Government from

conducting the bulk collection of telephony metadata under Section 215.  *See id.* § 103.

Congress replaced bulk telephony-metadata collection under Section 215 with a new mechanism

providing for the targeted production of call-detail records and other tangible things subject to

the statute.  *See id.* § 101.  Congress also provided for a 6-month transition period by delaying

for 180 days the effective date of the new prohibition on bulk collection under Section 215, and

for the corresponding implementation date of the new regime of targeted production under the

statute.  *Id.* § 109(a).  Congress specified that the USA FREEDOM Act does not during that

period "alter or eliminate" the Government's longstanding authority, as reflected in numerous

opinions from the Foreign Intelligence Surveillance Court ("FISC"), to conduct bulk-collection activities under Section 215.  *See id.* § 109(b).  During that transition period, then, the former version of Section 215 remains fully in effect as part of that transition and permits the Government to continue such bulk collection.  61 Cong. Rec. S3439-3440 (daily ed. June 2, 2015) (statement of Sen. Leahy) (noting that Congress "included a provision to allow the government to collect call detail records, CDRs, for a 180-day transition period, as it was doing pursuant to Foreign Intelligence Surveillance Court orders prior to June 1, 2015").  *See also In re Application of the FBI for an Order Requiring the Production of Tangible Things*, Dkt. Nos. BR 15-75, Misc. 15-01 (F.I.S.C. June 29, 2015)

http://www.fisc.uscourts.gov/sites/default/files/BR%2015-75%20Misc%2015-01%20Opinion%20and%20Order_0.pdf, at 10-12.

Congress's decision—confirmed by the FISC—to permit the Government to conduct bulk collection of telephony metadata under Section 215 during the transition period makes equitable relief inappropriate.  A plaintiff's entitlement to such relief should be informed by legislation that is enacted during the pendency of litigation.  *See, e.g.*, *Miller v. French*, 530 U.S. 327, 347 (2000); *Salazar v. Buono*, 559 U.S. 700, 718 (2010).  Congressional legislation is a proper basis on which a federal court can rely to determine the appropriate remedies for an alleged constitutional violation.  *See Brown v. Plata*, 131 S. Ct. 1910, 1944, 1946 (2011) (applying the requirements of the Prison Litigation Reform Act to remedies for unconstitutional prison conditions and giving the State two years to comply with determination that prison-overcrowding conditions violated the Constitution); *United States v. Oakland Cannabis Buyers' Co-op*, 532 U.S. 483, 497 (2001) ("Courts of equity cannot, in their discretion, reject the balance

that Congress has struck in a statute."); *cf. Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 88-89 (1982).

The USA FREEDOM Act reflects a determination to authorize Section 215 bulk telephony-metadata collection to continue during a brief winding-down period before the new framework of targeted telephony-metadata production takes effect.  The political Branches thus judged that the sort of abrupt, immediate interference with the program that Plaintiffs here seek through an injunction would be contrary to the public interest, confirming that equitable relief is inappropriate quite apart from the questions of the Plaintiffs' standing and the merits of their claims.[1]  For these reasons, a renewed request by Plaintiffs for injunctive relief against the Section 215 program should be denied, and expedited proceedings at this juncture for the purpose of pursuing such relief are uncalled-for.

Moreover, the enactment of the USA FREEDOM Act, and other developments that have occurred since this Court issued its preliminary injunction in December 2013, not only alter the balance of the equities, but also strengthen the constitutional case for the program.  *See United States v. Jones*, 132 S. Ct. 945, 965 (2012) (Alito, J., concurring the judgment) ("In circumstances involving dramatic technological change, the best solution to privacy concerns may be legislative.  A legislative body is well situated to gauge changing public attitudes, to draw detailed lines, and to balance privacy and public safety in a comprehensive way.").  "A congressional judgment as to what is 'reasonable' under current circumstances would carry

---

[1] This is all the more so considering that once the 180-day transition period ends, and with it the Government's authority to conduct bulk collection under Section 215, Plaintiffs' claim for prospective injunctive relief against the bulk telephony metadata program conducted under that authority will be moot.  *See, e.g.*, *Log Cabin Republicans v. United States*, 658 F.3d 1162, 1166-67 (9th Cir. 2011) (per curiam); *see also, e.g.*, *Burke v. Barnes*, 479 U.S. 361, 363-64 (1987); *Dep't of Treasury v. Galioto*, 477 U.S. 556, 559-60 (1986).

weight," *ACLU v. Clapper*, 785 F.3d 787, 824 (2d Cir. 2015), especially with respect to the need

for the program during a limited transition period to protect national security.

Furthermore, the current version of the program differs in significant respects from the

time this Court issued its injunction in December 2013.  It is no longer the case, for example, that

the Government "queries, analyzes, and investigates [the collected bulk telephony metadata]

without prior judicial approval of the investigative targets," *Klayman v. Obama*, 957 F. Supp. 2d

1, 30 (D.D.C. 2013); except in emergencies, queries must now be approved by the FISC.  *See In*

*re Application of the Federal Bureau of Investigation for an Order Requiring the Production of*

*Tangible Things,* No. BR-15-75 (Aug. 27, 2015).

2.     The Court should avoid discovery or other proceedings that would unnecessarily

implicate classified national-security information, and the potential need to assert and resolve a

claim of the state secrets privilege:  Plaintiffs' proposed amendments, in particular their new

allegations regarding the asserted participation of Verizon Wireless in the Section 215 program,

implicate matters of a classified nature.  The Government has acknowledged that the program

involves collection of data from multiple telecommunications service providers, and that VBNS

(allegedly the Little Plaintiffs' provider) was the recipient of a now-expired April 25, 2013, FISC

Secondary Order.  But otherwise the identities of the carriers participating in the program, now,

or at any other time, remain classified for reasons of national security.  *See Klayman*, 2015 WL

5058403, at *6 (Williams, S.J.).

