IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                              )
LARRY KLAYMAN, *et al.*,                      )
                                              )
                        Plaintiffs,           )
                                              )
            v.                                )   Case No. 1:13-cv-851-RJL
                                              )
BARACK OBAMA, President of the                )
United States, *et al*.,                      )
                                              )
                        Defendants.           )
_____)

**THE GOVERNMENT DEFENDANTS' EMERGENCY MOTION
FOR A STAY OF THE COURT'S PRELIMINARY INJUNCTION
PENDING APPEAL AND FOR AN IMMEDIATE ADMINISTRATIVE STAY**

Dated:  November 9, 2015

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

JOSEPH H. HUNT
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Branch Director

JAMES J. GILLIGAN
Special Litigation Counsel

RODNEY PATTON
JULIA A. BERMAN
CAROLINE J. ANDERSON
Trial Attorneys

U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6102
Washington, D.C.  20044
Phone:   (202) 514-3358
Fax:     (202) 616-8470
E-mail:  james.gilligan@usdoj.gov

Counsel for the Government Defendants

## INTRODUCTION

The Court's November 9, 2015, preliminary injunction nominally extends relief only to the Little Plaintiffs, but as the Government has explained, the technical steps necessary to comply even with a targeted injunction would require months to complete. Thus the injunction effectively requires the NSA to immediately terminate the Section 215 bulk telephony-metadata program in its entirety. That result is contrary to the judgment of Congress and the President that this important counter-terrorism intelligence program should end only after the current transition to a program of targeted metadata collection is complete, to avoid creating an intelligence-collection gap that could place national security at risk. As the Second Circuit recently held, that considered decision should be respected and not overturned on the basis of uncertain constitutional claims that will be rendered moot in the very near future. *ACLU v. Clapper*, 2015 WL 6516757, at *8-9 (2d Cir. Oct. 29, 2015).

The Government Defendants therefore respectfully request a stay of the Court's preliminary injunction pending appeal. Because of the immediate impact of the Court's injunction on the Government's intelligence-gathering capabilities, the Government also requests (1) an immediate administrative stay of the injunction pending the Court's resolution of this motion, and (2) if the Court denies the motion, an administrative stay thereafter of at least 10 days so the Government Defendants can seek relief from the D.C. Circuit, if warranted.[1] Also due to the urgency of the situation, the Government respectfully requests that the Court issue a stay by 12:00 p.m. on Tuesday, November 10, 2015. Absent a stay by that time the Government intends to file a motion for a stay pending appeal in the Court of Appeals.

---

[1] Although the Court indicated in its November 9, 2015 Memorandum Opinion (ECF No. 158) ("Mem. Op.") that it would not stay its injunction pending appeal *sua sponte*, Mem. Op. at 43, Federal Rule of Appellate Procedure 8(a)(1) nevertheless requires that the Government Defendants seek a stay from this Court before seeking such relief from the Court of Appeals.

All of the factors the Court must consider in ruling on a motion for a stay weigh in favor of the Government's request. The Government will suffer immediate irreparable harm, and the public interest as reflected in the USA FREEDOM Act will be disserved, *see ACLU*, 2015 WL 6516757, at *9, if the Section 215 program must be terminated before the new program of targeted telephony-metadata collection is ready to take its place. These harms far outweigh the minimal risk of any meaningful invasion of the Plaintiffs' privacy that likely could occur if a stay is granted. And notwithstanding the Court's conclusion that *Smith v. Maryland*, 442 U.S. 735 (1979), does not control under the circumstances here, the reasoning of *Smith* itself, the contrary conclusion reached by every other court to consider the question, and the doubts the Second Circuit expressed about the constitutional claims presented in *ACLU*, 2015 WL 6516757, at *8, make evident that the Government has at the least a substantial likelihood of prevailing on the merits of Plaintiffs' Fourth Amendment claim.

