No. 17-5281            September Term, 2018

FILED ON: FEBRUARY 5, 2019

LARRY ELLIOTT KLAYMAN AND CHARLES STRANGE,
    APPELLANTS

MARY ANN STRANGE, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,
    APPELLEE

v.

BARACK HUSSEIN OBAMA, ET AL.,
    APPELLEES

Consolidated with 17-5282

Appeals from the United States District Court
for the District of Columbia
(No. 1:13-cv-00851)
(No. 1:13-cv-00881)

Before: ROGERS, SRINIVASAN, and PILLARD, *Circuit Judges*.

# J U D G M E N T

The court considered this appeal on the record from the United States District Court for the District of Columbia, and on the briefs and arguments of the parties. The court has given the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the judgment of the District Court be **AFFIRMED**.

Appellants are individuals who claim that the United States government has spied on them. They challenge as unconstitutional three separate forms of surveillance: bulk telephony metadata collection under Section 215 of the USA PATRIOT Act of 2001, codified as amended at 50 U.S.C. § 1861; bulk electronic metadata collection under Section 402 of the Foreign Intelligence Surveillance Act (FISA), codified as amended at 50 U.S.C. § 1842; and the so-called PRISM program for targeted collection under Section 702 of FISA, codified as amended at 50 U.S.C. § 1881a.

1

When Appellants filed suit in 2013, Section 215 of the PATRIOT Act authorized the government to seek orders from the Foreign Intelligence Surveillance Court (FISC) "requiring the production of any tangible things . . . for an investigation to obtain foreign intelligence information not concerning a United States person or to protect against international terrorism or clandestine intelligence activities." 50 U.S.C. § 1861(a)(1) (2012). Pursuant to that authority, the government established a bulk telephony metadata collection program, indiscriminately collecting telephony metadata from telephone service providers and storing it for up to five years. NSA analysts could query the collected metadata using selectors as to which there was a reasonable, articulable suspicion that the selectors were associated with terrorists abroad.

In 2015, Congress enacted significant changes to the governing statutory regime. *See* USA FREEDOM Act of 2015, Pub. L. No. 114-23, §§ 101–107, 129 Stat. 268, 269–73. Unlike its predecessor, the provision that replaced Section 215 does not authorize bulk collection, instead requiring FISC applications and orders to contain specific selectors. *See* 50 U.S.C. § 1861(b)(2)(A), (c)(3). The FISC may issue an order only if it finds that there are reasonable grounds to believe the targeted metadata are relevant to a qualifying investigation and, in the case of an order for production of call detail records on an ongoing basis, "there is a reasonable, articulable suspicion that [the] specific selection term is associated with a foreign power [or its agent] engaged in international terrorism." *Id.* § 1861(b)(2)(B)–(C).

From 2004 until December 2011, the government also operated a bulk electronic metadata collection program under Section 402 of FISA, known as the "pen register, trap and trace" provision. But by the end of 2011, the program had been discontinued and all the metadata gathered thereunder had been destroyed. Statutory amendments since 2011 have altered the government's ability to revive the program; specifically, the statute now requires collection to be tethered to a specific selector. *See* 50 U.S.C. § 1842(c)(3).

Section 702 of FISA authorizes targeted content-collection by the government of non-U.S. persons located outside the United States. *See* 50 U.S.C. § 1881a(a)–(b). If they wish to exercise this power, the Attorney General and the Director of National Intelligence must certify to the FISC that the surveillance adheres to certain minimization procedures and substantive guidelines. *See* 50 U.S.C. § 1881a(h)(2). Surveillance under that authority is ongoing pursuant to a program known as PRISM.

Appellants brought an action seeking, *inter alia*, an injunction prohibiting future surveillance, declaratory relief, and expungement of any metadata in the government's possession collected from past surveillance. The district court granted the defendants' motion to dismiss, holding that the challenge to Section 215 surveillance was moot and that Appellants lacked standing to pursue their Section 402, PRISM, and expungement claims. Appellants now appeal.

Appellants first seek an injunction and declaratory relief on the basis that the bulk collection of telephony metadata under Section 215 is unconstitutional. That claim is moot. The telephony metadata collection program was terminated during the pendency of the case. And the "voluntary cessation" doctrine does not save the claim from dismissal on mootness grounds because an act of Congress, not the volition of the defendants, compelled the termination of the program. *See ABA v. FTC*, 636 F.3d 641, 648 (D.C. Cir. 2011).

Appellants contend that the new statutory regime is riddled with loopholes that in effect permit the government to continue wide-scale surveillance. Any cessation, the reasoning goes, is therefore voluntary rather than statutorily compelled. But the USA FREEDOM Act specifically forbids the kind of bulk collection challenged in this suit. *See* 50 U.S.C. § 1861(b)(2)(A), (c)(3). The cessation of the program therefore was not voluntary.

Appellants also lack standing to seek expungement of metadata previously collected under Section 215. The five-year cap on data retention under Section 215 yields to accommodate the government's evidence-preservation orders in litigation challenging the collection program. The data covered by the preservation orders cannot be queried by NSA analysts and is subject to extensive minimization procedures. Importantly, it must be discarded after the evidence-preservation obligations expire. Appellants acknowledge that the government must preserve the metadata until the termination of litigation, and neither party contests that the government must dispose of the metadata once litigation concludes. Accordingly, the district court held that Appellants lacked standing because the injury complained of—the retention of the data—is self-inflicted and not fairly traceable to the government's conduct. Appellants dispute that holding, arguing that their injury is not the *preservation* of the metadata but rather its alleged past *collection*. But if Appellants' injury is only the initial collection of the metadata, as they argue, that injury is not redressable by the relief they seek (expungement). The upshot therefore is the same: Appellants lack standing to pursue the claim.

Similarly, Appellants lack standing to challenge the Section 402 electronic metadata collection. The unrefuted evidence shows that the government terminated the challenged program and disposed of the collected electronic metadata before the present suit was filed. There is no risk that the government will resume its old ways; the USA FREEDOM Act amended Section 402 to forbid the reinstatement of bulk electronic metadata collection. *See* 50 U.S.C. § 1842(c)(3). Appellants therefore fail to show injury in connection with their claim concerning Section 402, with the result that they cannot establish standing.

Nonetheless, Appellants urge the court to address their claims because they speculate that the government might have secretly continued its bulk collection in violation of the amended statute. The government, however, produced uncontroverted evidence that the challenged programs had ceased, which the district court credited. Appellants provide no reason to doubt that finding, let alone enough evidence showing it was clear error.

Finally, as the district court held, Appellants lack standing to challenge the targeted collection program known as PRISM. The Supreme Court's decision in *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), involved a challenge to the statute that provides the authority for the PRISM program. *Clapper* establishes that Appellants cannot rest their alleged injury on bare speculation that their contacts abroad will be targeted simply because they reside "in geographic areas" that they believe to be "a special focus" of the U.S. government. *Id.* at 406. Instead, they must allege injury that is "certainly impending" without relying on a "highly attenuated chain of possibilities." *Id.* at 410. Appellants here allege no more than that they communicate with various individuals in countries Appellants imagine might attract government surveillance. They provide no more specific reason to suspect their contacts are targets of the PRISM program or that their own communications will be collected. They therefore have failed to allege the kind of actual or imminent injury required by *Clapper*.

In sum, Appellants lack standing to challenge the PRISM and Section 402 programs and to seek expungement of metadata collected under Section 215, and their other challenges to the Section 215 program are moot. The district court's dismissal therefore is affirmed.

Pursuant to D.C. Cir. R. 36(d), this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Ken Meadows
Deputy Clerk