At this time the Government Defendants do not believe that it would be necessary to

assert the state secrets privilege to respond to a motion by Plaintiffs for expedited injunctive

relief that is based on the allegations of the Little Plaintiffs, or even the proposed new allegations

(and exhibit) regarding Verizon Wireless.  Nor should it be necessary to permit discovery into

matters that would risk or require the disclosure of classified national-security information and thus precipitate the need to assert the state secrets privilege.  Nevertheless, if Plaintiffs were permitted to seek discovery on the question of whether Verizon Wireless is now or ever has been a participating provider in the Section 215 program, the discovery sought could call for the disclosure of classified national-security information, in which case the Government would have to consider whether to assert the state secrets privilege over that information.

As the Supreme Court has advised, the state secrets privilege "is not to be lightly invoked."  *United States v. Reynolds*, 345 U.S. 1, 7 (1953).  "To invoke the . . . privilege, a formal claim of privilege must be lodged by the head of the department which has control over the matter after actual personal consideration by that officer."  *Id.* at 7-8.  To defend an assertion of the privilege in court also requires the personal approval of the Attorney General.  Policies and Procedures Governing Invocation of the State Secrets Privilege at 1-3, http://www.justice.gov/opa/documents/state-secret-privileges.pdf.  The Government should not be forced to make so important a decision as whether or not to assert the state secrets privilege in circumstances where the challenged program is winding down and will end in a matter of weeks.  Moreover, discovery into national-security information should be unnecessary to the extent the standing of the newly added Little Plaintiffs, and the appropriateness of injunctive relief, may be litigated without resort to such information.

If, however, discovery into national-security information is permitted, the Government must be allowed sufficient time to give the decision whether to assert the state secrets privilege the serious consideration it requires.  And if a decision to assert the privilege is made, the Government must also be given adequate time to prepare the senior-level declarations and other materials needed to support the claim of privilege, to ensure that the national security interests at

stake are appropriately protected.  *See, e.g.*, *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1077, 1090 (9th Cir. 2009).

       3.      <u>Litigation of Plaintiffs' claims regarding Section 702 surveillance, and the now-discontinued bulk Internet metadata program, should await the completion of any expedited proceedings concerning the Section 215 program</u>:  Finally, the Government Defendants observe that Plaintiffs' new allegations regarding Mr. Klayman's e-mail communications with persons located outside the United States, as well as their new allegations regarding the discontinued bulk Internet metadata program, are irrelevant to Plaintiffs' challenge to the Section 215 program, which involves the bulk collection of business records containing telephony metadata, not the content of e-mails or Internet metadata.  Presumably these allegations are intended to support Mr. Klayman's standing to challenge the NSA's targeted collection of Internet-based communications, including e-mail, pursuant to section 702 of the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1881a ("Section 702"), as well as Plaintiffs' standing to challenge the prior bulk Internet metadata program.  *See Klayman v. Obama*, 957 F. Supp. 2d 1, 8 n.6 (D.D.C. 2013), *vacated on other grounds*, 2015 WL 5058403 (D.C. Cir. Aug. 28, 2015) (holding that Plaintiffs lack standing to challenge targeted collection of Internet content under Section 702, and that discontinued bulk Internet metadata collection presented no threat of ongoing harm that could be remedied by injunctive relief).

       If Plaintiffs submit and the Court considers an expedited request for injunctive relief concerning bulk telephony metadata collection under Section 215 before the program expires, then consideration of any request by Plaintiffs for an injunction regarding surveillance conducted under Section 702, or alleged bulk Internet metadata collection, should await completion of proceedings regarding the Section 215 program.  Plaintiffs' new allegations do not alter the

conclusion, previously (and correctly) reached by the Court, that Plaintiffs lack standing to

challenge targeted NSA surveillance activities conducted under Section 702.  *Klayman*, 957 F.

Supp. 2d at 8 n.6.  Nor do they change the fact that prospective injunctive relief is an

inappropriate remedy for discontinued bulk Internet metadata collection.  *Id.*  Under these

circumstances, litigating a request by Plaintiffs for a preliminary injunction concerning Section

702 surveillance, or the discontinued bulk Internet metadata program, while a renewed motion

for injunctive relief concerning bulk collection of telephony metadata under Section 215 is

pending, would place unnecessary and undue burdens on the parties and the Court.

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

Defendants do not oppose Plaintiffs' motion for leave to file their proposed Fourth

Amended Complaint, but in light of the imminent termination of the bulk telephony metadata

program, and the ongoing transition to a targeted phone-records collection program as prescribed

by the USA FREEDOM Act, renewed injunctive relief concerning bulk telephony metadata

collection under Section 215 is inappropriate and should be denied.  If Plaintiffs move on an

expedited basis for such relief, then the Court (1) should seek to proceed without any discovery

that would implicate national-security information, and (2) should avoid parallel litigation of

Plaintiffs' claims challenging Section 702 surveillance and the NSA's prior bulk Internet

metadata collection.


Dated:  September 15, 2015

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

JOSEPH H. HUNT
Director, Federal Programs Branch

8

ANTHONY J. COPPOLINO
Deputy Branch Director


 */s/ James J. Gilligan*
JAMES J. GILLIGAN
Special Litigation Counsel

RODNEY PATTON
JULIA A. BERMAN
CAROLINE J. ANDERSON
Trial Attorneys

U.S Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6102
Washington, D.C.  20044
Phone: (202) 514-3358
Fax: (202) 616-8470
james.gilligan@usdoj.gov

Counsel for the Government Defendants