In December 2013 this Court *sua sponte* stayed its initial preliminary injunction pending appeal, "in light of the significant national security interests at stake" and the perceived "novelty of the constitutional issues." *Klayman v. Obama*, 957 F. Supp. 2d 1, 43 (D.D.C. 2013), *vacated,* 2015 WL 5058403 (D.C. Cir. Aug. 28, 2015). In view of the USA FREEDOM Act, the immediate impact of the Court's injunction on the Government's intelligence capabilities, and the weight of authority now favoring the Government's position on the merits, the imperative for a stay is at least as great today if not greater than two years ago. Accordingly, the Government Defendants' request for a stay of the Court's preliminary injunction should be granted.

## ARGUMENT

A stay pending appeal is appropriate where: (1) the movant has a substantial likelihood of success on the merits; (2) the movant will suffer irreparable injury absent the stay; (3) the stay will not substantially injure the other parties interested in the proceeding; and (4) the public

interest will be served by a stay. *United States* v. *Philip Morris, Inc.*, 314 F.3d 612, 617 (D.C. Cir. 2003). These factors are not prerequisites to be met, but considerations to be balanced. Thus, "[a] stay may be granted with either a high probability of success and some injury, or vice versa." *Cuomo* v. *Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985). Where the movant has established substantial irreparable harm and the balance of harms weighs heavily in its favor, it need only raise "serious legal questions going to the merits" to obtain a stay pending appeal. *Population Inst.* v. *McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986).

> A. **In Light of the Certain and Immediate Harm to the Government, the Public Interest as Determined by Congress, and the Minimal Risk of Concrete Injury to the Little Plaintiffs, the Balance of Harms Warrants a Stay.**

On its face, the Court's preliminary injunction only prohibits the collection under the Section 215 program of metadata associated with the telephone calls of Plaintiff J. J. Little and his law firm, J. J. Little & Associates, P.C. (together, the "Little Plaintiffs"), and segregation of any such data already collected from the results of future NSA queries of the aggregate metadata. Mem. Op. at 42 & n.25; Order dated November 9, 2015 (ECF No. 159). As the Government Defendants have explained, however, the only practicable way for the NSA to comply with the Court's preliminary injunction is immediately to cease *all* collection and queries of telephony metadata under the Section 215 program—that is, to shut the program down. That is so because the technical steps required in order to prevent the further collection of and to segregate the metadata associated with particular persons' calls would take the NSA months to complete. Gov't Defs.' Opp. to Pls.' Renewed Mot. for a Prelim. Inj. (ECF No. 150) ("Gov't PI Opp.") at 41-44, citing Potter Decl. (Gov't PI Opp. Exh. 4) ¶¶ 20-27.[2]

---

[2] The Court stated in its Memorandum Opinion that it gave the Government "unequivocal notice that it may be required to take steps of this nature in [the Court's] December 2013 Opinion" granting Plaintiffs Klayman and Strange a preliminary injunction. Mem. Op. at 41-42. That injunction was vacated on appeal, however, and the Government had no notice in

3

However, the capabilities of the Section 215 program remain an important element of the Government's counter-terrorism arsenal, as reflected in both the terms of the USA FREEDOM Act and the assessment of the FBI, *see id.* at 34-35, citing Paarmann Decl. (Gov't PI Opp. Exh. 6) ¶¶ 6-11.  Compelling the termination of the program before the transition to the new program of targeted metadata collection contemplated by the Act will impair the United States' ability to detect and prevent potential terrorist attacks, contrary to the intent of Congress when it enacted the USA FREEDOM Act.  *See ACLU*, 2015 WL 6516757, at *6 (the "orderly transition" provided for by Congress "requires that the government retain the tools it has been using to investigate threats of foreign terrorism until new tools may be put in place").  When the Government is enjoined from effectuating an act of Congress, it almost invariably suffers a form of irreparable injury entitling it to a stay pending appeal.  *See Bowen* v. *Kendrick*, 483 U.S. 1304, 1304-05 (1987) (Rehnquist, J., in chambers); *Walters* v. *Nat'l Ass'n of Radiation Survivors*, 468 U.S. 1323, 1324 (1985) (Rehnquist, J., in chambers); *cf. Maryland* v. *King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers).

A stay of the Court's preliminary injunction pending appeal is also in the public interest as determined by Congress and the Executive.  Telephony-metadata analysis, and in particular the analytical capabilities of the Section 215 program, remain important to the Government's counter-terrorism efforts, particularly so considering today's heightened threat of small-scale attacks inspired by newly ascendant terrorist organizations.  Paarmann Decl. ¶¶ 6-12.  Against this landscape Congress and the President arrived at the judgment, embodied in the USA FREEDOM Act, that the capabilities of the Section 215 program should be maintained during the transition period, to avoid creating an intelligence gap before the program of targeted collection is operationally ready to fulfill its role.  *See* Gov't PI Opp. at 10, 33-34.  *See ACLU*,

---

2013 that it might be expected to comply with an injunction on behalf of the Little Plaintiffs, who did not seek to join this litigation until September 2015.

201 WL 6516757, at *9 ("[a]n abrupt end to the [Section 215] program would be contrary to the public interest in effective surveillance of terrorist threats").

Thus, the Political Branches already have weighed the competing concerns of national security and individual privacy and concluded that the public interest is best served by permitting the Section 215 program to remain operational during the transition to the program of targeted collection. The Government respectfully submits that the Court should not have re-weighed the equities and imposed an injunction that abruptly terminates the program before the end of the statutory transition period. *See United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 497-98 (2001) ("Courts of equity cannot, in their discretion, reject the balance that Congress has struck in a statute."). As the Second Circuit concluded, the judgment reached by Congress is one it is uniquely suited to make and should be respected. *ACLU*, 2015 WL 6516757, at *9. At a minimum, appropriate respect for that judgment requires that the Court's injunction be stayed pending an opportunity for appellate review of the contrary conclusion reached by the Court. *Cf. ACLU v. Clapper,* 785 F.3d 787, 826 (2d Cir. 2015) ("[a]llowing the [Section 215] program to remain in place for a few weeks while Congress decides whether and under what conditions it should continue").

Moreover, the potential harm of a stay to the Little Plaintiffs is very small and is outweighed by the immediate harm to the Government and the public interest. First, even assuming that records of the Little Plaintiffs' telephone calls are collected at all under the Section 215 program, the continued collection of metadata about their calls for the short duration of a stay itself represents at most a marginal infringement on the Little Plaintiffs' privacy interests. *See* Gov't PI Opp. at 19-20, 35-36. This is especially so considering that the Little Plaintiffs waited more than two years to seek relief from this or any other court. *See id.* at 24 n.12.

5

Second, the chances that NSA analysts would actually review any records of the Little Plaintiffs' calls while a stay is in place are scant, as only a tiny fraction of the aggregated metadata is ever seen, much less scrutinized, by NSA personnel.  *See* Gov't PI Opp. at 20, citing Shea Decl. (Gov't PI Opp. Exh. 2) ¶ 23.  The Little Plaintiffs will suffer no injury to their privacy from electronic scans of the metadata that retrieve no records of their calls for analyst review, *see id.* at 21-22, 31-32; at best any such posited injury would be de minimis, *see ACLU*, 785 F.3d at 802.  And of course, NSA analysts will have no access whatsoever to any records of the Little Plaintiffs' calls that may be collected during the brief term of a stay once the program terminates on November 29.  *See* Gov't PI Opp. at 11-12, 37, citing Potter Decl. ¶¶ 15-17.

Thus, any risk of injury to the privacy interests of the Little Plaintiffs that may be attributable to a stay is minimal, in most respects abstract, and of short duration.  In no event would it constitute a substantial injury, *see Philip Morris*, 314 F.3d at 617, that weighs meaningfully against a stay in light of the harm to the Government, and the disservice to the public interest as determined by Congress, if a stay is not granted.

### B.     The Government Has a Strong Likelihood of Success on Appeal.

The Government Defendants have a strong likelihood of success on appeal, a factor that also favors issuance of a stay.  The Government need not establish "an absolute certainty of success" to obtain a stay, but rather must demonstrate, at a minimum, "serious legal questions going to the merits."  *Population Inst.* v. *McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986).  Here, the Government has already demonstrated a substantial case on the merits.

#### 1.     The Little Plaintiffs lack standing and therefore lack any right to relief.

Standing is an essential element of the merits, without which the Little Plaintiffs are not entitled to any relief.  *See Obama v. Klayman*, 2015 WL 5058403, at *5 (D.C. Cir. Aug. 28, 2015) (Williams, J.).  To establish standing, litigants must first show that they have suffered an

injury in fact, "an invasion of a legally protected interest," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), that is "concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l, USA*, 133 S. Ct. 1138, 1147 (2013). A "threatened injury must be *certainly* impending to constitute injury in fact," whereas "allegations of *possible* future injury are not sufficient." *Id.* The Little Plaintiffs have not made the requisite showing.

First, the Little Plaintiffs present no evidence that their provider, Verizon Business Network Services (VBNS), currently participates in the Section 215 program. Speculation that VBNS must still participate in the program now because the Government acknowledged that it did so for three months in 2013 does not rise to the level of certainty required by *Amnesty International* for standing purposes in this context. *See* Gov't PI Opp. at 19, citing *Klayman*, 2015 WL 5058403, at *6-7 (Williams, J.); *id.* at *9-10 (Sentelle, J.). Thus the Little Plaintiffs have not shown that they have standing to seek prospective relief against future collection of records about their calls. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101-05 (1983).

Second, even assuming that records of the Little Plaintiffs' calls were collected during the acknowledged time period when VBNS participated in the Section 215 program, and even assuming, *contra Smith v. Maryland*, 442 U.S. 735 (1979), that they have a protected Fourth Amendment privacy interest in the metadata contained in those records, the Little Plaintiffs still have not shown that collection of those records has resulted in an actual injury to them, that is to say, "an invasion" of their claimed privacy interest in the records. *Defenders of Wildlife*, 504 U.S. at 560. They have made no showing that records of their calls have ever been accessed or analyzed by the NSA, or likely will be before November 29, 2015 (when all analytic access to the metadata will cease), pursuant to queries authorized under the "reasonable, articulable suspicion" requirement imposed by the FISC's orders. *See* Gov't PI Opp. at 20. Thus the

7

Government Defendants are substantially likely to prevail on appeal because the Little Plaintiffs have failed to show any imminent injury sufficient to establish their standing.[3]

### 2. Bulk collection of telephony metadata does not constitute a search within the meaning of the Fourth Amendment.

Even if the Little Plaintiffs could establish their standing, the Government is highly likely to succeed on the merits of their Fourth Amendment claim. The premise of that claim, that telephone subscribers have a reasonable expectation of privacy in communications routing information (such as dialed telephone numbers) that they convey to their providers was rejected by the Supreme Court in *Smith* v. *Maryland*, 442 U.S. 435 (1979). *Smith* and the third-party doctrine on which its holding is based remain good law, *see Riley v. California*, 134 S. Ct. 2473, 2489 n.1 (2014), and *Smith's* holding has been widely applied to government collection of metadata associated with such modern forms of telecommunication as electronic mail and text-messaging. *See* Gov't PI Opp. at 29-30 (and cases cited therein).

---

[3] The Court's conclusion that the Little Plaintiffs' Fourth Amendment interests are invaded every time that the NSA electronically scans the metadata for records within two "hops" of targeted selectors is incompatible with numerous decisions of the Supreme Court elucidating the meaning of a Fourth Amendment search. *See* Gov't PI Opp. at 21-23 & n.11, 31-32. The distinction between electronic scans and actual human review of information is recognized by numerous authorities. *See In re Warrant to Search a Certain E-Mail Account, supra*, 2014 WL 1661004, at *6 (S.D.N.Y. Apr. 25, 2014); Bruce E. Boyden, Can a Computer Intercept Your Email?, 34 Cardozo L. Rev. 669, 673 (2012) (arguing that "automated processing [of e-mail] that is not contemporaneously reviewable by . . . humans, and does not produce a record for later human review, is not an interception [under] the Wiretap Act"); Richard A. Posner, Privacy, Surveillance, and Law, 75 U. Chi. L. Rev. 245, 254 (2008) ("Computer searches do not invade privacy because search programs are not sentient beings. Only [a] human search should raise constitutional or other legal issues."); Orin S. Kerr, Searches and Seizures in a Digital World, 119 Harv. L. Rev. 531, 547-48, 551-54 (2005) (contending that "a search of data stored on a hard drive occurs when that data … is exposed to human observation"); Use of E-Mail Service Provider That Scans E-Mails For Advertising Purposes, NY Eth. Op. 820 (2008) (a lawyer may use an e-mail service provider that conducts computer scans of e-mails to generate computer advertising, without breaching client confidentiality, where the e-mails are not reviewed by or provided to human beings other than the sender and recipient); Legal Ethics, Law. Deskbk. Prof. Resp. § 1.6-2(c) (2013-2014 ed.) ("general rule" same). Thus the Government has a substantial likelihood of prevailing on appeal on this point as well.

As this Court has acknowledged, the Fourth Amendment analysis in this case "must start" with *Smith*, *Klayman*, 957 F. Supp. 2d at 30, and the Court also recognized that *Smith* must be distinguished from this case if Plaintiffs are to prevail, *see id.* at 32. But the grounds on which the Court purported to differentiate the pen-register recording in *Smith* from the Section 215 program—in brief, the duration, breadth, and quantity of data collection—did not factor into the Supreme Court's decision in *Smith*. *See* 442 U.S. at 742-45. Rather, *Smith's* holding was anchored in the established principle that individuals have no protected expectation of privacy in information they provide to third parties. *Id.* at 743-44. All other courts to consider the question, including numerous FISC judges, have concluded that *Smith* therefore controls in this situation and that the Section 215 program is consistent with the Fourth Amendment. *See* Gov't PI Opp. at 9 & n.3. Several of these decisions expressly reject the distinctions on which this Court relied in reaching the contrary conclusion. *See* March 20, 2014 FISC Order (Gov't PI Opp. Exh. 5) at 9-23; *ACLU*, 959 F. Supp. 2d at 752; *United States v. Moalin*, 2013 WL 6079518, at *5-8 (S.D. Cal. Nov. 18, 2013); *In re Application of the FBI for an Order Requiring the Prod. of Tangible Things*, 2013 WL 5741573 at *2-3 (F.I.S.C. Aug. 29, 2013). Indeed, the Second Circuit found it "difficult to conclude" that litigants such as Plaintiffs here are likely to succeed "in arguing that new conditions require a reconsideration of the reach of [such] a long-established precedent" as *Smith*. *ACLU*, 2015 WL 6516757, at *8. This sizeable body of case law manifests the Government's substantial likelihood of prevailing on appeal.[4]

---

[4] Further heightening the Government's likelihood of prevailing is the fact that even if individuals had a reasonable expectation of privacy in telephony metadata conveyed to third-party providers, the Little Plaintiffs have demonstrated no infringement of that interest so as to give rise to a Fourth Amendment search. As discussed *supra*, at 7-8 n.2, numerous Supreme Court decisions and other authorities support the proposition that, unless NSA queries of the collected metadata occurring in the remaining three weeks of the Section 215 program actually expose records of the Little Plaintiffs' telephone calls to review by NSA analysts, no Fourth Amendment search of those records will occur. *See also* Gov't Defs.' PI Opp. at 21-23, 31-32.

### 3. Even if bulk collection of telephony metadata could constitute a Fourth Amendment search, it was reasonable of Congress to continue the Section 215 program during the transition period.

Even if the Little Plaintiffs were correct that collecting telephony metadata from the business records of telecommunications companies constitutes a Fourth Amendment search, the Government Defendants are still substantially likely to prevail on appeal. This is so because permitting the continued operation of the Section 215 program for approximately three more weeks until the targeted program of metadata collection can be made operationally ready meets the reasonableness standard applicable to searches that serve "special needs" of the government above and beyond law enforcement. *See, e.g.*, *Vernonia Sch. Dist. 47J* v. *Acton*, 515 U.S. 646, 653 (1995); *Hartness* v. *Bush*, 919 F.2d 170, 173 (D.C. Cir. 1990).

To assess reasonableness under the special-needs doctrine, courts must "employ[] a balancing test that weigh[s] the intrusion on the individual's [constitutionally protected] interest[s]" against the "'special needs' that support[] the program." *Ferguson* v. *City of Charleston*, 532 U.S. 67, 78 (2001). The Section 215 program serves special government needs above and beyond law enforcement—namely, identifying unknown terrorist operatives and preventing terrorist attacks. These are national-security interests of the utmost importance. *See Hartness*, 919 F.2d at 173; *Cassidy* v. *Chertoff*, 471 F.3d 67, 82 (2d Cir. 2006); *Klayman*, 957 F. Supp. 2d at 39. As the Government Defendants have shown, continued operation of the Section 215 program during the current transition period serves Congress's specific objective of ensuring that the Government retains the program's important capabilities in the midst of continuing terrorist threats until the new program of targeted metadata collection can fulfill that role. The significance of that objective is affirmed by the FBI's view that the capabilities of the Section 215 program remain an important part of its counter-terrorism arsenal, especially in the current, heightened threat environment. Paarmann Decl. ¶¶ 6-12. *See* Gov't PI Opp. at 33-34.

10

Balanced against the important purposes served by the Section 215 program during the transition period is the minimal risk that the program will have any concrete impact on the Little Plaintiffs' privacy interests before it terminates on November 29, 2015. *See id.* at 35-37. The Government's interest in preserving its capacity to detect terrorist threats, in the midst of an evolving threat environment, during the brief time remaining until the targeted program of telephony metadata becomes fully operational, far outweighs the now-reduced potential for infringement upon the Little Plaintiffs' privacy. Continued operation of the Section 215 program until the end of the transition period is therefore reasonable and constitutional under the special-needs doctrine. *See ACLU*, 2015 WL 6516757, at *9 (remarking that allowing the Section 215 program "to remain in place for the short period that remains at issue is the prudent course" and is "likely . . . appropriate" even if a program of indefinite duration were unconstitutional). Accordingly, the Government Defendants have at the very least a substantial likelihood of success on the merits, which weighs strongly in favor of a stay.

## **CONCLUSION**

For the reasons explained above, this Court should (1) stay its preliminary injunction pending appeal, and (2) enter an immediate administrative stay until this motion is resolved, and should the motion be denied, a stay until at least 10 days afterward so that the Government can seek relief from the Court of Appeals, if warranted.

Dated: November 9, 2015

                                           Respectfully submitted,

                                           BENJAMIN C. MIZER
                                           Principal Deputy Assistant Attorney General

                                           JOSEPH H. HUNT
                                           Director, Federal Programs Branch

                                           ANTHONY J. COPPOLINO
                                           Deputy Branch Director

      */s/ James J. Gilligan*
JAMES J. GILLIGAN
Special Litigation Counsel
RODNEY PATTON
JULIA A. BERMAN
CAROLINE J. ANDERSON
Trial Attorneys

U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6102
Washington, D.C.  20044
Phone:   (202) 514-3358
Fax:       (202) 616-8470
E-mail:  james.gilligan@usdoj.gov

Counsel for the Government Defendants